**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SVV TECHNOLOGY INNOVATIONS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00311-ADA |
| v. | Civil Action No. 6:22-cv-00312-ADA |
| | Civil Action No. 6:22-cv-00313-ADA |
| ASUSTeK COMPUTER INC., | |
| Defendant. | JURY DEMANDED |

**ASUSTeK COMPUTER INC.'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION**
**TO EXCLUDE CERTAIN OPINIONS OF THOMAS L. CREDELLE OR,**
**IN THE ALTERNATIVE, STRIKE PORTIONS OF HIS INFRINGEMENT REPORT**

█████████████████████████

Plaintiff's Response in opposition to ASUSTeK's *Daubert* Motion to exclude certain testimony Mr. Credelle intends to offer and strike portions of Mr. Credelle's September 12, 2023 Infringement Report misses the mark.  ("Opposition"; *See e.g.,* Dkt. 87 in Case No. 6:22-cv-00311).[1]

Plaintiff fails to show that Innography's PatentScore ranking is an *accepted and reliable* source of *data* used by *technical experts* to assess the *validity* of patents. Similarly, Plaintiff fails to recognize ASUSTeK seeks exclusion of Mr. Credelle's *direct infringement* opinions based on violations of Section 271(g). Lastly, Plaintiff confirms Mr. Credelle intends to argue non-technical matters and present *legal* conclusions to the jury that usurp the role of this Court and jury.

## I.    ARGUMENT

### A.    Plaintiff Fails To Demonstrate How Innography's PatentStrength Ranking Would Assist A Jury, Is Reliable Or Admissible

Plaintiff baldly argues that Mr. Credelle's background as a named inventor in 80 patents somehow qualifies him to explain Innography's PatentStrength ranking to a jury. Yet, the rankings, expressed as a percentile, are simply not beyond the grasp of a lay jury.  Plaintiff's contention that Mr. Credelle could explain, for example, how ████████████████████ █ ████████

████████████████ █ ███████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

---

[1] Plaintiff has filed the identical Opposition in Case No. 6:22-cv-00311 (the "311 Case"); Case No. 6:22-cv-00312 (the "312 Case") and Case No. 6:22-cv-00313 (the "313 Case").

[2] ████████████████████████████ and allegedly a "factor" used by Innography's *confidential* algorithm in determining its PatentStrength rankings.

(Plaintiff's Opposition, Exs. A (Credelle Infr. Report), at ¶¶ 109-113, and B (Credelle Validity Report), at ¶¶ 1812-1814.)

To illustrate the point, Innography can be analogized to a teacher who grades students based on their performance, where the grade given to each student (from 0 to 100) equates to Innography's patent ranking. In this scenario, Mr. Credelle (and the jury) is no different than a parent who is in *no better position* at interpreting a student's grade *than any other parent*. Even worse, unlike a parent who is able to seek explanations why a student received a certain score, here Innography *does not disclose* the methodology used with its secretive algorithm to arrive at its rankings. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

Plaintiff counters that Innography's rankings have a sound foundation based on "principals [sic] that have been peer reviewed." Response, at p. 1. Plaintiff then provides an example article submitted as Exhibit C with its Response. There are at least two problems with this red herring:

*First*, the sample article Plaintiff submitted to the Court is clearly an *unpublished draft*, and therefore could not possibly have been peer reviewed. *See* Plaintiff's Exhibit C (word "DRAFT" appears on the upper right corner of each page, there are several unfinished citations and corrections in "track changes" mode, and editorial comments).

*Second*, even if the contents of the article were indeed peer reviewed, the review was performed by *attorneys and law professors*—the wrong peer group. *Technical consultants*—those who are tasked with evaluating the validity of patent claims—is the correct "peer group" to establish whether or not this is the type of evidence that is typically relied on by *experts in the field*. Further, no amount of peer review, by either attorneys or consultants, can attest to the

reliability of Innography's patent ranking results because Innography does not disclose how such rankings are generated—it is a virtual black box that ASUSTeK's motion (*See e.g.,* Dkt. 67 in Case No. 6:22-cv-00311) has already shown is an unreliable predictor of a patent's validity and therefore its value, or strength.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013).  In fact, Innography does not guarantee the accuracy, quality, integrity, *reliability*, or even the appropriateness of the data collected or the results from its algorithm.  Shaw Decl., Ex. 2, Section 7.1 (Innography's Terms of Use).

