```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                      WACO DIVISION

3  SVV TECHNOLOGY           *
     INNOVATIONS, INC.      *     April 6, 2023
4                           *
   VS.                      *     CIVIL ACTION NOS.
5                           *
   ASUSTEK COMPUTER INC.    *     6:22-CV-311, 312, 313
6  MICRO-STAR INTERNATIONAL*
     CO. LTD.               *     6:22-CV-511, 512
7  ACER INC.                *     6:22-CV-640, 641

8          BEFORE THE HONORABLE ALAN D ALBRIGHT
                MARKMAN HEARING (via Zoom)
9
   APPEARANCES:
10
   For the Plaintiff:  Robert D. Katz, Esq.
11                     Katz PLLC
                       6060 N. Central Expressway, Ste 560
12                     Dallas, TX 75206

13 For Defendant ASUSTeK:

14                     Jack Shaw, Esq.
                       Robert H. Sloss, Esq.
15                     Boyuan Wang, Esq.
                       Procopio Cory Hargreaves &
16                       Savitch LLP
                       3000 El Camino Real, Suite 5-400
17                     Palo Alto, CA 94306

18                     Allen Franklin Gardner, Esq.
                       Allen Gardner Law, PLLC
19                     609 S. Fannin
                       Tyler, TX 75701
20

21 For Defendant Micro-Star:

22                     William Keeley Wray, Jr., Esq.
                       Allen & Overy LLP
23                     One Beacon Street
                       Boston, MA 02108
24

25
```

```
 1                          Bijal V. Vakil, Esq.
                            Allen & Overy LLP
 2                          530 Lytton Avenue, 2nd Floor
                            Palo Alto, CA 94301
 3
                            Eric H. Findlay, Esq.
 4                          Findlay Craft, P.C.
                            7270 Crosswater Avenue, Suite B
 5                          Tyler, TX 75703

 6  For Defendant Acer:     Jerry Chen, Esq.
                            TechKnowledge Law Group, LLP
 7                          20660 Stevens Creek Blvd., Ste 381
                            Cupertino, CA 95014
 8
                            Eric H. Findlay, Esq.
 9                          Findlay Craft, P.C.
                            7270 Crosswater Avenue, Suite B
10                          Tyler, TX 75703

11  Court Reporter:         Kristie M. Davis, CRR, RMR
                            PO Box 20994
12                          Waco, Texas 76702-0994
                            (254) 340-6114
13

14     Proceedings recorded by mechanical stenography,

15  transcript produced by computer-aided transcription.

16

17

18

19

20

21

22

23

24

25
```

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | (Hearing begins.)                                        |
| 09:33 | 2  | THE CLERK:  A civil action in Cases                      |
| 09:33 | 3  | 6:22-CV-311, 312 and 313, SVV Technology Innovations,    |
| 09:33 | 4  | Incorporated versus ASUSTeK Computers Incorporated; and  |
| 09:33 | 5  | 6:22-CV-511, 512, 513, SVV Technology Innovations,       |
| 09:33 | 6  | Incorporated versus Micro-Star International Co. Ltd.;   |
| 09:33 | 7  | and Cases 6:22-CV-639, 640 and 641, SVV Technology       |
| 09:33 | 8  | Innovations, Incorporated versus Acer Incorporated.      |
| 09:33 | 9  | Cases called for a Markman hearing.                      |
| 09:33 | 10 | THE COURT:  Announcements from counsel,                  |
| 09:33 | 11 | please.                                                  |
| 09:33 | 12 | MR. KATZ:  Good morning, Your Honor.                     |
| 09:33 | 13 | Robert Katz for plaintiff SVV Technology Innovations,    |
|       | 14 | Inc.                                                     |
| 09:33 | 15 | MR. FINDLAY:  Good morning, Your Honor.                  |
| 09:33 | 16 | Eric Findlay on behalf of Acer.  And also with me is     |
| 09:33 | 17 | Mr. Bijal Vakil and William Wray.  Mr. Wray will be      |
| 09:33 | 18 | speaking.                                                |
| 09:33 | 19 | And then, Your Honor, I'm also here on                   |
| 09:33 | 20 | behalf of Micro-Star International -- Acer.  I think I    |
| 09:34 | 21 | got that confused.                                       |
| 09:34 | 22 | Micro-Star International, Your Honor.                     |
| 09:34 | 23 | And that's Bijal Vakil and William Wray.                 |
| 09:34 | 24 | And also for Acer, along with me for Acer                |
| 09:34 | 25 | is Mr. Jerry Chen.                                       |

4

09:34  1                      I apologize, Your Honor.  Good morning.

09:34  2                      THE COURT:  Good morning.  No apologies

09:34  3    needed.

09:34  4                      MR. SLOSS:  Good morning, Your Honor.

09:34  5    Robert Sloss from the Procopio firm representing

09:34  6    ASUSTeK Computer Inc.  With me is Jack Shaw and Boyuan

09:34  7    Wang from our office.

09:34  8                      THE COURT:  Have you appeared in my court

09:34  9    before?

09:34  10                     MR. SLOSS:  I have, Your Honor.

09:34  11                     THE COURT:  I didn't -- what case was it

09:34  12   on?

09:34  13                     MR. SLOSS:  I'm not memorable.  That's

09:34  14   all right.

09:34  15                     THE COURT:  No, no.  I just --

09:34  16                     MR. SLOSS:  It was a prior ASUSTeK case.

09:34  17                     THE COURT:  Okay.  Well, welcome back.

09:34  18                     And anyone who wears a bow tie like your

09:34  19   partner, I think is a good thing.  I used to have a lot

09:34  20   of them until my sons decided they liked bow ties.  And

09:34  21   I don't have any left at home.  But it's quite a good

09:34  22   look.

       23                     MR. GARDNER:  Your Honor, Allen Gardner's

09:34  24   also here for ASUS.  And I'm ready to proceed.

09:35  25                     THE COURT:  Welcome.

09:35  1                      Any other counsel?

09:35  2                      MR. KATZ:  No one from plaintiff, Your

09:35  3  Honor.

09:35  4                      THE COURT:  Okay.  Let me pull up -- give

09:35  5  me one second.  First claim term is "light input

       6  surface."

