IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SVV TECHNOLOGY INNOVATIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> ASUSTEK COMPUTER, INC., <br><br> Defendant. | Civil Action No. 6:22-cv-00311-ADA <br><br> JURY TRIAL DEMANDED |

**DEFENDANT ASUSTEK'S MOTION FOR RULING ON JURY INSTRUCTION REGARDING "VICARIOUS LIABILITY"**

Plaintiff SVVTI is pursuing a direct infringement theory of "Vicarious Liability" at the upcoming September 23, 2024 trial in this case. *See* Amended Complaint Para. 87. Defendant ASUSTeK Computer, Inc. ("ASUSTeK") is a Taiwanese corporation. ASUSTeK does not make, use, import, sell, or offer to sell the Accused Products in the United States. *See* Dkt. 72-4 at 17:19-20; 27:9-10.[1] ASUS Computer International, or "ACI," is a wholly-owned subsidiary of ASUSTeK. Dkt. 84 at 5. ACI is not a named defendant in this case. ACI is a California company, located in Fremont, California. *See* Dkt. 72-6 at 13:1-5. ACI purchases the Accused Products from another wholly-owned subsidiary of ASUSTeK, and ACI then imports and sells the Accused Products in the United States. Dkt. 72-6 at 23:4-7; Dkt. 84 at 5-6.

---

[1] Defendant ASUSTeK previously moved for summary judgment of non-infringement on the issue of direct infringement, which the Court denied. Dkt. 72, 154.

SVVTI contends that Defendant ASUSTeK is liable for the actions of its U.S. subsidiary, ACI, which imports and sells the Accused Products in the United States. In support of its "Vicarious Liability" theory, SVVTI proposes the following "alter ego" instruction:

> A subsidiary may be an alter ego or instrumentality of its parent if the sole purpose in founding the subsidiary corporation was to distribute, in the United States, the parent's products, in which case the parent is liable because the relevant decision, to import and distribute the allegedly patent infringing products, was ultimately controlled by the parent.

Dkt. 143-11 Instruction No. 26, at p. 59-63.

While ASUSTeK objects to this proposed instruction and has proposed an alternative instruction, the Court gave SVVTI's proposed instruction to the jury in two recent cases: *SVVTI v. Acer*, in June 2024. Ex. 1, No. 6:22-cv-00640-ADA, Dkt. 149, Instruction No. 20 ("Infringement Under Vicarious Liability") p. 30-33; and *ACQIS LLC v. ASUSTeK Computer Inc.* Ex. 2, No. 6:20-cv-00966, Dkt. 317, Instruction 19 ("Alter Ego and Agency"), p. 28-29. Furthermore, ASUSTeK understands that the Court has previously indicated that its standard practice is to issue the same instructions where it has recently entered instructions on a given issue.

ASUSTeK seeks the Court's pre-trial ruling regarding the instruction that will be applied to Plaintiff SVVTI's "Infringement Under Vicarious Liability" theories to narrow the issues for trial. Specifically, if the Court orders that SVVTI's proposed instruction on agency/alter ego will be operative instruction for this case – as it has been in prior recent trials before the Court – then ASUSTeK will stipulate pursuant to that instruction that ASUSTeK is liable for the distribution of the Accused Products in the United States by its U.S. subsidiary conditioned only on the Court providing ASUSTeK the opportunity to make preservation objections to the instruction. This approach would remove the issue from the upcoming trial and eliminate the need for witness testimony, documentary evidence, and argument associated with this liability issue, and would otherwise simplify the issues to be considered by the jury.

## I. The Court Has Ample Authority to Resolve Instruction Disputes Pre-Trial.

This motion is being filed pursuant to the Court's instruction on August 19, 2024 that this issue should be submitted through a filing on the docket and will be heard at the September 5, 2024 final pretrial conference. Ex. 5. Furthermore, to the extent disputed, the Court has ample authority under Rule 16 to order the parties to "one or more pretrial conferences" where the "court may consider and take appropriate action on" matters relating to "formulating and simplifying the issues," "obtaining admissions and stipulations about facts and documents to avoid unnecessary proof," "avoiding unnecessary proof and cumulative evidence," and other matters.

