IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS INC. | § § § | |
| *Plaintiff*, | § § | Civil Action No. 6:22-cv-00311-ADA |
| v. | § § | |
| ASUSTEK COMPUTER INC. | § § | JURY DEMANDED |
| *Defendant*. | § § § | ▇▇▇▇▇▇▇▇ |

**DEFENDANT ASUSTEK COMPUTER INC.'S MOTION TO VACATE
JUDGMENT OR, ALTERNATIVELY, FOR NEW TRIAL DUE TO
<u>SVV'S LITIGATION MISCONDUCT AND MISREPRESENTATIONS</u>**

## TABLE OF CONTENTS

I. FACTUAL BACKGROUND ...................................................................................1

    1. SVV Shows The Jury A Blurry Serial Number In Live Microscope Demonstration. ...................1

    2. SVV Affirmatively Misrepresents That Non-Blurry Images Of Microcavities Were A "Picture Taken In Court Yesterday." ...................4

    3. SVV Claims Ignorance About The Picture And Pulls The Plug On Its Rebuttal Case ...................6

II. RULE 60:  THE COURT SHOULD VACATE THE JUDGMENT DUE TO SVV'S MISCONDUCT AND MISREPRESENTATIONS ...................7

    A. SVV's Misrepresentations and Misconduct ...................8

    B. SVV Prevented ASUS From Fully and Fairly Presenting Its Case. ...................9

    C. The Entire Judgment Should Be Vacated ...................11

III. RULE 59:  ASUS IS ENTITLED TO A NEW TRIAL DUE TO SVV'S AMBUSH TACTICS, WHICH DEPRIVED ASUS OF A FAIR TRIAL . ...................11

Facing a failure of proof on disputed claim limitations at trial and desperate to plug the hole, SVV made misrepresentations to the Court, to the jury, and to ASUS's expert witness to inject purported "evidence" of infringement into the case. In so doing, SVV misled the Court, and ambushed ASUS, resulting in an unfair trial. SVV's misconduct and misrepresentations prevented ASUS from fully and fairly presenting its case and thereby deprived ASUS of a fair trial. For all the reasons set forth herein, ASUS respectfully requests that the Court vacate the Final Judgment or, in the alternative, grant ASUS a new trial under Federal Rules of Civil Procedure 59 and 60.

## I. FACTUAL BACKGROUND

SVV asserted claims that required deflecting elements (i.e., microcavities) that were "formed . . . according to a predetermined two-dimensional pattern" ('562 Patent) and that were "in a predetermined alignment with" elongated cylindrical lenses ('342 Patent). But despite admitting that "predetermined" meant "by design," SVV had no substantial evidence of any intentionally designed two-dimensional pattern of microcavities in the accused light guides or any intentionally designed alignment between the microcavities and the lenses. To the contrary, the evidence showed the placement of microcavities in the ASUS accused light guides is "random." There was no substantial evidence of infringement, as explained in ASUS's Motions for Judgment as a Matter of Law and for New Trial, filed contemporaneously and incorporated herein. This is when SVV embarked on a strategy of ambush and misconduct involving misrepresentations and fabrication of evidence as set forth below.

### 1. SVV Shows The Jury A Blurry Serial Number In Live Microscope Demonstration.

To try to persuade the jury that the accused products included a "predetermined two-dimensional pattern" ('562 Patent) of microcavities that are "in a predetermined alignment with" elongated cylindrical lenses ('342 Patent), SVV first solicited new surprise opinions from its

1

expert, Mr. Credelle. During his direct examination, Mr. Credelle, offered unsupported and conclusory testimony that the light guides were "designed by a CAD program" and that there was a "manufacturing tool" used to align the microcavities and lenses. Trial Tr. 283:10-284:3. There was no evidence of this in the case, and on cross-examination Mr. Credelle admitted that he had not shown the jury any actual CAD program or any actual tools. Dkt. 205, Trial Tr. 375:23-376:13, 377:25-378:14, 380:4-14.