Plaintiff offers no evidence that technical experts such as Mr. Credelle typically rely on third-party analysis and reports by Innography on patent rank in their analyses of a patent's validity, strength or value. Instead, Plaintiff cites to online blogs and articles written by *attorneys and law professors* to vouch for Innography's reliability, none of which discusses the use of Innography by technical experts.  *Meridian Engineering Co. v. United States*, 130 Fed.Cl. 147, 170 (2016) (court did not allow expert to rely on a third party's technical evaluation because the party sponsoring the expert's opinion failed to demonstrate that experts reasonably rely on such technical evaluations) *affirmed in part, reversed in part on other grounds and remanded* by *Meridian Engineering Co. v. United States*, 885 F.3d 1351 (Fed. Cir. 2018).

Plaintiff next argues that Innoagphy's patent rankings are admissible under Federal Rule of Evidence 803(17).  Plaintiff is again incorrect.  Federal Rule of Evidence 803(17) permits the introduction of "*[m]arket quotations, lists, directories, or other compilations* that are generally relied on by the public or by persons in particular occupations."  Innography's PatentStrength rank is not a market report nor a *true factual compilation* (such as stock and commodity prices, telephone directory, bank directory by routing number, etc.), but rather represents Innography's *opinion* of a patent's rank based on its proprietary algorithm (i.e., the algorithm's "output").  *See*

███████████████████████████████

*e.g.*, *In re C.R. Bard, Inc., MDL No. 2187, Pelvic Repair Sys. Prods. Liab. Litig.*, 810 F.3d 913, 923-24 (4th Cir. 2016) (statements in a material safety data sheet would not be sufficiently reliable to be admitted under this exception, inasmuch as the statements were *opinion* statements, not *factual* compilations); *Personal Audio, LLC v. CBS Corp.*, 2014 WL 1202698, at *4-5 (E.D. Tex. March 20, 2014) (rejecting efforts to use a LinkedIn profile to determine a person's location, finding the requisites of reliability and necessity were not satisfied); *Danner v. Int'l Freight Sys. of Washington, LLC*, 855 F.Supp.2d 433, 472, fn. 53 (D. Md. 2012) (noting that a quote from a popular magazine, without citation, regarding the "increased trophy fee" for a lion obtained in an overseas safari is inadmissible).

Plaintiff attempts to couch such hearsay evidence as admissible "for the limited purpose of having Mr. Credelle explain one basis for his opinions regarding the strength of the patents" and not as general proof of the underlying matter.  But that is *precisely* what Mr. Credelle is doing—he is simply regurgitating a third party's *analysis and opinion* on the strength of the patents, not *facts* he has independently analyzed to reach his conclusions.  Plaintiff merely wants to backdoor hearsay evidence under the guise of expert opinions.



However,

This simply underscores how the Innography report is used by *attorneys*; it is not the sort of information *experts*

---

██████████████████████████████ Case No. 22-cv-00311-ADA at Dkt. 57, p. 1 (Scheduling Order setting August 11. 2023, as the close of Fact Discovery).

██████████████████████████████████

rely upon. Furthermore, no amount of questioning can cure the subjective, unverifiable and therefore unreliable nature of Innography's PatentStrength rankings.  In sum, Mr. Credelle's opinions relating to ███████████████████████████████████████████████ ████████████ based on Innography's PatentScore subjective rankings are unreliable. Accordingly, those opinions, as well as the Innography results should be excluded from both his Infringement Report (Plaintiff's Opposition, Ex. A at ¶¶ 109-113) *and* Validity Report (Plaintiff's Oppositoin, Ex. B at ¶¶ 1812-1814).[4]

> **B.    Plaintiff's Mischaracterization Of Mr. Credelle's Legal Conclusions Underlying His Section 271(g) Infringement Opinions As "Facts" Is Unavailing**

In its opening brief (Dkt. 67 in Case No. 6:22-cv-00311), ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ as Mr. Credelle

states in his Report.[5]  (*See e.g.*, Plaintiff's Opposition, Ex. A at ¶¶ 148, 151, 159; Credelle Infr. Charts, at Exs. 327-328, 340-342, 350-351, 356-357.)  Plaintiff's response simply underscores the impropriety of Mr. Credelle's expected testimony regarding *legal* matters reserved for the Court and jury.  Plaintiff's reliance on cases such as *Crowell* and *Cephalon*,[6] which stand for the proposition that the infringing acts of an agent can be attributed to its principal, is misplaced.