09:35  7                      I will hear from the defendant.

09:35  8                      MR. WRAY:  Good morning, Your Honor.

09:35  9  Thank you.

09:35  10                      My name is William Wray, and as

09:35  11  Mr. Findlay noted, I am representing Micro-Star

09:35  12  International Co.

09:35  13                      Thank you for hearing argument on this

09:35  14  term.  The Court's initial construction was plain and

09:35  15  ordinary meaning here.  And the defendants' proposed

09:35  16  construction was:  A surface that receives -- the faces

09:35  17  and receives light from the light source.

09:35  18                      We thought, Your Honor, that it was worth

09:35  19  having some oral argument on this term for a couple of

09:35  20  reasons.

09:35  21                      The first is related to a notice of

09:35  22  supplemental authority that we filed yesterday evening.

09:35  23  I apologize that the Court did not have more time to

09:35  24  review this.

09:35  25                      What this notes and supplemental

| | | |
|---|---|---|
| 09:35 | 1 | authority demonstrated was that some of the information |
| 09:36 | 2 | that was relied upon by plaintiff in connection with |
| 09:36 | 3 | its argument on this term was actually not supposed to |
| 09:36 | 4 | be in the patent which they referred. |
| 09:36 | 5 | Specifically, in the plaintiff's |
| 09:36 | 6 | surreply, they included a figure called Figure No. 27 |
| 09:36 | 7 | and they argued that this figure demonstrates that the |
| 09:36 | 8 | surface that actually faces and receives the light |
| 09:36 | 9 | source in that particular figure was not pointing at |
| 09:36 | 10 | what they called the light input surface. |
| | 11 | Instead of coming from the top -- the |
| 09:36 | 12 | light input surface was on the top layer in this |
| 09:36 | 13 | particular embodiment -- the light came from the side, |
| 09:36 | 14 | from one of the narrow ends of the sheet. |
| 09:36 | 15 | We dug into the file history of the '191 |
| 09:36 | 16 | and discovered that that was a proposed amendment to |
| 09:36 | 17 | the specification that the USPTO actually rejected and |
| 09:36 | 18 | directed the applicant to cancel and remove. |
| 09:36 | 19 | That was the only example that plaintiff |
| 09:36 | 20 | was able to find that showed light entering the optical |
| 09:37 | 21 | cover at anywhere other than the light input surface. |
| 09:37 | 22 | And because that was something that was raised for the |
| 09:37 | 23 | first time in the surreply brief and relates to |
| 09:37 | 24 | something in the file history that the Court had not |
| 09:37 | 25 | previously been provided, we wanted to bring that to |

7

09:37  1    the Court's attention.

09:37  2                In addition to that fact, Your Honor,

09:37  3    harkening back to our opening brief, the reason we

09:37  4    asked for the Court to construe this term is because we

09:37  5    believe that a jury is likely to be confused by the

09:37  6    phrase "light input surface."

09:37  7                THE COURT:  I don't -- I just sat through

09:37  8    a patent trial.  I don't believe when someone says a

09:37  9    jury's likely to be confused in this situation.

09:37 10    They're likely be confused for five days.

09:37 11                And so I hear that -- I've heard that a

09:37 12    thousand times now at Markmans, and I can tell you that

09:37 13    it doesn't work on me.  I mean, the jury -- that's not

09:37 14    a good reason to do it.  So I don't mean to be

09:38 15    impolite, but, you know, it's -- go ahead, please.

09:38 16                MR. WRAY:  Understood, Your Honor.

09:38 17                I suppose I'll explain why the term is

09:38 18    just inherently ambiguous, which is that the term

09:38 19    "input" is a term that can both mean something that

09:38 20    receives something that's put into a system, and also

09:38 21    something that actually is responsible for putting into

09:38 22    a system.

09:38 23                And in this case whenever the patentee

09:38 24    used the term "light input surface," the patentee was

09:38 25    exclusively referring to a surface that is receiving

| | | |
|---|---|---|
| 09:38 | 1 | the light.  And he was never using it to refer to a |
| 09:38 | 2 | surface that's responsible for putting light into a |
| 09:38 | 3 | system. |
| 09:38 | 4 | So input device in the electronic sense |
| 09:38 | 5 | is something that is responsible for inputting |
| 09:38 | 6 | something.  A printer input tray is something that's |
| 09:38 | 7 | responsible for putting paper into the printer. |
| 09:38 | 8 | There's all these examples where the term "input" is |
| 09:38 | 9 | used to mean put something in. |
| 09:38 | 10 | And that's not at all what the surface |
| 09:38 | 11 | does here.  Instead, we're talking about a broad |
| 09:38 | 12 | material, kind of like a sheet or a horizontal cover. |
| 09:39 | 13 | It's got two surfaces.  One of them always is receiving |
| 09:39 | 14 | light and one of them always is -- it's the output of |
| 09:39 | 15 | the light. |
| 09:39 | 16 | And it's helpful in order to resolve that |
| 09:39 | 17 | ambiguity to say that the light input surface is the |
| 09:39 | 18 | one that receives light.  That comes right from the |
| 09:39 | 19 | specification and it resolves all the ambiguities in |
| 09:39 | 20 | the term itself. |
| 09:39 | 21 | THE COURT:  I get that argument.  Let me |
| 09:39 | 22 | hear from plaintiff. |
| 09:39 | 23 | I guess the first issue would be, is |
| 09:39 | 24 | counsel's concern -- should he be concerned that you |
| 09:39 | 25 | are going to say that it can be both a light input |

09:39  1   surface, meaning the surface receives the light that is

09:39  2   input, and also it can be a light input service which

09:39  3   inputs the light?

09:39  4          And so let me hear your position on that

09:39  5   real quick.

09:39  6          MR. KATZ:  Your Honor, if I may, may I

09:39  7   address the issue with the printing error in the '191

09:40  8   patent that counsel brought to light?

09:40  9          Because basically --

09:40  10          THE COURT:  Sure.

09:40  11          MR. KATZ:  Thank you, Your Honor.

09:40  12          So the defendants made an argument and

09:40  13   they filed a notice of supplemental authority last

09:40  14   night that suggests that the '191 patent may have had

09:40  15   some passages in there that should not have been in

09:40  16   there because of some sort of a printing error.