## II. SVVTI's Proposed Jury Instruction

In early June 2024, the Court presided over a related trial, *SVVTI v. Acer* (6:22-cv-00640). During that trial, SVVTI similarly advanced "Vicarious Liability" theories of direct infringement. The Court's instruction to the jury included significant portions of SVVTI's proposed jury instruction, and specifically the following "alter ego" instruction:

> A subsidiary may be an alter ego or instrumentality of its parent if the sole purpose in founding the subsidiary corporation was to distribute, in the United States, the parent's products, in which case the parent is liable because the relevant decision, to import and distribute the allegedly patent infringing products, was ultimately controlled by the parent.

Ex. 1, Dkt. 149, p. 31. After this instruction was given to the jury (over Acer's objection), SVVTI argued to the jury that Acer lacked "credibility" for contesting the issue at trial. Ex. 4 (*Acer* Transcript p. 963).

The Court also gave this instruction earlier this year in *ACQIS LLC v. ASUSTeK Computer Inc.* (6:20-cv-00966) over the objection of ASUSTeK. Ex. 2, Dkt. 317 p. 28. In the ACQIS case, the jury answered a question on "Alter Ego or Agency" and found that ASUSTeK was "liable for

the actions of" its US subsidiary that imported and sold the allegedly infringing products in the United States.  Ex. 4, Dkt. 332 Question 3.

### III.   A Pre-Trial Ruling On The "Vicarious Liability" Jury Instruction Will Narrow Issues For Trial.

ASUSTeK contends that SVVTI's Proposed Instruction, including but not limited to the "alter ego" instruction quoted above, constitutes legal error.  ASUSTeK's objections are detailed in Section IV of this motion.[2]  Notwithstanding its objections, ASUSTeK understands that the Court has previously indicated that its standard practice is to issue the same instructions where it has recently entered instructions on a given issue.

Accordingly, ASUSTeK respectfully seeks a pre-trial adjudication of the "Vicarious Liability" jury instruction.  If the Court rules that the same instruction on agency/alter ego will be given to the jury in this trial as has been given in the prior *ACQIS v. ASUSTeK* and *SVVTI v. Acer* trials, and provided that ASUSTeK is given the opportunity to preserve its objections to the instruction, then ASUSTeK will stipulate that pursuant to the instruction, ASUSTeK is liable for the distribution of the Accused Product in the United States by its U.S. subsidiary, ACI, as follows:

(1) The Court has determined that a subsidiary may be an alter ego or instrumentality of its parent if the sole purpose in founding the subsidiary corporation was to distribute, in the United States, the parent's products, in which case the parent is liable because the relevant decision, to import and distribute the allegedly patent infringing products, was ultimately controlled by the parent.

(2) Defendant ASUSTeK is a Taiwanese corporation that designs the ASUS-branded products accused of infringement in this case.

(3) ASUSTeK is the parent corporation of ASUS Computer International ("ACI"), which is a wholly-owned subsidiary of ASUSTeK.

---

[2] These objections are being filed as part of this docket entry, and ASUSTeK will be prepared to read them into the record at the September 5, 2024 pretrial conference if necessary.

  (4) The purpose of ACI is to distribute ASUS-branded products in the United States through importation and sale of those products.

  (5) Pursuant to the Court's above-noted determination of the law to be applied in this case, ASUSTeK hereby stipulates that it is vicariously liable for the distribution of the Accused Products in the United States by its wholly-owned subsidiary, ACI, including through the importation and sale of those products.

This approach, which is similar to a summary determination of a legal question without underlying factual disputes, would not only eliminate this issue for jury but would also meaningfully streamline the presentation of witnesses and evidence.