With SVV's initial effort debunked, on re-direct, SVV's counsel produced a microscope (the existence or expected use of which SVV had not disclosed to ASUS in any way) and two light guides, and asked Mr. Credelle whether they would support his assumption of the existence of a CAD file (that he did not have) containing a "predetermined set of pattern and alignment with lenses." *Id*. at 386:16-387:14. Counsel for ASUS objected to the new expert testimony, but the Court allowed it so long as counsel for SVV asked the questions in a context of Mr. Credelle responding to what was asked on cross. *Id*. at 387:17-19, 388:2-6.

Accordingly, Mr. Credelle took the microscope and displayed to the jury live images of very blurry model numbers imprinted onto the top of the two light guides. The purpose of this testimony, according to Mr. Credelle, was to provide "evidence" of a "predetermined pattern" through a "ten-digit number that's written into the light guide plate that identifies the file that determines the locations of the dots." *Id*. at 388:8-14. Mr. Credelle's testimony is contained at Dkt. 205, Trial Tr. 390:14-393:5, and is summarized as follows:

- **The Set-Up.** SVV's counsel handed Mr. Credelle a microscope and a tablet, along with two light guides that SVV represented to be "two PG32UQ light guides." Dkt. 205, Trial Tr. 387:8-14, 890:14-24.

- **The First Light Guide**. Mr. Credelle put one light guide under the microscope, and testified that "you can see, I believe, that there's a model number." *Id*. at 391:10-11. In doing so, Mr. Credelle "apologize[d] for the lighting in this court," and acknowledged that the display to the jury was "***hard to read***," and that the purported model number was "backwards." *Id*. at 391:4-14. When asked if the first character was a "backwards P," Mr. Credelle fumbled, "I think it's – yeah. It's ***hard to read***." Dkt. 205, Trial Tr. 391:15-20. SVV's counsel persisted, asking "Is it a P32 to start," to which Mr. Credelle testified, "I believe that's what it is. Yes. You can see it better than me." *Id*. at 391:21-23. This was the conclusion of the examination of the first light guide plate.

- **The Second Light Guide**. SVV then led Mr. Credelle through an abbreviated demonstration regarding the second light guide to show, according to SVV's counsel, "that they have the same number." Dkt. 205, Trial Tr. 391:24-392:6. SVV asked just one question – "is that our backwards P32 that we are seeing again … in the same serial number?" – to which Mr. Credelle responded, "Yes." *Id.* This was the conclusion of the examination of the second light guide plate.

The trial transcript never references or suggests that any photograph was taken during Mr. Credelle's testimony. And, as shown above, the only thing that SVV and Mr. Credelle displayed to the jury was a blurry image of a model number that was "hard to read."

Mr. Credelle then testified that the existence of a matching model number on two light guides showed both that "the lenses and the pattern are predetermined" because it "is evidence to a person of skill in the art, certainly to me, that there is a CAD file – there's a computer file that indicates the location of each and every one of those dots that I've actually seen that they – they start to line up if you put them on top of each other." Dkt. 205, Trial Tr. 392:7-14. As Mr. Credelle was forced to admit on re-cross, however, he ***did not show the jury*** any actual "CAD file name" (*Id*. at 393:19-23, 394:16-20), and he ***did not show the jury*** any spec sheet with a purported "dot pattern" (*Id*. at 394:21-23). Further, despite Mr. Credelle's suggestion that his new opinion was "based on measurements" that he had performed, he ***did not show the jury*** those alleged

3

measurements either. Dkt. 205, Trial Tr. 395:6-13 ("Q: Measurements that you haven't shown the jury either?  A: That's correct.").

The takeaways from this live demonstration are four-fold.  First, the serial number images displayed were partial, backwards, extremely blurry, and hard to see.  Second, there is absolutely no reference in the testimony to suggest that any microcavities on the light guide plates were shown to the jury during the demonstration. Third, there is no indication in the record that any pictures were taken or captured during the live demonstration. Fourth, Mr. Credelle's testimony concluded with him conceding that despite his live demonstration, he still had not shown the jury any actual evidence of a CAD file, a dot pattern, or measurements to indicate a dot pattern.  In short, SVV's second effort to conjure some evidence of infringement was also debunked.