---

[4] To be clear, in its motion ASUSTeK did not seek to exclude Mr. Credelle's other opinions regarding the presence of objective indicia of non-obviousness that were *not* based on Innography's patent rankings.  *See e.g.*, Plaintiff's Opposition, Ex. B (Credelle's Validity Report) at ¶¶ 1800-1811.

[5] Specifically, infringement of claim 21 of the '135 Patent, the only infringement claim made under Section 271(g).

[6] *Crowell v. Baker Tools*, 143 F.2d 1003, 1004 (C.C.A. 9th Cir. 1944); *Cephalon, Inc. v. Watson Pharma, Inc.*, 629 F.Supp.2d 338, 348 (D. Del. 2009).  Notably, the court in *Cephalon* dealt with the question of agency in the context of whether the court could exercise *personal jurisdiction* over a parent company, not whether the parent company was liable for the *infringing acts* of its subsidiary.

ASUSTeK does not dispute the holdings of those cases. Rather, ASUSTeK takes issue with the fact that Mr. Credelle will *not* offer *technical* opinions within his area of expertise but rather offer opinions on *legal issues* ███████████████████████████████

███████████████████ *See e.g.*, Plaintiff's Response at pp. 6-7 ███████



█████████████ This is precisely the type of testimony on legal opinions that experts are universally forbidden from presenting to a jury. *See e.g.*, *Prime Media Grp., LLC v. Acer Am. Corp.*, 2015 WL 452192, at *7 (N.D. Cal. Jan. 22, 2015); *Arista Networks, Inc. v. Cisco Sys., Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018); *Ravgen, Inc. v. Laboratory Corp. of American Holdings*, Case No. 6:20-cv-00969-ADA (W.D. Tex. Oct. 3, 2022) (Dkt. No. 226).

    **C.**    **Plaintiff Incorrectly Frames The Admissibility Of Mr. Credelle's Legal Opinions As A Dispute On Whether The Facts Underlying His Opinions Are Admissible**

        **1.**    **Mr. Credelle's Interpretation Of Facts Disclosed In Discovery And His Opinions Of Their Legal Consequences Are Both Inadmissible.**

Plaintiff conflates Mr. Credelle's inadmissible *legal* opinions (and consequently ASUSTeK's criticisms of such opinions) with certain underlying facts that, while not disputed for purposes of this motion,[7] Mr. Credelle also intends to present as part of his vouching for Plaintiff's

---

[7] ASUSTeK disputes a number of facts raised by Plaintiff regarding for example, ███████ ████████████████████████████ For purposes of the motion whether the facts are disputed or not is irrelevant as ASUSTeK contends that Mr. Credelle cannot present his legal



*interpretation* of such facts.

*See e.g.*, Plaintiff's Opposition, Ex. A (Credelle Infr. Report) at ¶¶ 140, 155

156 (same), 157

158, 159, 160

161, 162; *see also* ASUSTeK's Opening Brief (Dkt. 67 in Case No. 6:22-cv-00311) at pp. 2-5.  Mr. Credelle's testimony vouching for a Plaintiff's interpretation of these facts and on ultimate legal issues, even if couched as "expert opinions," is inadmissible. *Prime Media Grp., LLC v. Acer Am. Corp.*, 2015 WL 452192, at *7 (N.D. Cal. Jan. 22, 2015); *United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007); *United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir. 1987) (witnesses may not testify to the legal implications of conduct).  In contrast, Plaintiff fails to cite a single case supporting its assertion Mr. Credelle should be allowed to "testify as to *the underlying facts* that in his opinion *may show ASUSTeK's state of mind*." [8]  (Opposition

---

interpretation of those facts as expert opinions. Additionally, ASUSTeK does not concede foundational or other admissibility issues (e.g., hearsay).

[8] It appears Plaintiff also intends to improperly introduce evidence on *legal*, *non-technical* issues through a witness who is not qualified to lay a proper foundation for its admission, including authentication and/or hearsay.  *See e.g.*, *United States v. Dukagjinih*, 326 F.3d 45, 57-59 (2d Cir.