09:40  17          There should not be any allegation that

09:40  18   the applicant did anything wrong.  Basically the

09:40  19   applicant, in connection with an RCE, proposed an

09:40  20   amendment that attempted to add three paragraphs and

09:40  21   one figure.

09:40  22          And the examiner came back with a notice

09:40  23   of noncompliance.  In response, the applicant went and

09:40  24   took those out and simply submitted a different

09:40  25   amendment without those three paragraphs and figure.

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
| 09:40 | 1  | When the patent got printed, for some                                  |
| 09:41 | 2  | reason it included the first -- the first amendment                    |
| 09:41 | 3  | which -- to which the Patent Office had issued the                     |
| 09:41 | 4  | notice of noncompliance instead of the second.                         |
| 09:41 | 5  | So it appeared that some things got into                               |
| 09:41 | 6  | the patent that were not supposed to be there.  That --                |
| 09:41 | 7  | THE COURT:  Some things got in the patent                              |
| 09:41 | 8  | because of a printing error that should not be there.                  |
| 09:41 | 9  | MR. KATZ:  Yes.  It's no fault of the                                  |
| 09:41 | 10 | applicant basically --                                                 |
| 09:41 | 11 | THE COURT:  Got it.                                                     |
| 09:41 | 12 | MR. KATZ:  Okay.  So the information,                                   |
| 09:41 | 13 | nevertheless, is part of the intrinsic record.  And I'd                |
| 09:41 | 14 | like to just show the Court how this information is                    |
| 09:41 | 15 | part of the intrinsic record.                                          |
| 09:41 | 16 | And if I could just share my screen                                    |
| 09:41 | 17 | really quickly.  This is the '191 patent that we                       |
| 09:41 | 18 | actually referred to in the brief.  And counsel for                    |
| 09:41 | 19 | defendant just mentioned that we used some information                  |
| 09:41 | 20 | in our surreply.                                                       |
| 09:41 | 21 | In the '191 it actually references this                                 |
| 09:42 | 22 | parent application.  It's the '867 application that's                   |
| 09:42 | 23 | 12/764867 which later issued into the '007 patent.                     |
| 09:42 | 24 | So that means that the '007 patent, that                                |
| 09:42 | 25 | specification is intrinsic evidence.  And the Court can                 |

09:42   1   rely on that for claim construction.  It is part of the
09:42   2   intrinsic record.
09:42   3               So I'm just going to pull up the '007
09:42   4   patent so that the Court can see what the '007 patent
09:42   5   is.
09:42   6               THE COURT:  And I'm listening.  I just
09:42   7   have to grab a tablet.  But keep going, I'm listening.
09:42   8               MR. KATZ:  Okay.  And right here on the
09:42   9   face of the '007 patent is the figure that the
09:42   10  defendants complained about.  And it's right here on
09:42   11  the first page.
09:42   12              And, again, this is the '867 application
09:42   13  and this is the '007 patent.  And right at the -- right
09:43   14  at the bottom of the first page it actually shows what
09:43   15  we used in our surreply.  And it shows a light source
09:43   16  here coming in from the side.
09:43   17              So and I'll just show the Court where
09:43   18  this comes from.  It comes from Figure 26 of the
09:43   19  patent.  And it's actually in the description for
09:43   20  Figure 26.  It actually shows that it's a cross-section
09:43   21  and it refers to this being at least one embodiment of
09:43   22  the present invention.
09:43   23              So, again, this is part of the intrinsic
09:43   24  record.  The Court can and should rely on it for
09:43   25  purposes of claim construction.  So as far as I know,

—12—

| | | |
|---|---|---|
| 09:43 | 1 | the defendants haven't pointed to anything that we used |
| 09:43 | 2 | that is not part of the intrinsic record. |
| 09:44 | 3 | So putting that issue aside, I'd like to |
| 09:44 | 4 | refer back to the remainder of the argument.  The |
| 09:44 | 5 | second issue is the light input surface. |
| 09:44 | 6 | And the first major issue here is that |
| 09:44 | 7 | this term need not be construed.  The term was not |
| 09:44 | 8 | redefined by the patentee.  The term is not technical. |
| 09:44 | 9 | There's no suggestion that the patentee redefined it or |
| 09:44 | 10 | that it's got some sort of a specialized meaning.  It's |
| 09:44 | 11 | just "light input surface." |
| 09:44 | 12 | And we agree with the Court, construal of |
| 09:44 | 13 | this term would not be helpful to the jury. |
| 09:44 | 14 | So there's a couple of issues with the |
| 09:44 | 15 | defendants' proposal, even beyond those -- the fact |
| 09:44 | 16 | that it should not be construed. |
| 09:44 | 17 | The first is that the defendants' |
| 09:45 | 18 | proposed construction imposes this new requirement -- |
| 09:45 | 19 | structural requirement that the light input surface has |
| 09:45 | 20 | to face the light source. |
| 09:45 | 21 | And we just saw from the intrinsic record |
| 09:45 | 22 | that one of the embodiments at least does not need to |
| 09:45 | 23 | face the light source. |
| 09:45 | 24 | Second of all -- so defendants' proposal |
| 09:45 | 25 | would exclude a disclosed embodiment, which would be |

| | |
|---|---|
| 09:45 | 1 |

improper.

Second of all, defendants' proposal adds
this other structural limitation.  It refers to "the
light source."  So it creates this antecedent for a
single -- a single light source, which is another
structural limitation.

So there's two aspects of this.  As I
mentioned, it imposes a structural limitation, and then
it also creates this ambiguity as to what does it mean
to face the light source?  Does it need to be
orthogonal or perpendicular to the light source?  So it
creates ambiguity as well.

Again, on the second bullet, it would
contradict the intrinsic disclosures.  And again, we do
have -- within the intrinsic record, we have
embodiments that show light coming in from the side.

So for a number of reasons, the term need
not be construed and the defendants' proposal here adds
structural limitations that should not be -- should not
be added.

So we agree with the Court's plain and
ordinary meaning on this.

THE COURT:  Anything else from the
defendant?

MR. WRAY:  Yes, Your Honor.  If I could

09:47  1   respond briefly to Mr. Katz' point concerning the '007

09:47  2   patent.