  Even though it stands to have its proposed instruction adopted as the controlling law in the case and even though it stands to "win" on the currently disputed issue of vicarious liability, SVVTI opposes this motion. For whatever reason, SVVTI does not want ASUSTeK to "'stipulate' away its arguments about alter ego and agency." Ex. 5 (email). Rather, SVVTI desires to prevent the Court from issuing a seemingly inevitable ruling on the disputed jury instruction so that SVVTI can waste valuable time at trial putting witness testimony and documentary evidence relating to corporate entities and corporate structure into the record before the jury, and unnecessarily complicate the issues considered by the jury. Whatever the reason for SVVTI's protests, it has no legal basis and runs contrary to the fundamental principle of narrowing issues for trial. ASUSTeK, for its part, is simply being realistic. The Court has given SVVTI's proposed instruction on alter ego to two juries this year, and has stated that it will stay consistent in circumstances such as this, and there is no factual disputes under the proposed instruction. ASUSTeK is presenting a straight-forward way to streamline the trial and simplify the issues presented to the jury while preserving ASUSTeK's legal arguments for appeal.

  **IV.   ASUSTeK's Objections To SVVTI's Proposed Instruction**

  SVVTI seems strangely concerned with the formal mechanism for ASUSTeK to preserve its objection to the proposed instruction. ASUSTeK presents its objections below and will be

prepared to read the objections into the record at the upcoming September 5 pre-trial conference and will similarly enter the above-noted stipulation on the record as well.

ASUSTeK objects to the inclusion of SVVTI's alter ego instruction as contrary to Texas law. Because alter ego is not an issue unique to patent law, courts apply the law of the regional circuit. *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004); *Celgene Corp. v. Mylan Pharms. Inc.,* 17 F.4th 1111, 1125 (Fed. Cir. 2021) ("Corporate separateness is an issue of regional-circuit law."). In the Fifth Circuit, "the federal and state alter ego tests are essentially the same," and Fifth Circuit "non-diversity alter ego cases have rarely stated whether they were applying a federal or state standard, and have cited federal and state cases interchangeably." *United States v. Jon-T Chems., Inc.*, 768, 690, n.6 (5th Cir. 1985); *see also Chao v. Occupational Safety and Health Review Comm'n*, 401 F.3d 355, n.3 (5th Cir. 2005) ("state and federal alter ego tests are essentially the same").

Here, SVVTI's proposed instruction that "a subsidiary may be an alter ego or instrumentality of its parent if the sole purpose in founding the subsidiary corporation was to distribute, in the United States, the parent's products, in which case the parent is liable because the relevant decision, to import and distribute the allegedly patent infringing products, was ultimately controlled by the parent" is contrary to Texas law, which holds that even "domination" of a subsidiary by a parent company is not enough for piercing the subsidiary's veil:

> We are not saying that mere "domination" of a subsidiary by a parent may allow piercing of the subsidiary's veil.  ***Of course the parent may dominate the subsidiary***.  A subsidiary by its nature is ultimately subservient in any case, and domination is the prerogative of the parent.  ***The parent can dictate the direction***, the form and the style of the subsidiary.  It can hire and fire, create and dissolve.  ***And the subsidiary will still insulate the parent from liabilities incurred by the subsidiary***.

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163 (5th Cir. 1983) (quoting *Edwards*, 700 F.2d at 1002) (emphasis added)).

ASUSTeK would also further object to the entirety of the Court's instruction regarding "Infringement Under Vicarious Liability" from the *SVVTI v. Acer* case (which is also proposed by SVVTI in its proposed instructions here) if it was given in this case. SVVTI's proposed instruction did not require that SVVTI "pierce the corporate veil" to establish liability, but instead broadly instructs that

> "the steps performed by [the US subsidiary are attributable to [the parent company] if you find that **either** (1) [the parent] exercised **direction or control** over [the US subsidiary] when [the US subsidiary] performed infringing acts, (2) [the US subsidiary] acted as the **agent** of [the parent] with respect to infringement; (3) or [the US subsidiary] was the **alter ego** of [the parent]."