### 2. SVV Affirmatively Misrepresents That Non-Blurry Images Of Microcavities Were A "Picture Taken In Court Yesterday."

The next day, SVV cross-examined Dr. Goossen, ASUS's technical expert, with a high-resolution, highly magnified picture that neither Dr. Goossen nor ASUS nor anyone else had ever seen before. Without warning and without first asking permission from the Court, SVV published a photograph on a demonstrative slide to the entire courtroom – including to the jury – and represented that it was a side-by-side picture of "microstructures" from two accused ASUS PG32UQ products that was taken "live in the courtroom" while SVV's expert, Mr. Credelle, was on the witness stand the day before.  Dkt. 206, Trial. Tr. 690:1-6.  A far cry from the backwards, partial, blurry, "hard to read," model number from the live demonstration the day before, the picture displayed by SVV presented a crystal clear, high resolution, highly magnified image where microstructures that are a tiny fraction of the size of the model number were clearly visible.[1]  This

---

[1] Counsel for ASUS later referred to the photograph as wedding day quality, noting they "look like wedding pictures, they were so clear."  Dkt. 207, Trial Tr. 820:20-22.

4

picture had not been taken live in the courtroom the day before (indeed, what was shown in the courtroom the day before was barely visible at all), and ASUS immediately objected that "we've not seen this slide nor has it been admitted into evidence," "I don't know what this is," and "there was literally no picture done in court yesterday." Dkt. 206, Trial Tr. 690:7-9, 20-21.[2] Yet counsel for SVV doubled down, and affirmatively represented to the Court, *twice*, that it was (1) a "picture that we did in court yesterday with Mr. Credelle" and (2) that counsel for ASUS had even "cross-examined Mr. Credelle on it." Dkt. 206, Trial Tr. 690:1-25.

These representations were not true, and the distinction is critical to the unfairness that resulted. As discussed above, the display done in Court with Mr. Credelle was done live (there was no photograph), and the live image was very hard to see. Counsel for ASUS therefore did not cross-examine Mr. Credelle on any high resolution "picture," nor could it have had any opportunity to do so. To this day, ASUS has no way to know where the high-resolution images came from or how they were secured. This was a complete ambush, and it persisted as SVV used the never-disclosed high resolution "pictures" to attack Dr. Goossen, misleading him and the jury by telling him that they were "micrographs taken in court yesterday" and suggesting to Dr. Goossen (and to the jury) that "if you bring them together, sir, you'll see that the pattern [of dots] on the left, the pattern on the right, matches, correct, sir?" Dkt. 206, Trial. Tr. 691:3-14. This "bring them together" exercise was plainly suggestive to the jury that there was some repeating pattern of microcavities, but neither ASUS nor its expert had any opportunity or ability to test the veracity of what SVV was showing to the jury. Indeed, Dr. Goossen was understandably confused. He testified that he did not "believe [the picture SVV was showing him] was possible with that

---

[2] This was not the only example of undisclosed information and slides being improperly published to the jury by SVV during the trial. *See also* Dkt. 204, Trial Tr. 207:9-209:5 (Vasylyev testimony), Dkt. 206, Trial Tr. 686:6-17 (Goossen testimony).

5

microscope [SVV] had" (Dkt. 206, Trial Tr. 691:6-11), and further explained that the microscope would not have had the "magnification" necessary to take the picture that SVV's counsel published to him and the jury (*Id*. at 718:24-719:8).

At this point, SVV could have let it go knowing that they had misled Dr. Goosen and everyone else, but instead SVV's counsel began criticizing Dr. Goosen repeatedly in front of the jury for not showing any new pictures of his own to rebut the picture that SVV had represented was taken in the courtroom the previous day. Dkt. 206, Trial Tr. 691:18-20, 719:17-720:13. Of course, this line of attack is totally unfair for the same reason – Dr. Goosen had no idea that there would be any picture to challenge because the picture in question was not taken in court as SVV claimed. This is another critical unfairness – SVV used its own misrepresentation to impugn the credibility of Dr. Goosen on a totally fabricated basis. Once Dr. Goossen was finished testifying, SVV doubled down even further by requesting – and receiving Court approval for – a rebuttal case solely to address the "recent accusation of lying" and "insinuation . . . that those slides were fabricated." Dkt. 206, Trial Tr. 719:17-721:20.