████████████████████████████████████████████

at p. 9 (emphasis in original).)

Plaintiff also states that "ASUSTeK has not alleged that Mr. Credelle offered opinions regarding whether ASUSTeK was *aware* of its *infringement*." (Opposition at p. 8 (emphasis in original).) However, this is exactly the sort of opinion that Mr. Credelle included in his report and intends to present to the jury that ASUSTeK in fact sought to exclude in its opening brief. *See e.g.*, Opposition, Ex. A at ¶ 159 ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ (emphasis added); *see also* Opening Brief (Dkt. 67 in Case No. 6:22-cv-00311) at p. 3. Thus, as Plaintiff has tacitly acknowledged, by denying Mr. Credelle has offered such opinions, Mr. Credelle's opinions on ASUSTeK's knowledge, intent, or state of mind are inadmissible. *Arista Networks*, *supra*, 2018 WL 8949299, at *3; *Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *3 (N.D. Cal. July 14, 2015).

Finally, it bears repeating that the "underlying facts" and legal opinions offered by Mr. Credelle that ASUSTeK seeks to exclude are not "scientific, technical, or other specialized knowledge [that] will help the trier of fact" under Federal Rule of Evidence 702(a) but instead

---

2003) ("[I]n this case the expert was repeating hearsay evidence without applying any expertise whatsoever, thereby enabling the government to circumvent the rules prohibiting hearsay"); *Option Resource Group v. Chambers Dev. Co., Inc.*, 967 F.Supp. 846, 850 fn. 6 (W.D. Pa. 1996) ("Rule 703 cannot be used as a backdoor to get the evidence before the jury"); *see also Charles Alan Wright & Victor James Gold*, 29 Fed. Prac. and Proc. Evid. § 6273 (1997) ("Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury. In such a case, Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control.").

███████████████████████████████████████

information a jury does not need an expert to understand ████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████ *Arista Networks*, 2018

WL 8949299, at *2; *Finjan*, 2015 WL 4272870, at *3.  This is the sort of improper and unhelpful

summary of information gathered through discovery, devoid of any expert analysis that this Court

has held is inadmissible.  *Ravgen, Inc.*, *supra*, Case No. 6:20-cv-00969-ADA (W.D. Tex. Oct. 3,

2022) (Dkt. No. 226) (opinions in expert's report identifying and summarizing deposition

testimony, defendant's responses to written discovery, and produced documents to ascribe intent

to defendant in order to conclude that defendant "knows, or was willfully blind" excluded).

> **2.    Opinions Regarding** ██████████████████████ ███████
> ████████████ **Based On Mr. Credelle's Speculative, Subjective Inquiry Into The Mind Of The Licensor Are Inadmissible**

████████████████████████████████████████████████

████████████████████████████ This is incorrect. ████████████████

███████████████████████████████████████ ████████████████

███████████████████████████ (Opening Brief (Dkt. 67 in Case No. 6:22-cv-00311)

at p. 14 (emphasis added).)  The opinions ASUSTeK seeks to exclude include those that are based

on Mr. Credelle's *unfounded speculation* regarding the reasons why ████████████████████

████████████████ *See e.g.*, Opposition, Ex. A at ¶ 115 ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

(emphasis added).  Mr. Credelle's background as a named inventor does not give him the ability

to divine the reasons why another patent owner ████████████████████████████████

██████████████████████████████████

Plaintiff's citation ████████████████████████████████████████████████

(*Ericsson*) [9] or ████████████████████████ should be addressed by cross-examination

(*Ravgen*) [10] misses the mark because ASUSTeK seeks to exclude opinions based on Mr. Credelle's

summary of facts gathered in discovery lacking any helpful expert analysis. *Ravgen, Inc.*, *supra*,

Case No. 6:20-cv-00969-ADA (W.D. Tex. Oct. 3, 2022) (Dkt. No. 226).

## II.   **CONCLUSION**

For the reasons explained herein, ASUSTeK respectfully requests that its motion be

granted.