09:47  3               Even if the '007 patent is in the

09:47  4   extrinsic record -- sorry -- intrinsic record, it's not

09:47  5   helpful to the Court in this case because the Court is

09:47  6   construing the term "light input surface."  The '007

09:47  7   patent has that figure, but it never uses the term

09:47  8   "light input surface."

09:47  9               So there is no embodiment in the

09:47  10  intrinsic record in which the light is coming into

09:47  11  anything but the light input surface.

09:47  12              While that figure does exist in the '007

09:47  13  patent, the entire patent does not have any reference

09:47  14  to a light input surface nor does it have a reference

09:47  15  to a light output surface.

09:47  16              Further, there was some arguments in the

09:47  17  surreply brief that related to Figures 18 and 19.  I

09:47  18  don't know if the Court is interested in hearing

09:47  19  defendants' perspective on those, but SVV suggested

09:48  20  that defendants misconstrued their arguments.

09:48  21              SVV did rely on Figure 18 in its initial

09:48  22  response brief, and we pointed out that in that case

09:48  23  surface 10 was functioning as the light output surface.

09:48  24              And as to Figure 19, that does not show

09:48  25  that the surface that's been designated as a light

| | | |
|---|---|---|
| 09:48 | 1 | input surface is receiving light and the other one is |
| 09:48 | 2 | just outputting light. |
| 09:48 | 3 | But if the Court doesn't have any further |
| 09:48 | 4 | questions, we will rest on our briefs. |
| 09:48 | 5 | THE COURT:  Okay.  I'll be back in a |
| 09:48 | 6 | second. |
| 09:48 | 7 | (Pause in proceedings.) |
| 09:49 | 8 | THE COURT:  The Court is going to |
| 09:49 | 9 | maintain its construction of plain and ordinary |
| | 10 | meaning. |
| 09:49 | 11 | The next claim term up is "light |
| 09:49 | 12 | harvesting device."  I will hear again from defendant. |
| 09:49 | 13 | MR. CHEN:  Thank you, Your Honor.  This |
| 09:49 | 14 | is Jerry Chen from TechKnowledge Law Group.  I'll be |
| 09:49 | 15 | arguing this term on behalf of defendants. |
| 09:49 | 16 | We've taken the Court's construction to |
| 09:49 | 17 | heart.  And so for the most part we would rest on our |
| 09:50 | 18 | briefing papers.  However, there are a few issues from |
| 09:50 | 19 | the surreply that we would like to address. |
| 09:50 | 20 | For "light harvesting device" the issue |
| 09:50 | 21 | that we'd like to address is plaintiff's argument in |
| 09:50 | 22 | their surreply that the light harvesting device |
| 09:50 | 23 | includes luminescent concentrators. |
| 09:50 | 24 | And I'll share my screen. |
| 09:50 | 25 | THE COURT:  I'm trying to understand what |

| | |
|---|---|
| 09:50 | 1 | you're doing here.  Is your concern that if I have -- |
| 09:50 | 2 | if I go with plain and ordinary meaning that the |
| 09:50 | 3 | plaintiff is going to include something in the plain |
| 09:50 | 4 | and ordinary meaning that they revealed in the surreply |
| 09:50 | 5 | and you want to take it up now?  Is that what we're |
| 09:50 | 6 | doing? |
| 09:50 | 7 | MR. CHEN:  Well, I think what we want to |
| 09:51 | 8 | address is some of the arguments that plaintiff made in |
| 09:51 | 9 | the surreply.  And that to the extent that those were |
| 09:51 | 10 | factors that were important to the Court's |
| 09:51 | 11 | consideration, we wanted to -- |
| 09:51 | 12 | THE COURT:  Okay.  I got it. |
| 09:51 | 13 | MR. CHEN:  -- address those. |
| 09:51 | 14 | THE COURT:  Okay.  Thank you. |
| 09:51 | 15 | MR. CHEN:  Thank you. |
| 09:51 | 16 | So, yes, the issue that we want to |
| 09:51 | 17 | address is plaintiff's argument that light harvesting |
| 09:51 | 18 | devices include luminescent concentrators.  And |
| 09:51 | 19 | specifically it's plaintiff's argument that the '191 |
| 09:51 | 20 | patent specification describes luminescent |
| 09:51 | 21 | concentrators in the context of light harvesting or |
| 09:51 | 22 | enhancing light harvesting efficiency. |
| 09:51 | 23 | And plaintiff reaches this conclusion by |
| 09:51 | 24 | effectively taking two paragraphs in the description of |
| 09:51 | 25 | the background art of the '191 patent and merging it |

09:51    1    into a single paragraph.  And you see here in their

09:51    2    brief what appears to be one paragraph is actually

09:51    3    portions of two separate paragraphs.

09:52    4              And plaintiff does this in order to

09:52    5    create the impression that these two paragraphs are

09:52    6    addressing the same subject matter.  And they are not.

09:52    7              If we look at the '191 patent itself, the

09:52    8    description of the background art, we can see that

09:52    9    there are actually three paragraphs here.

09:52    10             The first one discusses light harvesting

09:52    11   devices and it basically describes the light harvesting

09:52    12   devices and issues associated with light trapping in

09:52    13   light harvesting devices.  At the end of the paragraph

09:52    14   it states that it's the object of the invention to

09:52    15   provide an improved optical structure that can be used

09:52    16   in conjunction with light harvesting devices to

09:52    17   effectively improve light trapping.

09:52    18             Now, the next paragraph the patent

09:52    19   discusses a different category of devices.  It says:

09:52    20   Luminescent concentrators (audio distortion) addressed

09:53    21   the problems associated with light trapping in light

09:53    22   harvesting devices by providing this optical cover

09:53    23   structure that would improve light trapping within

09:53    24   light harvesting devices.

09:53    25             And so you can see from the language that

09:53   1   the last paragraph here is referring back to the

09:53   2   original first paragraph where it's talking about the

09:53   3   object of the invention, which is to address

09:53   4   specifically issues of light trapping in light

        5   harvesting devices.

09:53   6           But more so than just the language

09:53   7   itself, we know that the last paragraph is referring to

09:53   8   the first paragraph because when we look at the

09:53   9   original application of the '191 patent, we see that

09:53   10  there was only two paragraphs.