Ex. 1 (*Acer* Dkt. 149 at p. 30) (emphasis added); Dkt. 143-11 p. 58 (*SVVTI's* Proposed Instruction).[3]

Contrary to SVVTI's proposal, "[i]n legal proceedings, 'subsidiary corporations and parent corporations are separate and distinct "persons" as a matter of law;' the separate entity of corporations will generally be observed by the courts even where one company may dominate or control the other company, or treats the other company as a mere department, instrumentality or agency." *Laosa v. Avco Corp.*, No. 1:08-cv-399, 2009 WL 10676765, at *6 (E.D. Tex. Feb. 9, 2009) (emphasis added) (*quoting CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 898 (Tex. App. – Dallas 2007, pet. denied). As the Fifth Circuit has instructed: "Generally, there is **no vicarious liability** under Texas law if the parent and the subsidiary corporations are

---

[3] SVVTI further proposes a "Joint Enterprise" instruction (Dkt. 143-11 at p. 59) that the Court declined to give in the *Acer* trial. Nevertheless, ASUSTeK's objection applies equally to this proposed instruction, as it is legally insufficient to pierce the corporate veil and, accordingly, is legally insufficient for a finding of vicarious liability.

entirely separate legal entities and there is no showing of fraud." *American Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 147 (5th Cir. 1995) (emphasis added).

The burden to pierce the corporate veil "is a significant one, and the parent corporation's separate existence will be given effect 'unless there are circumstances justifying disregard of the corporate entity' . . ." *Matter of Chrome Plate Inc.*, 614 F.2d 990, 996 (5th Cir. 1980). "[T]he general rule is that the separate corporate entity of corporations will be observed by the courts, even though one may dominate or control the other, or may treat it as a mere department, instrumentality, agency, etc.; and courts will disregard this separate legal identities of the corporations *only* when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other." *Edwards*, 700 F.2d at 1000.

More particularly, "direction and control" and "agency" are not legally sufficient to pierce the corporate veil under Texas and 5th Circuit law.  Complete ownership and identity of directors and officers are an insufficient basis for applying the alter-ego theory to pierce the corporate veil, and common business departments is insufficient to pierce the corporate veil. *Jon-T*, 768 F.2d at 690.  Contrary to SVVTI's proposed instruction that it is enough merely to show that a subsidiary is "contractually obligated" to the parent to carry out infringing acts and did so to "receive a benefit" from the parent and that the parent 'established how or when the acts were performed" and "profits from the direct infringement and has the right and ability to stop that infringement," or that agency liability occurs when the parent corporation "manifests assent" to the subsidiary that it "shall act on the principal's behalf an subject to the principal's control," Texas law requires veil piercing – i.e. that a corporation is "organized and operated as a mere tool or business conduit" for the parent company.  The "Texas Supreme Court has never endorsed a theory of single business

8

enterprise liability." *Paisano Cap. SA de CV v. Velazquez*, No. 7:19-CV-078, 2019 WL 6649294, at *10 (S.D. Tex. Dec. 6, 2019).

## IV.    Conclusion

While maintaining and preserving its objection, ASUSTeK respectfully requests that the Court resolve this legal issue prior to trial to promote streamlining of trial and to simplify issues for the jury.  If the Court is going to utilize the instruction from the prior *ACQIS* and *SVVTI/Acer* cases quoted above, then ASUSTeK will—while specifically preserving the above objections to the instructions—file a stipulation (for purposes of this case only) that pursuant to the statement of law in the instruction, ASUSTeK is liable for the importation and distribution of the Accused Products in the United States by its U.S. subsidiary, thereby removing this issue from the upcoming trial and preserving the issue for appeal.


Dated:  August 27, 2024              Respectfully submitted,


                                     **Erise IP, P.A.**

                                     By: /s/ *Michelle Marriott*
                                     Eric A. Buresh
                                     Michelle L. Marriott
                                     Chris R. Schmidt
                                     7015 College Blvd., Ste. 700
                                     Overland Park, KS 66211
                                     Tel: (913) 777-5600
                                     Fax: (913) 777-5601
                                     eric.buresh@eriseip.com
                                     michelle.marriott@erisip.com
                                     chris.schmidt@eriseip.com

                                     *Attorneys for Defendant ASUSTeK Computer, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2024, the foregoing was electronically filed in compliance with Local Rule CV-5 and served via the Court's electronic filing system on all counsel of record.

/s/ Michelle Marriott
Michelle Marriott