### 3. *SVV Claims Ignorance About The Picture And Pulls The Plug On Its Rebuttal Case.*

Before SVV's rebuttal case, and to avoid surprise given the sensitive nature of what was forthcoming, counsel for ASUS alerted the Court that the expected cross-examination of Mr. Credelle on rebuttal would likely emphasize and directly challenge the false and misleading statements of SVV's counsel regarding the new picture. ASUS's counsel recounted the multiple representations of SVV's counsel to the Court that the picture had been taken in Court and stated, "The question here is: When was that picture that we saw yesterday taken?" Dkt. 207, Trial Tr. 818:9-819:2, 820:4-821:3. In response, the Court asked SVV directly: "Did he do it here in court

6

Case 6:22-cv-00311-ADA   Document 224   Filed 11/19/24   Page 9 of 16

or not? I'm asking." Dkt. 207, Trial Tr. 819:3-4.  Counsel for SVV then, three times, claimed ignorance:

> MR. CALDWELL: *I don't know if he snapped*, if he pushed the -- (Clarification by Reporter.)
>
> THE COURT: I want to know what – just tell me what he did.
>
> MR. CALDWELL: This was when he – when Mr. Credelle stepped down and gave the demonstration and zoomed in on exactly that part, it's that image. But *I don't know if he pushed the capture there or the captures from another date*. . ..
>
> What *I don't know is if that exact capture is from that moment or in the breakout room* or whatever.

Dkt. 207, Trial Tr., at 819:5-820:3 (emphasis added).  With these "I don't know" answers on the record, it became immediately and crystal clear that SVV's counsel had put pictures in front of the jury, during cross-examination of an opposing expert, that lacked any foundation at all and that ASUS never had an opportunity to fairly explore.

At this point, counsel for ASUS reiterated he did not believe that counsel for SVV was "forthcoming with the jury, with the witness, or with this Court in response to [his] objection," and that he "want[ed] to point that out to the jury if they put this witness on the stand."  Dkt. 207, Trial Tr. 830:4-821:3. The Court then instructed that "Plaintiff can call him. You can cross him and then we'll finish."  *Id*. at 821:5-7.  Having seen what was coming, however, SVV chose not to call Mr. Credelle in rebuttal.  *Id*. at 821:12-23 ("Actually, plaintiff rests, Your Honor.").  SVV's decision to avoid having its conduct exposed in front of the jury further evidences SVV's tacit admission that it had misled everyone.

**II.     RULE 60: THE COURT SHOULD VACATE THE JUDGMENT DUE TO SVV'S MISCONDUCT AND MISREPRESENTATIONS.**

This case presents precisely the type of "misrepresentation or misconduct by an opposing party" that Rule 60(b)(3) was designed to address.  Fed. R. Civ. P. 60(b)(3).  Rule 60(b)(3) "is

7

aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). "The rule is remedial and should be liberally construed." *Id.* Under Rule 60(b)(3), the Court may relieve a party from a final judgment if it establishes by clear and convincing evidence that (1) the adverse party engaged in fraud or other misconduct, and (2) this misconduct prevented the moving party from fully and fairly presenting its case. *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place,* 62 F.3d 767, 772 (5th Cir. 1995). SVV's repeated misrepresentations and misconduct resulted in substantial unfairness to ASUS and its ability to present its case.

      A.      **SVV's Misrepresentations and Misconduct.**

SVV's conduct at trial was improper and misled the jury, which is exactly the type of fact pattern that allows a court to set aside a judgment. The facts set forth above tell the story. To recap, SVV solicited a live display of portions of model numbers on two light guides with Mr. Credelle that were barely visible and not effective for showing much of anything to the jury. Then, the next day, SVV crossed ASUS's technical expert witness with (and showed to the jury without permission or pre-disclosure) highly magnified, high-resolution pictures purporting to be the microcavities on two light guides that were plainly not captured during Mr. Credelle's testimony. ASUS had no idea where the pictures came from, and we know now that even SVV's counsel couldn't pinpoint the foundation for the pictures.