DATED: December 4, 2023                    Respectfully submitted

By: */s/ Jack Shaw*
Jack Shaw CA Bar No. 309382
Robert H. Sloss *(Admitted Pro Hac Vice)*
**PROCOPIO CORY HARGREAVES**
**  & SAVITCH LLP**
3000 El Camino Real, Suite 5-400, Palo
Alto, CA 94306
Telephone: (650) 645-9000
Facsimile: (650) 687-8300
Email: robert.sloss@procopio.com
Email: jack.shaw@procopio.com

Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND**
**JAMES PLLC**
400 Austin Avenue, 9th Floor
Waco, TX 76701
Tel: (254) 732-2242
Email: msiegmund@cjsjlaw.com
**Attorneys for Defendant**
**ASUSTeK COMPUTER INC.**

---

[9] *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).
[10] *Ravgen, Inc. v. Laboratory Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. Oct. 4, 2022) (Dkt. No. 237).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on December 4, 2023, and was served on all counsel via electronic mail.

*/s/ Jack Shaw*           
Jack Shaw

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SVV TECHNOLOGY INNOVATIONS, INC., | |
| Plaintiff, | Civil Action No. 6:22-cv-00311-ADA |
| | Civil Action No. 6:22-cv-00312-ADA |
| v. | Civil Action No. 6:22-cv-00313-ADA |
| ASUSTeK COMPUTER INC., | JURY DEMANDED |
| Defendant. | |

**DECLARATION OF JACK SHAW IN SUPPORT OF DEFENDANT ASUSTeK
COMPUTER INC.'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE
CERTAIN OPINIONS OF THOMAS L. CREDELLE OR, IN THE ALTERNATIVE,
<u>STRIKE PORTIONS OF HIS INFRINGEMENT REPORT</u>**

I, Jack Shaw, declare as follows:

1.   I am an attorney at the law firm Procopio, Cory, Hargreaves & Savitch LLP and counsel for Defendant ASUSTeK Computer, Inc. ("ASUSTeK") in the above- captioned action.  I am a member in good standing of the State Bar of California and have been admitted to practice in the Western District of Texas.  I submit this declaration in support of Defendant ASUSTeK Computer Inc.'s Reply in Support of its *Daubert* Motion to Exclude Certain Opinions of Thomas L. Credelle or, in the Alternative, Strike Portions of His Infringement Report.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.   Exhibit 1 is a true and correct copy of excerpts from the Deposition of ▓▓▓▓▓▓▓ dated ▓▓▓▓▓▓▓

3.   Exhibit 2 is a true and correct copy of the CPA Global Innography Terms from September 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 4th day of December 2023, in Palo Alto, California.

By: */s/ Jack Shaw*
Jack Shaw

# EXHIBIT 1

**[ENTIRELY REDACTED]**

# EXHIBIT 2

**CPA GLOBAL**®

## INNOGRAPHY TERMS

### 1. DEFINITIONS AND APPLICABLE TERMS

1.1 For purposes of this Order, capitalized terms shall have the meaning ascribed to them in the General Terms and as set out in this Order.

1.2 **Administrative User** means a User specifically assigned to the role as within Customer's organization to setup and configurations User accounts.

1.3 **Commercial Order Form** means the order form signed by the Parties which incorporates these terms, which collectively form your Order.

1.4 **User(s)** means an employee of the Customer who is authorised to use the Software and has been supplied with a user ID and password.

1.5 This Order incorporates the General Terms along with the Supply Specific Terms available at https://www.cpaglobal.com/general-terms-of-business or as incorporated into any prior Order in force between the Parties or as otherwise superseded by a customer agreement in writing between the Parties.

1.6 We currently use the Amazon Web Service cloud infrastructure for its technological environment for the Services. Accordingly Customer shall comply with the obligations of "you" and "End User" that are set forth in the AWS Customer Agreement which is currently located at http://aws.amazon.com/agreement in its capacity of End User under such terms.

1.7 Capitalised terms shall have the meanings set out in those terms or set out in this Order and the General Terms.

### 2. SERVICES DESCRIPTION

2.1 In this Order, Service means the online intellectual property practice management system modules accessible via the web site operated by us through which the Service is made available to Customer (or any other designated web site or IP address) described in:

2.1.1 this Order; and

2.1.2 the specifications set forth at https://www.cpaglobal.com/patent-analytics-software-innography and any documentation for the Service (as such may change from time to time).