09:54   11          Here's the original application.  We can

09:54   12  see that there is only two paragraphs in the

09:54   13  description of the background art.  The first one is

09:54   14  describing light harvesting devices, again talking

09:54   15  about the issues with light trapping and stating that

09:54   16  it's the object of the invention to address these

09:54   17  issues specifically in light harvesting devices.

09:54   18          And then the second final paragraph,

09:54   19  again, stating -- restating the fact that the invention

09:54   20  intends to solve these problems and is addressing the

09:54   21  specific issues associated with light harvesting.

09:54   22          The second paragraph, this paragraph

09:54   23  discussing luminescent concentrators, was actually the

09:54   24  paragraph -- one of the paragraphs that were added

09:54   25  during prosecution incorrectly and it had been removed

09:54   1   prior to issuance.

09:54   2                   So, you know, regardless, if we look at

09:54   3   just the language itself, we can see that the patent

09:54   4   never actually discusses or conflates light harvesting

09:55   5   devices with luminescent concentrators.  They are

09:55   6   different devices and they're discussed separately.

09:55   7                   As we know, light harvesting devices

09:55   8   absorb and convert light energy.  Luminescent

09:55   9   concentrators absorb and reradiate light.  They're

09:55   10  different processes, they're different devices and

09:55   11  they're not the same.

09:55   12                   So if Your Honor doesn't have any

09:55   13  questions, I'll move on to the next issue.

09:55   14                   THE COURT:  I don't have any questions.

09:55   15                   MR. CHEN:  So the next issue we want to

09:55   16  address is also related to luminescent concentrators.

09:55   17  And this is related to plaintiff's argument in their

09:55   18  reply -- surreply brief that absorbing and re-radiating

09:55   19  constitutes light conversion.

09:55   20                   And specifically its (audio disruption)

09:55   21  claim misunderstood the physics of luminescence.  And

09:56   22  that somehow it -- defendants correctly understood the

09:56   23  physics of luminescence, we would understand that

09:56   24  that's actually a light conversion process.

09:56   25                   And this mischaracterizes defendants'

09:56  1    position.  We understand what luminescence is.

09:56  2    Luminescence is when light energy is absorbed by a

09:56  3    material, oftentimes a phosphor, and that excites a

09:56  4    electron to an elevated energy state.  And when that

09:56  5    electron -- excited electron relaxes, a photon is

09:56  6    emitted.

09:56  7                What we disagree with is plaintiff's

09:56  8    characterization of that process and characterization

09:56  9    of that process as light conversion.

09:56  10                However, we think the important point

09:56  11   here is really not how the parties decide to

09:56  12   characterize the physics after the fact.  What's

09:56  13   important is how the patent characterizes the process.

09:57  14                And the patent is very clear.  The patent

09:57  15   describes luminescence here as absorbing and

09:57  16   re-radiating.  It does not describe it as light

09:57  17   conversion.  Whenever the patents or any of these

09:57  18   family of patents use "conversion" or "convert," it is

09:57  19   specifically describing a process where light energy is

09:57  20   changed to a different non-light form.  And that does

09:57  21   not include luminescence or re-radiation.

09:57  22                So with that, those are the issues.

09:57  23   Again, if Your Honor has any questions, we'd be happy

09:57  24   to answer them.

09:57  25                THE COURT:  Okay.  I'll be back in a

| | | |
|---|---|---|
| 09:57 | 1 | second. |
| 09:57 | 2 | (Pause in proceedings.) |
| 09:59 | 3 | THE COURT:  Okay.  Thank you for that |
| 09:59 | 4 | break. |
| 09:59 | 5 | I don't think I need to hear a response. |
| 09:59 | 6 | I'm going to maintain the Court's construction of plain |
| 09:59 | 7 | and ordinary meaning. |
| 09:59 | 8 | The next claim term I have up is "light |
| 09:59 | 9 | converting"/"convert...light"/"converting light." |
| 09:59 | 10 | I'll hear again from defendant. |
| 09:59 | 11 | MR. CHEN:  Your Honor, those two |
| 09:59 | 12 | issues -- the issues for light harvesting and light |
| 09:59 | 13 | converting are effectively the same.  And so those are |
| 09:59 | 14 | the same issues. |
| 09:59 | 15 | THE COURT:  That you didn't just argue. |
| 09:59 | 16 | I'm happy to hear it, but if they're the same, it'd be |
| 09:59 | 17 | the same result. |
| 09:59 | 18 | So I'll maintain that construction. |
| 09:59 | 19 | Next up is "aperture."  And so give me |
| 09:59 | 20 | one second.  Okay.  I'll hear first from the plaintiff. |
| 10:00 | 21 | Give me one second. |
| 10:00 | 22 | Okay.  I'll hear from the plaintiff on |
| 10:00 | 23 | this one, please. |
| 10:00 | 24 | MR. KATZ:  Thank you, Your Honor. |
| 10:00 | 25 | Regarding aperture, the patentee extended |

| 10:00 | 1 | the use of this term in two ways.  First of all, the -- |

10:00  1   the use of this term in two ways.  First of all, the --

10:00  2   let me just open up one of these slides.

10:00  3             So there are two issues here.  In general

10:00  4   usage sometime aperture will refer to a hole or an

10:00  5   opening.  The patentee also used it to refer to a

10:00  6   dimension of a hole or opening.

10:00  7             In addition to that, in some places the

10:01  8   patentee used it to refer to a surface.

10:01  9             And let me simply provide some examples.

10:01  10  But the intent here is to not confuse the jury but to

10:01  11  explain to the jury that there are instances where the

10:01  12  patentee has extended the use of the "aperture" term.

10:01  13            So in the first --

10:01  14            THE COURT:  And why is that precluded by

10:01  15  plain and ordinary meaning of aperture to one skilled

10:01  16  in the art based on what he reads in the patent here?

10:01  17            MR. KATZ:  I'm sorry.  I had to turn my

10:01  18  volume up, Your Honor.

10:01  19            Could you repeat that, please?

10:01  20            THE COURT:  I hope so.  What I tried to

10:01  21  ask is:  I understand your argument that aperture here

10:01  22  means maybe more than what I as a layman would think

10:01  23  aperture -- it means.