Yet in response to ASUS's contemporaneous objections, SVV affirmatively and repeatedly misrepresented to the Court – in front of the jury – not only that the pictures were captured during Mr. Credelle's testimony, but that it was fair to use them because ASUS had somehow cross-examined Mr. Credelle on the pictures. The representations of SVV's counsel were entirely false, and the reason for the misrepresentations is not hard to discern. SVV falsely stated that ASUS had

8

actually cross-examined Mr. Credelle on the pictures because it was trying to establish the fairness of its ambush tactics. In reality, however because ASUS had no previous ability to cross-examine Mr. Credelle on the pictures and had no advance notice of the pictures, SVV's ambush was quintessentially unfair. Indeed, ASUS did not have the ability to cross-examine anyone on the high-resolution pictures because they were not taken in Court, and they were not provided to ASUS at any point in advance. Similarly, ASUS's expert witness, Dr. Goossen, had no ability to fairly respond to SVV's questioning because he, like ASUS, had no idea where the pictures came from, and SVV took advantage of this by unfairly attacking Dr. Goossen's credibility. When ultimately questioned by the Court, SVV claimed ignorance as to where the pictures came from precisely because they were caught in their own collective misrepresentations. As a result of SVV's conduct, ASUS was severely disadvantaged, its expert was unfairly attacked, and the jury was unfairly confused by evidence that lacked any proper foundation.

**B.     SVV Prevented ASUS From Fully and Fairly Presenting Its Case.**

SVV maintained to the Court that the pictures were taken in Court precisely because, absent this misrepresented fact, it would have been clear that ASUS had no ability to test the evidence through cross-examination of Mr. Credelle or via analysis by its own expert, Dr. Goossen. Thus, SVV's claim that ASUS actually cross-examined Mr. Credelle about the pictures was incorrect. This was fundamentally unfair. Compounding this unfairness, SVV seized on the opportunity to impugn the credibility of Dr. Goossen regarding the fabricated pictures at issue. Put simply, SVV undermined Dr. Goosen's credibility based on photographs that plainly were not taken in Court the previous day as SVV represented, and which Dr. Goossen had thus never had the opportunity to analyze. It does not get much more unfair.

This conduct prevented ASUS from fully and fairly presenting its infringement case, and the jury's infringement "verdict was irretrievably tainted" by SVV's misconduct and misrepresentations. *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1324 (Fed. Cir. 2016) (reversing the district court's denial of a new trial under Rule 60(b)(3) where movant deprived of full and fair opportunity to present its case due to false testimony on central infringement issue at trial). SVV's actions "sabotaged the federal trial machinery, precluding the 'fair contest' which the Federal Rules of Civil Procedure are intended to assure." *Rozier v. Ford Motor Co.*, 573 F.2d 1332,1346 (5th Cir. 1978). Notably, Rule "60(b)(3) does not require that the information [at issue] be such that it can alter the outcome of the case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005); *Wilson v. Thompson*, 638 F.2d 801, 804 (5th Cir. 1981) ("We recognize that a party moving under Rule 60(b)(3) may prevail without showing that the alleged fraud affected the outcome of the prior trial."); *Rozier*, 573 F.2d 1339 (reversing denial of 60(b)(3) where misconduct impacted the way movant approached the case or prepared for trial and thus prejudiced the movant). Indeed, as here, when a jury is presented with testimony (the unfair cross-examination of Dr. Goossen) based on misrepresentations and fabrications that materially go to issues of infringement, all of the jury's findings become suspect. *Fraige v. Am.-Nat. Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993) (reversing district court's denial of new trial under Rule 60(b)(3) due to forged evidence); *Rembrandt*, 818 F.3d at 1325 ("While we do not know the exact impact the false testimony would have had on the jury, the false testimony may well have been critical to the [infringement] verdict and the jury may well have been impacted . . .").