2.2 The Service does not include, and the Customer is responsible for, all activities that occur in User accounts and for Users' compliance with this Agreement. Customer shall have sole responsibility for the accuracy, quality, integrity, legality, reliability, and appropriateness of all Customer Data and for the use and confidentiality of any required passwords.

### 3. FEES AND BILLING

3.1 Customer shall pay:

3.1.1 From the Order Effective Date, the relevant Subscription Fee set out on the Commercial Order Form annually, in full, and in advance of each Subscription period specified;

3.1.2 Any fees for additional professional services as may be agreed by the parties in a separate Statement of Work (mutually agreed and executed by both Parties' authorised signatories); and

3.1.3 Customer will pay us within thirty (30) days of the receipt of the invoice.

3.2 All fees are quoted and payable in the currency stated in this Order. Except as otherwise specified herein, payment obligations are non-cancellable, fees paid are non-refundable, and the Subscription

EXHIBIT 2
1

# CPA GLOBAL®

Fee cannot be decreased during the relevant Order Effective Period.

3.3   For any Order Effective Period in excess of 12 months we shall be entitled to increase the applicable Fees on each 12 month anniversary of the Order Effective Date by no more than the consumer prices index published by the World Bank for the relevant country in which the Customer resides or 5% whichever the greater.

## 4.   ACCESS AND USERS

4.1   We will set up access to the Software, including set up of Users ID's/passwords. The cost of the initial set up is included in the Subscription Fee.

4.2   Administrative User(s) are permitted to provide access to Users and may allocate log in and passwords to Users in accordance with the terms of this Order.

4.3   Where you have purchased PatentIQ on the Commercial Order Form, you are permitted to share a link to the 'Customer Dashboard' with external third parties subject to their agreement of the terms contained within such link.

4.4   User IDs (except PatentScout) cannot be shared or used by more than one individual User, other than when reassigned to new User. Customer will immediately notify us of any unauthorized use of any passwords or accounts or any other breach.

## 5.   INNOGRAPHY  TERMS

5.1   You acknowledge that we may monitor, collect, use, and store anonymous and aggregate statistics regarding your use of the Software for our business purposes, (including but not limited to enhancing the Supplies and creating new features). For the avoidance of doubt, this shall not include any monitoring of any Customer Data.

## 6.   SUPPORT

6.1   We shall provide support in accordance with the support package purchased on the Commercial Order Form, in accordance with its relevant support policy set forth in Exhibit A, attached hereto and incorporated herein. Any modification to the Support Policy shall not materially adversely impact the Customer.

6.2   Other than the support provided in clause 6.1 above the Supplies are provided strictly on a "AS AVAILABLE" basis without warranty of any kind, express, implied or statutory.

## 7.   CONTENT AND RESULTS

7.1   You acknowledge that the data contained within the Supplies is extracted (from time to time) from public data sources and other third party sources, including but not limited to third party websites. The Supplies are provided on a "AS IS" basis. You assume sole responsibility for results obtained from the use of the Supplies and for any reliance or conclusions drawn from such use. We shall have no liability for the accuracy, quality, integrity, reliability, appropriateness of the data nor any errors, acts or omissions any damage caused by errors or omissions in any information, instructions or scripts provided in connection with the Supplies.

7.2   All warranties, representations, conditions and all other terms of any kind whatsoever implied by statute or common law are, to the fullest extent permitted by applicable law, excluded.

## 8.   REASONABLE USE

8.1   "Framing" or "mirroring" the Software for any purpose, including for any internal business purpose, or for any internal web browser or intranet or creation of any links to the Software is prohibited.

8.2   You will not batch or automate tasks using the Software, use "web crawlers" or other types of software to automatically download large amounts of materials from the Software. Nor will you distribute, any changes or modifications to the Software.

*Version September, 2019*
*Innography Order*

EXHIBIT 2
2

**CPA GLOBAL**®

## 9.   ANNOUNCEMENTS

9.1   Except as required by law, you shall not, in relation to the subject matter or terms of this agreement, make, or permit any public announcement, benchmarking, advertising or reference us in any marketing, without our prior written consent.