10:01  24            But why would the plain and ordinary

10:02  25  meaning of aperture not include what you're arguing it

10:02  1    would include to a person skilled in the art based on

10:02  2    what's in the specification?  And why do I need to

10:02  3    construe it to say what you want me to construe it as

10:02  4    opposed to it being what one skilled in the art would

10:02  5    say?

10:02  6                And this is much longer than the first,

10:02  7    but if your point is that you're worried that you'll

10:02  8    have an expert saying that aperture can include what

10:02  9    you want it to include and there's infringement and

10:02  10   they're saying -- defendant's going to say, aperture

10:02  11   doesn't include in its plain and ordinary meaning what

10:02  12   you want it to include, and therefore, there's no

10:02  13   infringement and the fight is over aperture, it'd be

10:02  14   good to take that up now.

10:02  15               So hopefully my question was clear.  If

10:02  16   it wasn't, I can try it again.

10:03  17               MR. KATZ:  Thank you, Your Honor.

10:03  18               So a person of ordinary skill in the art

10:03  19   who reviews the specification would understand, I

10:03  20   believe, that aperture can refer to both a dimension

10:03  21   and also refer to a surface.

10:03  22               The intent here to construe the term was

10:03  23   to not confuse the jury.  And let me just provide one

10:03  24   example.

10:03  25               On Claim 17 of the '321 patent, there's

10:03  1    an element that says:  Wherein a cumulative

10:03  2    light-receiving aperture is less than an area of the

10:03  3    first and second broad-area surfaces.

10:03  4            So there's this comparison between this

10:03  5    thing and the area of this other thing.  So effectively

10:03  6    this claim element is trying to actually compare the

10:04  7    area, the cumulative area of this first thing with this

10:04  8    area of this first and second broad-area surface, this

10:04  9    other thing.

10:04  10           So in order to set up an apples-to-apples

10:04  11   comparison, if aperture were defined to include the

10:04  12   dimension, then you would have a comparison between an

10:04  13   area or a dimension with an area.

10:04  14           So the intent here was just to not -- to

10:04  15   reduce the possibility of any jury confusion by

10:04  16   explaining that aperture could refer to not just the

10:04  17   thing but the dimension of the thing, because some of

10:04  18   these claim elements set up this comparison.

10:04  19           Does that -- at least that hopefully

10:04  20   explains the reason behind the first part of the

10:04  21   proposal.

10:04  22           THE COURT:  What I'm not following is --

10:05  23   and maybe -- let me try this.  Let me flip over to the

10:05  24   defendant and maybe it'll help me come back to the

10:05  25   plaintiff.

| | | |
|---|---|---|
| 10:05 | 1 | So is the defendant -- does the defendant |
| 10:05 | 2 | intend to argue that the plain and ordinary meaning |
| 10:05 | 3 | would not include the dimensions that the -- does the |
| 10:05 | 4 | defendant intend to argue that the plain and ordinary |
| 10:05 | 5 | meaning would not include what the plaintiff believes |
| 10:05 | 6 | it includes based on the specification? |
| 10:05 | 7 | Because I want to make sure, if we have a |
| 10:05 | 8 | claim construction -- a fight over what plain and |
| 10:05 | 9 | ordinary meaning is, we probably ought to think about |
| 10:05 | 10 | that now.  So I'll hear from defendant and then I'll |
| 10:05 | 11 | hear from plaintiff. |
| 10:05 | 12 | MR. WRAY:  Thank you, Your Honor. |
| 10:05 | 13 | At least as to what's being displayed in |
| 10:05 | 14 | this slide, there's no dispute.  And, in fact, our |
| 10:05 | 15 | proposed alternative construction expressly included |
| 10:05 | 16 | the sense of an aperture as a dimension.  In fact, we |
| 10:05 | 17 | kind of brought plaintiff around on this one. |
| 10:06 | 18 | Our proposed construction said we think |
| 10:06 | 19 | it should be plain and ordinary meaning.  But if the |
| 10:06 | 20 | Court needs to construe, part of that construction |
| 10:06 | 21 | should be the area of the aperture. |
| 10:06 | 22 | And then plaintiff eventually agreed with |
| 10:06 | 23 | us, changed its proposed construction from diameter to |
| 10:06 | 24 | area, and then now to dimension.  So we're -- there's |
| 10:06 | 25 | no dispute about that aspect of the term. |

| | | |
|---|---|---|
| 10:06 | 1 | THE COURT:  Okay.  Then let me bounce |
| 10:06 | 2 | back to the plaintiff.  I'm not following why the |
| 10:06 | 3 | plaintiff isn't happy with plain and ordinary meaning. |
| 10:06 | 4 | MR. KATZ:  Based on what the defendant |
| 10:06 | 5 | just represented with respect to adding the dimension |
| 10:06 | 6 | thereof, it does not sound like we have a dispute, if |
| 10:06 | 7 | the defendant is not going to quibble on whether or not |
| 10:06 | 8 | it could include a dimension. |
| 10:06 | 9 | With the Court's indulgence, should I |
| 10:06 | 10 | move on to the second aspect?  Which is that it could |
| 10:07 | 11 | refer also to a surface? |
| 10:07 | 12 | THE COURT:  Yes. |
| 10:07 | 13 | MR. KATZ:  Okay.  So the second -- the |
| 10:07 | 14 | issue is that in some of the claim terms the aperture |
| 10:07 | 15 | can actually also refer to a surface.  And I think this |
| 10:07 | 16 | is one example where the specification shows the term |
| 10:07 | 17 | "aperture" referring to a surface.  And I'm pointing on |
| 10:07 | 18 | Slide 21 to the '318 patent at 9:25 to 27 with |
| 10:07 | 19 | reference to Figure 3. |
| 10:07 | 20 | And it talks about this focusing array |
| 10:07 | 21 | which is Element 6 and the light coming into it.  And |
| 10:07 | 22 | it's referring to one side representing the entrance |
| 10:07 | 23 | aperture perpendicular to the incident beam.  So it's |
| 10:07 | 24 | referring to this surface being the entrance aperture. |
| 10:07 | 25 | So in this way the aperture is not just a |