### C. The Entire Judgment Should Be Vacated.

While the misconduct and misrepresentations discussed herein related to the "predetermined" limitations of the '342 and '562 patents, the entire Final Judgment should be vacated. It is "impossible accurately to appraise the extent to which the jury relied on testimony tainted by the false and forged documentation." *Fraige,* 996 F.2d at 299; *Rembrandt*, 818 F.3d at 1325–27. A litigant who engages in misconduct should "not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent." *Fraige*, 996 F.2d at 299. Accordingly, ASUS respectfully requests the Court vacate the Final Judgment in its entirety.

### III. RULE 59: ASUS IS ENTITLED TO A NEW TRIAL DUE TO SVV'S AMBUSH TACTICS, WHICH DEPRIVED ASUS OF A FAIR TRIAL.

In the alternative, SVV's tactics compel a new trial under Federal Rule of Civil Procedure 59. "According to the Fifth Circuit, it is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise and the surprise must be inconsistent with substantial justice in order to justify a grant of a new trial." *Putman v. Mgmt. & Training Corp.*, No. A-08-CA-685-SS, 2009 WL 10669155, at *1 (W.D. Tex. Aug. 18, 2009). Further, "new trials can be granted when, among other reasons . . . the trial was not fair . . . to the party moving for a new trial." *Id.* In particular, a new trial is warranted when undisclosed testimony "constitute[s] unfair surprise and trial by ambush such that it deprive[s] the Defendant of a fair trial." *Id.* at *3. In addition, "the fact that a verdict is based on false testimony is sufficient grounds for a new trial." *Id.* at *3, n.3 (citing *La Fever, Inc. v. All–Star Ins. Corp.*, 571 F.2d 1367, 1368 (5th Cir. 1978)).

SVV's fabricated "picture" evidence, and SVV's corresponding misrepresentations, were an ambush. The picture that SVV used to cross-examine Dr. Goossen was never disclosed to ASUS

11

or anyone else before SVV displayed it to the jury and questioned Dr. Goossen on it. Moreover, as discussed in detail herein, SVV misrepresented that it was a picture taken in Court in order to secure the ability to question Mr. Goossen on it when, in fact, the picture was not taken in Court. SVV's actions substantially prejudiced ASUS. ASUS had no way to address the new, undisclosed picture, and also had no way to anticipate that SVV would generate pictures out of court as evidence of the "predetermined" claim limitations, and then try to pass them off as actually taken "in Court." ASUS had no ability to redress the attacks on Dr. Goossen that flowed directly from SVV's misrepresentations.

Collectively, this deprived ASUS of a fair trial. *Putman*, 2009 WL 10669155, at *3 (granting new trial where "testimony at trial was an unfair surprise to the Defendant" because it was "not disclosed" and accordingly the defendant "had no opportunity to prepare for this testimony"). SVV's tactics "constituted unfair surprise and trial by ambush such that it deprived [ASUS] of a fair trial." *Id.* ASUS is entitled to a new trial on this basis. Fed. R. Civ. P. 59.

Accordingly, for all of the reasons set forth herein, ASUS respectfully requests that the Court vacate the Final Judgment in its entirety or, in the alternative, grant a new trial.

Dated:  November 12, 2024                          Respectfully submitted,

                                                  **Erise IP, P.A.**

By: /s/ *Michelle Marriott*
Eric A. Buresh
KS Bar No. 19895
Michelle L. Marriott
KS Bar No. 21784
Chris R. Schmidt
KS Bar No. 27833
Nick Apel
KS Bar No. 28623
7015 College Blvd., Ste. 700
Overland Park, KS 66211
Tel: (913) 777-5600
Fax: (913) 777-5601
eric.buresh@eriseip.com
michelle.marriott@erisip.com
chris.schmidt@eriseip.com
nick.apel@eriseip.com

Mark D. Siegmund
State Bar No. 24117055
Email: msiegmund@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES, PLLC**
400 Austin Ave., Ste. 903
Waco, Texas 76701
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

*Attorneys for Defendant ASUSTeK Computer, Inc.*

## CERTIFICATE OF CONFERENCE

On November 12, 2024, the undersigned conferred with counsel for Plaintiff, who confirmed that Plaintiff opposes this motion.

/s/ Chris Schmidt

## CERTIFICATE OF SERVICE

/s/ Michelle Marriott

14