## 10.   ADDITIONAL PRODUCT TERMS

10.1   Where Patent Market Tracker is included on an Order, the following terms also apply.

10.1.1   Authorized Users.   Patent Market Tracker shall be made accessible to your Principal Contact, as noted above, unless other Users are designated by you in writing (the "PMT User"), and shall be used only on your behalf.

10.1.2   Use of Service.   The Services are provided solely for your internal business purposes and not for resale or distribution. You shall not directly or indirectly (i) sell, resell, rent, sublicense, supply or lease Patent Market Tracker or any related Patent Market Data to any third parties, or (ii) otherwise provide access to Patent Market Tracker or Patent Market Data to any third parties.

10.1.3   No Pre-Screening or Monitoring.   We have no obligation to pre-screen, verify or monitor the Patent Market Data.   We shall not be responsible for any failure to remove, or delay in removing, harmful, inaccurate, unlawful or otherwise objectionable content originating with or otherwise provided by third parties.

10.1.4   Survival.   Any retention of Patent Market Data beyond the termination or expiration of the Term hereunder shall not entitle you to any updates, refreshes or other ongoing services related to the Patent Market Data, or entitle you to resell or otherwise provide the Patent Market Data to third parties.   Notwithstanding any termination or expiration of this Agreement, your obligations under this Agreement shall continue to apply to any such retention by you of the Patent Market Data as if this Agreement had not been terminated.

10.1.5   Disclaimer of Warranties. EXCEPT AS EXPRESSLY PROVIDED IN WRITING BY THE PARTIES, THE PATENT MARKET DATA IS PROVIDED STRICTLY ON AN "AS IS" AND "AS AVAILABLE" BASIS WITHOUT WARRANTY OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY. WE SPECIFICALLY DISCLAIM, ALL OTHER WARRANTIES WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT.   WITHOUT LIMITING THE FOREGOING, YOU SPECIFICALLY ACKNOWLEDGE THAT WE AND OUR SUPPLIERS MAKE NO WARRANTY THAT THE PATENT MARKET DATA WILL MEET YOUR REQUIREMENTS OR BE ERROR-FREE OR WITHOUT INTERRUPTION; THAT ALL ERRORS WILL BE CORRECTED; OR THAT YOUR SPECIFIC REQUIREMENTS WILL BE SATISFIED. YOU ASSUME RESPONSIBILITY FOR THE USE OF THE PATENT MARKET DATA.

**CPA GLOBAL**®

**EXHIBIT A**
## Support Policy

### 1. Overview

The Silver Support Plan (or "Innography Support") for Innography software consists of operational assistance and technical support provided by CPA Global to Customer (or "you") as detailed below during the term of your subscription. You shall only be eligible to receive Innography Support provided you are be a current User, remain current on all applicable subscription fees due and payable to CPA Global and be otherwise compliant with applicable contractual obligations to CPA Global. The Innography Support will be provided to you at no additional charge. CPA Global currently makes, and at CPA Global's discretion CPA Global may make, other fee-based tiers of support or support offerings available that provide additional entitlements (e.g., Innography Gold Support, Innography Platinum Support).

### 2. Telephone and Online Support

Innography Support includes direct access to technical support and the ability to open and manage support incidents online or by telephone:

- Telephone support is provided during the standard business hours of 9:00 AM to 5:30 PM GMT, Monday through Friday, excluding UK public holidays.

- Online support (support@innography.com and https://support.innography.com/hc/en-us/requests/new ) is available to submit incident requests 24/7/365. Online access to (i) Innography software and documentation, self-service support, FAQs, samples, webcast recordings and demos, usage tips, technical updates and notifications, as such are made available by CPA Global.

### 3. Service Level Objectives

CPA Global will use commercially reasonable efforts to meet the service level objectives stated in the table below with regard to remedial software support and will provide ongoing efforts to resolve Severity 1 support incidents. Due to the complexities of technical environments, the table represents an estimate of initial response times only and actual response times may vary. Within the initial Response Due periods set forth below, CPA Global Representative will confirm receipt of the Fault Report to User and begin troubleshooting and diagnosis of the problem. Response Due periods are during normal business hours based on the time an incident is initially submitted online or telephonically.