| | | |
|---|---|---|
| 10:08 | 1 | hole or an opening, but it can refer to the surface |
| 10:08 | 2 | where the light comes through. |
| 10:08 | 3 | So I want to ensure that the jury's not |
| 10:08 | 4 | confused about this.  And that the defendants would not |
| 10:08 | 5 | object to this, in that a "surface" could also be -- |
| 10:08 | 6 | could also be an aperture. |
| 10:08 | 7 | THE COURT:  Well, let's hear from them. |
| 10:08 | 8 | MR. WRAY:  Thank you, Your Honor. |
| 10:08 | 9 | I actually have some initial confusion |
| 10:08 | 10 | here, because I'm at the '318 patent on my screen and |
| 10:08 | 11 | Figure 3 is not what is up on the slide. |
| 10:08 | 12 | So I have some initial confusion about |
| 10:08 | 13 | which patent and which figure plaintiff is intending to |
| 10:08 | 14 | refer here. |
| 10:08 | 15 | MR. KATZ:  I hope we didn't -- we don't |
| 10:08 | 16 | have a cut-and-paste error in here.  Let me pull up a |
| 10:08 | 17 | different slide, just because it might be faster than |
| 10:08 | 18 | to compare that back with the patent itself. |
| 10:09 | 19 | There were other citations where the |
| 10:09 | 20 | aperture is referring to a surface.  And one of them is |
| 10:09 | 21 | in the '999 patent, and it refers to lenses 10 each |
| 10:09 | 22 | having a square aperture. |
| 10:09 | 23 | So this is another example where the |
| 10:09 | 24 | aperture is actually pointing to a surface.  And |
| 10:09 | 25 | hopefully this is a correct rendition on Slide 23 of |

| | |
|---|---|
| 10:09 | 1 |
| 10:09 | 2 |
| 10:09 | 3 |
| 10:09 | 4 |
| 10:09 | 5 |
| 10:10 | 6 |
| 10:10 | 7 |
| 10:10 | 8 |
| 10:10 | 9 |
| 10:10 | 10 |
| 10:10 | 11 |
| 10:10 | 12 |
| 10:10 | 13 |
| 10:10 | 14 |
| 10:10 | 15 |
| 10:10 | 16 |
| 10:10 | 17 |
| 10:10 | 18 |
| 10:10 | 19 |
| 10:10 | 20 |
| 10:10 | 21 |
| 10:10 | 22 |
| 10:10 | 23 |
| 10:10 | 24 |
| 10:10 | 25 |

Figure 5 pointing to these solid areas labeled as 10 and -- in which the patent is actually referring to these lenses as being apertures when they are, in fact, solid surfaces.

So this is just another example are the term "aperture" is used to refer to a surface.

MR. WRAY:  May I respond on that, Your Honor?

THE COURT:  Of course.

MR. WRAY:  Thank you.

As to the diagram that they're showing here, I respectfully disagree with Mr. Katz because the description of the Figure 5 patent says that the lenses are 10.  I believe No. 6 is the entire focusing array.

So it's not pointing to those individual lenses and saying that those are apertures.  It's pointing to those individual lenses and saying they're lenses.

It says that the lenses have apertures, which is consistent with the plain and ordinary meaning because there's openings that are allowing the light to go through those lenses.

So with respect, I don't think that this diagram shows a lens being an aperture.  It shows a lens having an aperture.

—29—

```
10:10    1              MR. KATZ:  In this -- if I may, Your
         2    Honor.
10:11    3              In this case, still the Element 10, these
10:11    4    are -- these are surfaces whether the surfaces are
10:11    5    lenses or something else.  They are still surfaces.
10:11    6    They're not holes.
10:11    7              So the point is whether or not defendant
10:11    8    could argue in the future whether this -- these
10:11    9    apertures have to be holes or could they also be
10:11   10    surfaces.  In which case, the surfaces could be lenses
10:11   11    but it still comes down to whether an aperture could be
10:11   12    a lens or a surface and not just a hole.
10:11   13              MR. WRAY:  And if I could respond, Your
10:11   14    Honor, this is showing that these lenses do not have a
10:11   15    square surface.  There's nothing about the surface
10:11   16    itself that's square.  It's in some sort of
10:11   17    three-dimensional shape that I don't -- maybe it's an
10:11   18    obloid sphere, I can't describe the surface.
10:11   19              But what's known is that the opening for
10:11   20    them is square.  The two-dimensional opening for each
10:11   21    of these lenses is square.  But the lenses themselves
10:11   22    are certainly not square.  Actually they're aspherical,
10:12   23    most likely.
10:12   24              So we wouldn't agree that an aperture is
10:12   25    a surface.  We would agree in this particular case
```

10:12  1    these aspheric lenses have a two-dimensional square

10:12  2    opening that allows the light to go through.

10:12  3                THE COURT:  So here's what we're going to

10:12  4    do.  And I can't, I don't believe, fix this here at the

10:12  5    Markman stage by -- I can't really do things

10:12  6    prophylactically which is I feel like what the

10:12  7    plaintiff is asking me to do.

10:12  8                So though it's not -- I'll say on

10:12  9    the record -- not the best way to do it, I think

10:12  10   "aperture" in this situation does have a plain and

       11   ordinary meaning.

10:12  12               But when the plaintiff gives their

10:12  13   infringement report or the defendant gives a

10:13  14   noninfringement report, this may be just something I

10:13  15   have to take up at summary judgment stage.  And if you

10:13  16   all will put a pin in this to remind me that if the

10:13  17   fight that you all have is over whether or not, for

10:13  18   example in this case, a surface can be included or not,

10:13  19   then you'll take the position you take.  And I'll

10:13  20   resolve it at summary judgment stage.  And it'll either

10:13  21   eliminate an infringement argument or eliminate a

10:13  22   noninfringement argument, one or the other.