CONFIDENTIAL

*Version September, 2019*
*Innography Order*

EXHIBIT 2
4

**CPA GLOBAL**®

| Severity | Criteria | Response Due |
|---|---|---|
| | | **Response Due** |
| 1 | A Fault in the Software which (a) causes all live system processing to stop; and/or (b) causes a 'Damaging Effect which threatens the deadline of time-critical business processes. | Within four (4) Working Hours |
| 2 | A Fault in the Software (other than a Category 1 Fault) which causes a problem which severely impairs the normal functioning, which affects most users and/or disrupts time-critical business processes. | Within one (1) Working Day |
| 3 | A Fault in the Software (other than a Category 1 or 2 Fault) which (a) has no direct and material impact on business processes, (b) has an impact only on a segment of users, or (c) does not yet disrupt time-critical business processes. | Within three (3) Working Days |
| 4 | A cosmetic defect or error in the Software (other than Category 1, 2 or 3 Faults).  These will be logged but no immediate action will be taken.  CPA Global will generally monitor the situation but will not be obliged to provide any solution. | Promptly as is reasonably practical |

*Version September, 2019*
*Innography Order*

EXHIBIT 2

5

**CPA GLOBAL**®

*This table reflects our current guidelines; we reserve the right to change its support response times and categories as part of its normal business practices.

**4. Customer Responsibilities**

In order to receive Innography Support, you must provide a technical support incident request in English that contains all information pertinent to the problem or incident, including but not limited to the user id, incident severity level, operating system/version, platform, and a description of the problem or incident, and as available. You will be asked to provide the name(s) and contact information, including email addresses and telephone numbers, for personnel who are familiar with the problem or incident and the environment. CPA Global may ask you to execute diagnostic routines if provided by CPA Global and inform CPA Global of the results.   You will be asked to continue to communicate with CPA Global to verify the existence of the software problem and provide information about the conditions in which the problem could be duplicated.

**5. Support Limitations**

Silver Innography Support does NOT include any of the following:

- On-site support services
- Technical support for non-Innography software (e.g. Microsoft Excel)
- Innography software that is not used in accordance with the product Documentation (e.g. Extracting inventor information for use in creating an in-house tool)
- Unsupported supported browsers, plug-ins, and operating systems.
- Consulting services
- Performance of project work; and/or
- Education other than as published on the Innography Support site

CPA Global shall not be responsible for any changes that may be necessary as a result of a Workaround or Fix. CPA Global is not required to provide technical support if you do not perform your responsibilities as stated herein.

**6. Defined Terms**

- "Innography Support" means support for the Innography software product.
- "Documentation" means any help screens and guides provided by CPA Global with an Innography subscription.
- "Fix" means any change that CPA Global makes to the software, including changes made for purposes of maintaining system compatibility, error correction, improved operation and security and Workarounds that establish or help to restore material conformity to the specifications in the Documentation for that software. A "Fix" is generally an interim solution for a specific customer problem. A "Fix" may also include any recommendations or advice provided to you on steps to close an open incident in accordance with Innography Support processes.
- "Self-Service Support" means access to self-help tools provided on Innography Support online. such as knowledge documents, education and / or user community access
- "Consulting" means execution of projects on behalf of the Customer.

**7. Enhanced Support Options**

For an additional fee the following support options are available. Please contact your CPA Global representative to purchase any enhanced support options.

*Innography Gold Support*

- Prioritized support response
- Purchase professional services hours at a 5% discount (Innography, CPA Global Expert Search Analytics)
- Two Semi-Annual Business Reviews (SABR) upon request

CONFIDENTIAL

*Version September, 2019*
*Innography Order*

EXHIBIT 2
6

**CPA GLOBAL**®

- Early access to new features through Beta program
- Sharpening Your Tools: One day software training or advanced mentoring for experienced users. Travel included (US Only)
- 1 seat to the Annual Software User Conference

*Innography Platinum Support*
- Purchase professional services hours at a 10% discount (Innography, CPA Global Expert Search Analytics)
- Two Semi-Annual Business Reviews (SABR) upon request; one may involve Executive and/or Product Management
- Early access to new features through Beta program
- Sharpening Your Tools: One day software training or advanced mentoring for experienced users. Travel included (US Only)
- One high-level research report per year for a specific industry or technical area
- 3 seats to the Annual Software User Conference

**8. Changes to Support Policy**

The Innography Support Policy may be updated by CPA Global from time to time, in its sole discretion. This policy was published May 2019.