10:13  23               I don't think that it's -- I can deal

10:13  24   with it here at this stage just fighting over what the

10:13  25   word "aperture" means.

| | | |
|---|---|---|
| 10:13 | 1 | The final issue is whether or not |
| 10:13 | 2 | "providing first semiconductor quantum dots..." going |
| 10:13 | 3 | on from there, is indefinite or not. |
| 10:13 | 4 | The Court's preliminary construction is |
| 10:13 | 5 | that it is, so I'll hear first from the plaintiff. |
| 10:13 | 6 | MR. KATZ:  Thank you, Your Honor.  I'm |
| 10:13 | 7 | just going to put up a slide on this as well. |
| 10:14 | 8 | So we have one element of Claim 20, and |
| 10:14 | 9 | it refers to:  First semiconductor quantum dots having |
| 10:14 | 10 | a first band gap; providing -- and then it says again: |
| 10:14 | 11 | First semiconductor quantum dots having a second band |
| 10:14 | 12 | gap, which is different from the first bandgap. |
| 10:14 | 13 | So there are two points here that shows |
| 10:14 | 14 | that this is strictly a clerical error and that there's |
| 10:14 | 15 | no credible or reasonable dispute that the highlighted |
| 10:14 | 16 | first, in other words, the second of the first |
| 10:14 | 17 | semiconductor quantum dots should refer to the second |
| 10:14 | 18 | instead of the first. |
| 10:14 | 19 | The first is, there is the definite |
| 10:14 | 20 | article "the" referring to "the first and second |
| 10:14 | 21 | semiconductor quantum dots" in the limitation.  Well, |
| 10:15 | 22 | looking at the antecedent there's a "first" but then |
| 10:15 | 23 | there are two firsts. |
| 10:15 | 24 | So it's clear from that that one of those |
| 10:15 | 25 | needs to be a "second."  Because, again, there's a |

10:15  1    definite article "the" that should refer back to an

10:15  2    antecedent first and second, yet there's only two

10:15  3    antecedent firsts.  So that would suggest to a person

10:15  4    of skill in the art that one of these needs to be a

10:15  5    second.

10:15  6              The other -- the other fact that shows

10:15  7    that this is a clerical error is that it refers to

10:15  8    "first semiconductor quantum dots having a first band

10:15  9    gap" and then literally "the first semiconductor

10:15  10   quantum dots having a second band gap which is

10:15  11   different from the first..."

10:15  12             So that, again, suggests that the first

10:15  13   bandgap and the second bandgap have to be different.

10:15  14   So these two need to refer to different semiconductor

10:16  15   quantum dots.

10:16  16             So we believe that the error is clear on

10:16  17   its face.

10:16  18             The defendants also argued the law on

10:16  19   this a little bit in their briefing and they tried to

10:16  20   conflate the redrafting of claims with judicial

10:16  21   correction, and we feel that we've met the exception

10:16  22   here.  It's an obvious administrative or typographical

10:16  23   error.  We're not trying to wholesale redraft claims.

10:16  24             The defendants also argue that, you know,

10:16  25   we could have gotten a certificate of correction.

10:16  1   There's a time --

10:16  2              THE COURT:  Well, believe it or not, I

10:16  3   actually was one of the lawyers in that case.  And

10:16  4   that's not the way I -- the way I remember that case is

10:16  5   different than the situation we have here.

10:17  6              MR. KATZ:  In summary, the elements that

10:17  7   are required for judicial correction, I think, are

10:17  8   clearly met here.

10:17  9              The error, as we've shown, is evident on

10:17  10  the face of the patent just from the claim language

10:17  11  itself.  There are two aspects of the claim language

10:17  12  that show that there's a clerical error and how to fix

10:17  13  the clerical error.

10:17  14             The specification does not show anything

10:17  15  to the contrary, and our proposed correction is not

10:17  16  subject to reasonable debate.

10:17  17             So we feel that we've met the criteria

10:17  18  here in Lucent.  And we feel that the Court can and

10:17  19  should fix that one word, "first," to a "second."

10:17  20             THE COURT:  Okay.  I'll be a back in just

10:17  21  a second.

10:17  22             (Pause in proceedings.)

10:19  23             THE COURT:  If we can go back on the

10:19  24  record.

10:19  25             The Court is going to maintain its

10:19   1   original claim construction that the claim term is

        2   indefinite.

10:19   3              And I think that's all the claim terms

10:19   4   that we have, but if I'm missing something we need to

10:19   5   take up, someone can holler and let me know.

10:19   6              Anything else?

10:19   7              MR. KATZ:  Nothing else for plaintiff,

10:19   8   Your Honor.

10:19   9              THE COURT:  Defendants?

10:19  10              MR. WRAY:  Nothing else from defendants,

10:19  11   Your Honor, other than to note what we already noted to

10:19  12   the clerks, which is that, although we only elected to

10:19  13   use hearing time for these terms today, defendants do

10:19  14   not agree with the Court's other preliminary

10:19  15   constructions against defendant.

10:19  16              THE COURT:  You bet.  I understand that.

10:20  17              MR. SHAW:  And, Your Honor, on behalf of

10:20  18   ASUSTeK, we'd like to thank you again for taking the

10:20  19   time to listen to our respective positions this

10:20  20   morning.

10:20  21              Thank you so much.  Good to see you

10:20  22   again.

10:20  23              THE COURT:  I have the best job in the

10:20  24   world.  Sometimes I forgot to -- I forget to say it,

10:20  25   but occasionally I'm told I'm in the press with people

10:20   1   wondering why I would want patent cases.  And I always

10:20   2   give the same response when asked, which is:  I think

10:20   3   it's the best lawyers in the world, and so why wouldn't

10:20   4   I want to have cases that have great counsel?

10:20   5           So it's easy for me to understand, but I

10:20   6   guess the question lingers.

10:20   7           So I hope you guys have a wonderful

10:20   8   Easter.  And I hope we see at least some of you in

10:20   9   person in the near future.

10:20   10           Take care.

10:20   11           (Hearing adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT )

2   WESTERN DISTRICT OF TEXAS      )

3

4

5                   I, Kristie M. Davis, Official Court

6   Reporter for the United States District Court, Western

7   District of Texas, do certify that the foregoing is a

8   correct transcript from the record of proceedings in

9   the above-entitled matter.

10                  I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13                  Certified to by me this 28th day of April

14   2023.

15

16                          /s/ Kristie M. Davis
                            KRISTIE M. DAVIS
17                          Official Court Reporter
                            800 Franklin Avenue
18                          Waco, Texas 76701
                            (254) 340-6114
19                          kmdaviscsr@yahoo.com

10:20

20

21

22

23

24

25