**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS INC. | § § § | |
| *Plaintiff*, | § § | Civil Action No.  6:22-cv-00311-ADA |
| v. | § § | JURY DEMANDED |
| ASUSTEK COMPUTER INC. | § § | ████████████ |
| *Defendant*. | § § | |

**PLAINTIFF SVV TECHNOLOGY INNOVATIONS INC.'S**
**<u>MOTION FOR ENHANCED DAMAGES</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ......................................................................................... 2

III.   ENHANCED DAMAGES ARE WARRANTED IN THIS CASE. ..................... 3

   A.   ASUS did not investigate SVV's patents and form a good-faith belief in
        noninfringement or invalidity (*Read* factor 2). ........................................ 3

      1.   ASUS feigned ignorance about how its own products worked and blamed
           its suppliers instead of conducting an investigation. ............................ 3

      2.   ASUS's litigation defenses cannot protect it from enhancement. ................ 6

   B.   ASUS's litigation conduct warrants enhancing damages (*Read* factor 3). ...................... 10

   C.   ASUS's size and financial condition (*Read* factor 4) ...................................... 14

   D.   The case was not close, warranting enhancement (*Read* factor 5). ................................. 15

   E.   The duration of ASUS's misconduct warrants enhanced damages (*Read* factor 6) ......... 15

   F.   ASUS's lack of remedial efforts warrants enhancing damages (*Read* factor 7).............. 15

   G.   The remaining factors are slightly in favor of or neutral to enhancement
        (*Read* factor 1, 8, 9). ................................................................... 17

   H.   The Court should exercise its discretion to double the damages award. ......................... 18

IV.    CONCLUSION ................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*
258 F. Supp. 3d 1013 (N.D. Cal. 2017) ............................................................. 16, 17

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*
876 F.3d 1350 (Fed. Cir. 2017) ..................................................................... 12

*Crane Sec. Techs., Inc. v. Rolling Optics AB*
337 F. Supp. 3d 48 (D. Mass. 2018) .............................................................. 17

*EagleView Techs., Inc. v. Xactware Sols., Inc.*
522 F. Supp. 3d 40 (D.N.J. 2021) ................................................................. 16

*Georgetown Rail Equip. Co. v. Holland L.P.*
867 F.3d 1229 (Fed. Cir. 2017) ..................................................................... 2

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*
579 U.S. 93 (2016) ........................................................................... 2, 6, 9, 18

*Innovention Toys, LLC v. MGA Ent.*
No. CV 07-6510, 2017 WL 3206687 (E.D. La. Mar. 8, 2017)................................... 14

*Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*
No. 6:20-CV-00018-ADA, 2022 WL 3371630 (W.D. Tex. Aug. 16, 2022)............................ 17

*KAIST IP US LLC v. Samsung Elecs. Co.*
439 F. Supp. 3d 860 (E.D. Tex. 2020)............................................................... 10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*
875 F.3d 1369 (Fed. Cir. 2017) ..................................................................... 2

*Quick Techs., Inc. v. Sage Group PLC*
313 F.3d 338 (5th Cir. 2002) ........................................................................ 12

*Ravgen, Inc. v. Lab'ys Corp. of Am. Holdings*
No. 6:20-CV-969-ADA, ECF No. 303, slip op. (W.D. Tex. May 12, 2023)....................... 14, 15

*Read Corp. v. Portec, Inc*
970 F.2d 816 (Fed. Cir. 1992) ................................................................. passim

*Spectrum Lab'ys, LLC v. Dr. Greens, Inc.*
No. 11CV0638-JAH (KSC), 2019 WL 13179080 (S.D. Cal. Nov. 18, 2019) .................. 18, 19

*SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*
  127 F.3d 1462 (Fed. Cir. 1997) ............................................................ 2, 17

*St. Regis Paper* Co. *v. Winchester Carton Corp.*
  410 F. Supp. 1304 (D. Mass. 1976) ......................................................... 14

*Trinity Carton Co. v. Falstaff Brewing Corp.*
  767 F.2d 184 (5th Cir. 1985) .................................................................. 12

*Virginia Panel Corp. v. Mac Panel Co.*
  887 F. Supp. 880 (W.D. Va. 1995) ........................................................... 14

**Statutes**

35 U.S.C. § 284 .................................................................................... 2, 6

35 U.S.C. § 287 ..................................................................................... 12

**Rules**

Fed. R. Civ. P. 30(b)(6) ......................................................................... 13

## I.     INTRODUCTION

ASUS' conduct in this case is precisely the willful, wanton, bad-faith, deliberate, pirate-like behavior that warrants enhanced damages.  When SVV first contacted ASUS regarding its infringement, ASUS conditioned its participation in licensing discussions on SVV purchasing ASUS products and tearing them down to generate detailed claim charts.  But after months of work, that task turned out to be a fool's errand: ASUS had no interest in engaging with the charts on the merits.  Instead, ASUS feigned ignorance about the very products it brands and floods into the U.S. market, stated that ASUS did not know how they were implemented, and told SVV to talk to ASUS's panel makers.  When SVV sought to do so and asked for contact information for ASUS's panel makers, however, ASUS had a new excuse: it apparently did not know their contact information.  At every turn, ASUS offered a fresh excuse for why it could not be bothered to take a license.  After months of being given the run around, SVV filed suit.

Once in litigation, ASUS shifted the blame again—this time to its U.S. subsidiary—arguing that ASUS's corporate structure immunized it from infringement liability.  This excuse did not make it to trial, dropped alongside ASUS's invalidity defense.  ASUS did, however, double down on its position that it was wholly disinterested in design arounds and noninfringing alternatives before the jury.  And by ASUS's own telling, it did not know what SVV could have even done to get a technical person at ASUS to review the patents without filing suit.

ASUS's pattern of conduct here is characteristic of a pirate: it refused to engage in licensing discussions and excused itself from the responsibility of doing so by blaming its supply chain.  It insisted on meritless arguments about vicarious liability and invalidity, wasting the parties' and the Court's resources, only to drop both from the trial.  ASUS acted as though the rules simply do not apply to it—both procedurally and substantively—warranting enhancement.

1

## II.    LEGAL STANDARD

Section 284 gives district courts the discretion to award enhanced damages, allowing "district courts to punish the full range of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016). District courts have discretion to "increase damages up to three times the amount found or assessed." 35 U.S.C. § 284. "When willful infringement or bad faith has been found, the remedy of enhancement of damages not only serves its primary punitive/deterrent role, but in so doing it has the secondary benefit of quantifying the equities as between patentee and infringer." *SRI Int'l, Inc. v. Advanced Tech. Lab'ys, Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997) (citation omitted).

The Supreme Court's "*Halo* test merely requires the district court to consider the particular circumstances of the case to determine whether it is egregious." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017). Although it is not required, "district courts often apply the non-exclusive factors articulated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996)." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017). The *Read* factors are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of defendant's misconduct; (7) any remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. 970 F.3d at 827. An analysis of these factors points squarely towards enhancement in this case.

2

### III.     ENHANCED DAMAGES ARE WARRANTED IN THIS CASE.

#### A.  ASUS did not investigate SVV's patents and form a good-faith belief in noninfringement or invalidity (*Read* factor 2).

ASUS's strategy in this case was simple: pass the buck.  Instead of merits arguments contesting infringement or asserting invalidity, ASUS focused on who to blame and shift responsibility to—first, its suppliers, and later, even its U.S. subsidiary.

#### 1.  ASUS feigned ignorance about how its own products worked and blamed its suppliers instead of conducting an investigation.

The strategy is evinced in some of the earliest documents in this case.  In February 2021, SVV sent ASUS a letter informing ASUS of its patents and ASUS's infringement. Ex. 1 (PTX-16).  Someone from ASUS's "Legal Affairs Center," Mr. Jason Wu, responded by asking for claim charts.  Ex. 2 (PTX-25) at 2–3.  Although to SVV its seemed that ASUS had more information about its products than SVV could, SVV undertook months of work, purchasing and breaking down ASUS products and compiling detailed findings into 40 different claim charts. Trial Tr. Vol. 1 (Vasylyev) 122:25–123:18 (Dr. Vasylyev explaining that he was "disappointed" in ASUS's request because "ASUS is a large company" with a "massive legal department" and "engineering department" and had "everything" they needed to evaluate infringement); 124:12–125:6 (describing how SVV investigated ASUS's products to chart them); 125:23–138:4 (explaining the "labor intensive" and "time consuming" process, which yielded "thousands of pages" of charts).

Once the teardowns were nearly complete, SVV emailed Mr. Wu to confirm that he was still the correct contact person at ASUS.  Ex. 2 (PTX-25) at 1.  In response—surprisingly— Mr. Wu backed away from his initial chart request, responding now that he did "not think that [ASUS] is the appropriate company" to contact because it "does not manufacture[] any display panels" and "[did] not know how the display panels are implemented."  Ex. 3 (PTX-26) at 1.  He

"suggest[ed]" SVV discuss with "display panel manufacturers" but affirmed that he was "the ASUS person to handle this case" and asked for charts if SVV wanted to "resume discussions." *Id.*

So, SVV asked for the panel manufacturers' information and sent Mr. Wu the claim charts. Ex. 4 (PTX-27) at 1. But ASUS changed its tune again. ASUS then stated that it "[did] not have the information regarding the panel manufactures of the monitors and the points of contact for the panel manufactures, and had a hard time getting the information from the ODMs." Ex. 5 (PTX-30) at 1. ASUS also told SVV that *SVV could figure out ASUS's product manufacturer information itself* from teardown photographs in SVV's claim charts. *Id.* ("However, from the claim charts you provided, *I noticed that you may discover the information* regarding the panel manufactures from labels on back of panels." (emphasis added)). Mr. Wu could only provide one contact for someone at "AUO" but did not even know the name of his contact there. *Id.*

It is impossible to believe that ASUS did not have contact information for its panel makers—the companies who actually manufacture what ASUS sells under its branding in the United States. And indeed, Mr. Wu's statement to that effect turned out to be demonstrably false. While Mr. Wu was telling SVV that it did not have panel-maker contacts, Mr. James Lee, ASUS's corporate representative at trial, *did have that information* and was in regular contact with the panel makers. Trial Tr. Vol. 3. (Lee) 555:22–556:8 ("Q. That's kind of my point. Earlier in the e-mail what Jason Wu tells us is that we, meaning ASUSTeK, do not have information regarding the panel manufacturers of the monitors and the points of contact for the panel manufacturers. Do you see that in his e-mail? A. It is written that way in the e-mail. Yes. Q. And while Jason Wu was telling us that, you, sir, absolutely had points of contact for the panel

manufacturers and talked to them regularly, correct? A. Yes. I had the contact information for the people working in business and the PMs at that company."); 550:23–551:4 ("Q. Okay. Can you name panel manufacturers that you work with and know how to contact? A. Okay. There are at least five or six of them. AUO, Innolux, BOE, SDC, which is Samsung, LGD, CSOT. Q. How many of those were you working with back in 2021? A. Almost all of them."). After telling SVV that it should talk to the panel makers instead of ASUS, ASUS *actively concealed* its panel makers' contact information.

SVV was shocked but, nevertheless, attempted to contact AUO. Trial Tr. Vol. 1 (Vasylyev) 141:9–18. That, too, resulted in a dead end. *Id.* 141:19 – 22 ("Q. Was it a dead end? A. Yes. It pretty much resulted in a dead end. They were playing the same kind of game, like claim charts and so on."). By then, SVV had spent over a year trying to negotiate with ASUS and brought this lawsuit because negotiations were "not going anywhere" and "enough was enough." *Id.* 141:23–142:5.

By its own account, ASUS did *nothing* in response to the letter or even the charts, despite having asked for them; that is not a good-faith investigation. Trial Tr. Vol. 2 (Lee) 562:15–22 ("Q. So in response to the original notice letter from Mr. Katz, ASUSTeK changed nothing about its monitor panels, right? A. We did not make any design changes. Q. And in response to Mr. Katz sending the 40 claim charts after Jason Wu asked for claim charts, ASUS didn't change anything about its monitors, right? A. We did not make any changes."); *id.* (Wu) 406:12–22 (Mr. Wu stating the same). All ASUS apparently did was reach out to a "vendor" "to assist [it] with determination of if they were using the patented technologies so that we may assess if it would be necessary for us to get the license." *Id.* (Wu) 406:23–407:3. The vendor—ASUS's business partner and a manufacturer of products ASUS sells under its brand name—"did not provide any

5

substantive response," so ASUS concluded it "was not possible for [ASUS] to conduct the assess[ment]." *Id.* 407:4–20. Of course, it is not surprising that ASUS's supplier declined to provide its major customer ASUS with an assessment that would have confirmed ASUS's infringement and may have negatively affected the supplier's sales to ASUS.

That assessment perhaps would not have mattered anyway. By ASUS's own telling, it does not know what SVV could have done to get someone with technical knowledge at ASUS to even read SVV's patents without filing suit. Trial Tr. Vol. 2 (Lee) 558:10–14 ("Q. So if Dr. Vasylyev and SVV would prefer to avoid litigation, what do they have to do to get somebody at ASUSTeK who's technical on monitors to read their patents? A. I'm sorry. I don't know.").

ASUS conditioned engaging in licensing discussions on SVV purchasing ASUS products, breaking them down, and generating claim charts for ASUS's consideration. But when SVV did that work, ASUS declined to engage with it or point to any errors in the analysis. Instead, it claimed that it did not know how display panels were implemented in its products and pointed the finger at its third-party manufacturers. When SVV asked for panel maker contacts, ASUS withheld it. And when the manufacturers did not provide a "substantive" response to ASUS on the infringement allegations, ASUS gave up. ASUS infringed SVV's patents callously, "without any reason to suppose [its] conduct is arguably defensible," actions which the Supreme Court characterized as "plunder[ing] a patent." *Halo*, 579 U.S. at 105. That warrants enhancement.

### 2. ASUS's litigation defenses cannot protect it from enhancement.

ASUS may argue that, once it was sued, it raised defenses in good faith that should protect it from the consequence of enhanced damages. Not so. In *Halo*, the Court expressly recognized that infringers should not be able to point to defenses crafted by their attorneys after the fact. *Halo*, 579 U.S. at 105. ASUS should not be able to "escape any comeuppance under § 284 solely on the strength of [its] attorney's ingenuity." *Id.* But even if ASUS asked the Court

to credit litigation defenses, those defenses were meritless and largely lay abandoned.

### a. ASUS's vicarious liability defense was meritless and a waste of resources.

Once in litigation, ASUS tried to shift responsibility again. Last year, ASUS was so adamant that it could not be held to infringe in this case because its "products are made by a separate entity and imported by a subsidiary of ASUSTeK, ASUS Computer International ('ACI')" that it moved for summary judgment on the issue. ECF No. 72 at 1. According to ASUS—at least at that time—it could not be held to account for ACI's actions as a matter of law. *Id.* at 5. In other words, ASUS wanted to pin its infringement on its subsidiary. *See* Ex. 6 (ASUS's Responses to SVV's Requests for Admission) at Nos. 24–25 (ASUS denying that it controlled ACI or authorized ACI to sell or import the Accused Products). In fact, ASUS felt so strongly of this defense at that time that it wanted to argue it at Pretrial before any other issue. Ex. 7. The Court denied the motion, but the disputed, fact-heavy issue was slated to be tried to the jury per the parties' Joint Pretrial Order. *See* ECF No. 143 at 7.

After the Pretrial Conference, cracks in ASUS's belief that its corporate structure made it immune to infringement liability began to appear. As this Court will remember, this case was set for trial to begin on June 17, 2024, ECF No. 106, which was shifted per the Court's schedule to the fall, ECF Nos. 156, 161. About six weeks after the initial trial date had passed, ASUS sent SVV a "prepared" "submission to the Court" seeking "a confirmation from the Court regarding the instruction that will be given to the jury." Ex. 8 at 1. In the "submission" itself, ASUSTeK hinted for the first time that it may concede its liability for the actions of its U.S. subsidiary.[1] *Id.*

---

[1] Specifically, in the "submission," ASUS posited that it may concede the issue of vicarious liability (but somehow preserve an appeal on the issue) if the Court would "confirm" that the text of the Court's future jury instructions would not be to ASUS's liking. Ex. 8 at 3. ASUS then attempted to raise the issue off the record with the Court via email, but the Court directed briefing on the issue. Ex. 9; ECF No. 166. SVV pointed out the procedural and substantive infirmity of

at 3.

The façade eventually fell.  At some point between Pretrial Conference and September 24, 2024, ASUS went from believing that it was entitled to noninfringement *as a matter of law* because it was not vicariously liable for the actions of its subsidiaries to *wholly conceding the issue*.  Indeed, on the second day of trial, ASUS read into the record a stipulation conclusively establishing its liability for its subsidiaries' actions,[2] and ASUS agreed to instruct the jury to treat ASUS and ACI "as one actor."  Trial Tr. Vol. 2 at 418:25–419:11; ECF No. 183.

Whatever belief ASUS had in its theory that it could not be liable for infringement because it created a subsidiary to take acts on its behalf—that belief could not have been in good faith.  Litigants generally do not wholesale drop theories they think in good faith are meritorious.  Not only did ASUS jam up the Court's limited resources with a dispositive motion on the issue, but it apparently did not believe strongly enough in it to even present it to the jury.  Instead, the detour through ASUS's vicarious liability defense served only to complicate the proceedings and increase the burden of this litigation on the Court and SVV.

ASUS will of course try to explain this away.  ASUS may argue that it dropped the issue after seeing how the evidence came in a trial, but it conceded vicarious liability *before* SVV had a chance to make a record on the issue with an adverse direct examination of ASUS's corporate representative.  ASUS may also argue that it unremarkably dropped the issue to streamline issues for trial, but neither party got close to running out of trial time.  In fact, evidence was complete

---

ASUS's request, *see generally* ECF No. 171, and the Court declined to issue a ruling on jury instructions before trial, ECF No. 177.

[2] ASUS stipulated it "was liable for the sale, offers for sale, and importation of the accused products in the United States by its U.S. subsidiary ASUS Computer International and to the extent necessary, its subsidiary, ASUSTeK Global Pte. Limited."  Trial Tr. Vol. 2 at 324:20–325:12. ASUS also waived any right to challenge vicarious liability here and on appeal.  *Id.*

on the third day of a trial scheduled for five days.  Perhaps ASUS will argue, as it did before, that it was concerned that the Court would give the jury an instruction that ASUS did not like, but the Court *never ruled on a vicarious liability instruction* since the issue was ultimately undisputed.

### b. ASUS did not have good-faith positions in invalidity or noninfringement.

ASUS also did not have a good-faith belief in its defense that the patents were invalid.[3] Not once did ASUS tell SVV that it thought SVV's patents were invalid in pre-suit discussions. Perhaps ASUS will point to the opinion of its hired litigation expert, Mr. Zane Coleman.  But that ASUS could "muster a reasonable (even though unsuccessful) defense" in litigation cannot "insulate[]" it from enhanced damages.  *Halo*, 579 U.S. at 105.  As the Supreme Court recognized, if having a post-hoc litigation defense was probative of enhanced damages, "someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible" could point to later, attorney argument to avoid enhancement.  *Id.*

What is more, ASUS dropped invalidity completely one day before *voir dire*.  Ex. 10.  It is not credible that ASUS both believed strongly in its invalidity defense and also left it on the cutting room floor, especially when both parties had ample trial time left at the close of evidence. Again, the detour through ASUS's invalidity defense served only to complicate the proceedings and increase the burden of this litigation on the Court and SVV.  *See, e.g.*, ECF No. 53 & 54 (motion to amend invalidity contentions that was fully briefed and ruled on by the Court at the May Pretrial Conference, ECF No. 154).

---

[3] ASUS cannot rely on any alleged internal invalidity investigation which occurred *after* suit was filed.  On its original trial exhibit list, ASUS included purported charts comparing the Asserted Patents to unelected prior art references.  However, ASUS failed to identify these charts or its post-suit investigations during discovery, and in response to SVV's motion *in limine*, ASUS voluntarily withdrew all such charts from its exhibit list.  *See* ECF No. 128 at 1–3 (SVV's MIL No. 1); ECF No. 153 at 1 (Court granting SVV MIL No. 1 as agreed with ASUS withdrawing chart exhibits). ASUS cannot escape enhancement with the post-hoc invalidity positions that were improperly withheld in discovery and were withdrawn by agreement.

Apart from its vicarious liability theory of noninfringement, ASUS also had a technical noninfringement expert, Dr. Keith Goossen.  But Dr. Goossen served a report in this case that re-urged positions the Court had already rejected at claim construction, forcing SVV to file a motion to exclude those opinions from the trial.  *See* ECF No. 69; ECF No. 154 (granting SVV's motion to exclude "Dr. Goossen's opinions that rely on claim construction positions that were previously proposed by ASUSTeK but rejected by the Court in its claim construction order for the terms 'light harvesting' and 'light converting'").  To be sure, ASUS will likely argue that it had good-faith positions presented through Dr. Goossen's trial testimony.  But if ASUS strongly believed in those positions (that the jury did not credit), why did ASUS insist on holding onto Dr. Goossen's opinions that were based on rejected claim construction positions?

At bottom, ASUS has no specific evidence of any investigation it took that allowed it to arrive at a belief of noninfringement.  Indeed, the evidence suggests that it did not do such an investigation.  This factor supports enhancement.  *See KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 885 (E.D. Tex. 2020) (declining to credit Samsung's arguments for this *Read* factor absent "any specific evidence of any investigation undertaken by Samsung which would have reasonably allowed it to arrive at [its] belief").

**B.  ASUS's litigation conduct warrants enhancing damages (*Read* factor 3).**

ASUS litigated this case in a manner designed to unnecessarily increase costs and the burden on SVV and the Court, filing meritless summary judgment motions and constantly reopening issues.  This conduct further supports enhancement.

**Jury Instruction Motion.**  For example, when this Court moved the trial date to the fall from its original June setting, ASUS treated that additional time as an invitation to create new pretrial disputes.  As discussed *supra*, § III.A.1.a. not only did ASUS ask for summary judgment on vicarious liability, generating significant briefing and taking up the Court's time with

argument, ASUS *also* asked the Court for an early ruling on its jury instructions for vicarious liability so that it could lodge formal objections before the trial to preserve an appeal—relief that both was both procedurally defunct and substantively meritless. *See generally* Ex. 9, ECF Nos. 171, 177. That exercise, too, proved to be a waste of the parties' and the Court's resources, ECF No. 177, and ASUS ultimately abandoned its vicarious liability defense at trial.

**Re-urged *Daubert*.** But the Court set a hearing on the jury-instruction issue, and ASUS saw that hearing as an opportunity to re-raise long decided issues. Indeed, once the hearing on the jury-instruction issue was scheduled, ECF No. 158, ASUS was quick to file a motion for "rehearing" of its denied *Daubert* challenge to SVV's damages expert, Dr. Matthew Farber, ECF No. 165. ASUS filed its motion without even attempting to meet and confer with SVV (violating the local rules), or explaining how its motion could meet the "rehearing" or reconsideration standard in this District. *See generally* ECF No. 170. That motion, too, was denied. ECF No. 177.

**Late motion to undo the stipulation.** Undeterred, ASUS filed *another* motion on the eve of trial seeking to strike Dr. Farber's opinions that reflected the parties' stipulation in this case and ASUS's updated financial data. ECF No. 179. Specifically, the parties had months earlier agreed to a "Joint Representative Product Stipulation" that treated specific model numbers of ASUS product as representative for infringement for each asserted patent to streamline the parties' trial presentations. ECF No. 148. For example, the stipulation provides that for the '318 patent, the PG32UQ product is representative of the other accused products for that patent. *Id.* After SVV tailored its presentation in accordance with the stipulation, ASUS *asked the Court to reform the stipulation*, insisting that products could not be identified by model number (per the stipulation) but instead by a "unique paring of model number and display panel," ECF No. 179 at

2, and sought to impugn Dr. Farber for matching his calculations to the stipulation (such that if the jury found infringement, the represented units subject to the stipulations will be included in the royalty base), *see generally* ECF No. 180.  That motion was also denied.

**Late-raised marking defense.**  ASUS also sought to inject a forfeited marking theory into the case well after initial Pretrial Conference and submission of the Joint Pretrial Order. After *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017), "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287."  ASUS made no attempt to meet its burden of production until after the Joint Pretrial Order was submitted, the Pretrial Conference had been held, and the issues for trial were closed.  Ex. 11; *see Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 346 (5th Cir. 2002) ("each party has an affirmative duty to allege at the pretrial conference all factual and legal bases upon which the party wishes to litigate the case." (quoting *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 193 n.13 (5th Cir. 1985)).  ASUS insisted that it could raise the issue, Ex. 11—despite forfeiting it by excluding it from the Pretrial Order, *Trinity*, 767 F.2d at 193 n.13 ("The pretrial order controls the course of the trial . . . .").  And SVV was forced to raise the issue with the Court.

The Court agreed that ASUS was required to move to amend the Pretrial Order, providing an expedited schedule for briefing such that a ruling could be provided before trial.  9/5/24 Pretrial Tr. 18:19–23 ("And so my order is that if the defendant wants to raise the issue of marking or any alleged failure to mark, then ASUS must move to amend the current pretrial -- joint pretrial order to allow it to raise this issue at trial."); *id.* 19:1 – 7 ("If you will by Monday or Tuesday -- by Tuesday get us a motion for leave, if you want to raise the issue, you'll need to

have a motion on file by close of business Tuesday. We'll get a response from the plaintiff by the end of the business Thursday, and we will rule on it by Friday next week.").   But once the Court clarified that the rules did in fact apply to ASUS, ASUS declined to move.   ASUS's maneuver to inject a late marking defense into this case proved to be a complete waste of the Court and the parties' time.

**Discovery misconduct.**   ASUS also repeatedly pursued efforts to increase SVV's burden and expense.   For example, ASUS refused to provide discovery on products that SVV had not specifically, acquired, torn-down, and charted.   ECF No. 61.   When SVV sought to take a remote Rule 30(b)(6) deposition, ASUS responded by refusing to make its Rule 30(b)(6) witnesses available remotely, and then divided the topics among five witnesses with various (non-contiguous) days and times of availability, and insisted that SVV's counsel travel to Taiwan to conduct the depositions in person over the course of several days.   ECF No. 56.   Both unreasonable positions required the SVV to seek the Court's intervention, and the Court compelled discovery.   ECF Nos. 56, 61.

**Unreasonable positions that forced briefing.**   As another example, ASUS's technical expert explicitly contradicted the Court's Claim Construction Order, requiring SVV to file a motion to exclude.   ECF No. 154 (granting SVV's Motion to Exclude with respect to Dr. Goossen's opinions that rely on claim construction positions that were previously proposed by ASUSTeK but rejected by the Court in its claim construction order).   And of course, ASUS filed a motion for summary judgment *insisting that as a matter of law* it was not liable for its subsidiaries' actions, followed by a procedurally and substantively infirm motion to seek an early ruling on the vicarious liability jury instructions, only to stipulate that it was so liable at trial.

**Trial misconduct.**   ASUS's litigation misconduct is not limited to the pretrial

proceedings, however. ASUS did not center the merits at trial. Instead, it offered theatrics. For example, ASUS made inflammatory statements about SVV's licenses with other display companies, claiming that Samsung and MSI only paid to use SVV's technology "[w]ith a gun to their head." Trial Tr. Vol. 1 (Vasylyev) 217:24–218:4. Not only does it strain common sense to think that SVV—a small company in Sacramento—could seriously threaten Samsung or MSI with a metaphorical "gun" in any circumstance—but this type of language has no place in an infringement dispute. It certainly does not describe arm's length licensing negotiations with sophisticated companies.

ASUS chose to run up SVV's costs in litigation by constantly raising new and reopening old issues. That pattern of conduct weighs in favor of enhancing damages. *See Innovention Toys, LLC v. MGA Ent.*, No. CV 07-6510, 2017 WL 3206687, at *4 (E.D. La. Mar. 8, 2017) (trebling damages when defendant filed frivolous motions, unmeritorious motions for summary judgment, untimely objections, and where defendant declined to cease infringing and took no remedial measures), *aff'd*, 733 F. App'x 1024 (Fed. Cir. 2018).

### C. ASUS's size and financial condition (*Read* factor 4)

Where, as here, the defendant is a "giant" and plaintiff is "the small independent," trebling is particularly warranted. *See St. Regis Paper* Co*. v. Winchester Carton Corp.*, 410 F. Supp. 1304, 1309 (D. Mass. 1976). And where there is no indication that trebling damages would be the "equivalent of an organizational death sentence," ASUS's size presents no impediment to enhancement. *See Virginia Panel Corp. v. Mac Panel Co.*, 887 F. Supp. 880, 885 (W.D. Va. 1995), *aff'd*, 133 F.3d 860 (Fed. Cir. 1997). Indeed, even a three-times enhancement would not exceed the incremental benefit ASUS received from using the patented technology. *See* Trial Tr. Vol. 2 (Farber) 461:2–8 (explaining that ASUS received a "weighted average cost savings across all products" of $21.37 per unit), 448:8–13 (explaining that ASUS's "cost savings

14

are incremental profits"); 463:7–21; s*ee Ravgen, Inc. v. Lab'ys Corp. of Am. Holdings*, No. 6:20-CV-969-ADA, ECF No. 303, slip op. at 9 (W.D. Tex. May 12, 2023) (finding *Read* factor 4 weighs in favor of enhancement where the "requested 3X enhancement would not exceed Labcorp's profit from infringing tests, let alone drive Labcorp out of business given the thousands of other tests it sells").  This factor weighs in favor of enhancement.

### D.  The case was not close, warranting enhancement (*Read* factor 5).

The jury found for SVV on all issues, and the issue of liability was not close. Additionally, ASUS lost all issues at summary judgment, ECF No. 154, and dropped invalidity, Ex. 10—both indications that the case was not close.  *See Ravgen*, No. 6:20-CV-969-ADA, ECF No. 303, slip op. at 9 ("Losing on all issues at summary judgment, as Labcorp did (ECF No. 199), also indicates that the case was not close. . . . LabCorp also withdrew its invalidity defense midway through trial.").

To be sure, the jury did not award SVV its full request on damages, but the fact that the jury did not value the infringement as high as SVV requested does not make ASUS's infringing conduct *less culpable* or *less worthy* of punishment through enhancement.  Indeed, ASUS made its decision to infringe and to continue infringing without knowledge of Dr. Farber's opinion until expert reports were served, well after ASUS's willful infringement began.  This factor weighs in favor of enhancement.

### E.  The duration of ASUS's misconduct warrants enhanced damages (*Read* factor 6)

As explained *supra*, ASUS's misconduct extends back to at least 2021, when ASUS began its strategy of deflecting SVV's allegations by attempting to bury it in make-work and blaming third-party manufacturers.  ASUS's lengthy period of misconduct, which now spans years, weighs in favor of enhancement.

### F.  ASUS's lack of remedial efforts warrants enhancing damages (*Read* factor 7)

ASUS has repeatedly affirmed to SVV that it has had zero interest in adopting a noninfringing alternative to SVV's technology. That position is littered through ASUS's discovery responses. Ex. 12 (ASUS's Interrogatory Responses) at 9 (stating ASUS is "not presently aware of and *is not investigating* any non-infringing alternatives or design-arounds") (emphasis added). ████████████████████████████████████████████ ████████████████████████████████████. And it was taken by ASUS's corporate representative—the product planner for monitors at ASUS—at trial. Trial Tr. Vol. 2 (Lee) 560:11–19; 562:6–14 (Mr. Lee confirming that ASUS "has not changed its answer" and "do[es] not want to make any changes" to its interrogatory response that it was not investigating any noninfringing alternatives); 562:15–18 (confirming no changes were made as a result of SVV's presuit letter); 564:15–18 ("Q. Okay. And so as you sit here, you don't have a design in mind to switch to to avoid infringing, right? A. Right."); 564:21–565:9 (stating ASUS "never thought about infringing or infringement"). ASUS has never been interested in avoiding infringement.

Curiously, in arguing for judgment as a matter of law that ASUS's infringement was not willful, ASUS's counsel actually acknowledged that there were "hundreds" of options for avoiding infringement. *See* Trial Tr. Vol. 2 at 574:19–24 ("It is a fact of this case that there are hundreds of unaccused monitors that do the same thing [as the infringing monitors]."). Yet ASUS repeatedly affirmed in this case that it declined to investigate any alternatives. ASUS has done nothing to implement or switch to monitors that, according to its own counsel, "do the same thing" as infringing monitors but do not infringe. It preferred to take the risk of infringement. This favors enhancement. *See EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 54 (D.N.J. 2021) (explaining that enhancement for this factor is particularly warranted when the infringer preferred the risk of infringing over designing a noninfringing device); *Apple Inc. v.*

*Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1034 (N.D. Cal. 2017) (weighing Samsung's unwillingness to pursue alternatives its expert claimed could be implemented in "no time at all" but were "less desirable" in favor of enhanced damages for this factor).

The Court should take ASUS at its word that it has no plans or interest in remediation. ASUS's preference of continuing to infringe the Asserted Patents over designing around them favors enhancement. *See Crane Sec. Techs., Inc. v. Rolling Optics AB*, 337 F. Supp. 3d 48, 59 (D. Mass. 2018) (enhancing damages where the defendant took no remedial action upon receiving notice letters, continued sales during litigation, and provided no evidence for why it took it "so long to change course"), *aff'd*, 784 F. App'x 782 (Fed. Cir. 2019); *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, No. 6:20-CV-00018-ADA, 2022 WL 3371630, at *9 (W.D. Tex. Aug. 16, 2022) (weighing lack of remedial measures in favor of enhancement).

### G.  The remaining factors are slightly in favor of or neutral to enhancement (*Read factor 1, 8, 9).

There is no evidence of ASUS copying SVV's designs, so the copying factor (factor 1) is neutral.  ASUS clearly intended to filibuster licensing discussions and waste SVV's time and resources in the parties' negotiations, which supports an inference that ASUS intended to conceal its misconduct and force a small company like SVV to expend its limited resources by charting ASUS products—inflicting at least some financial harm.  *See* Trial Tr. Vol. 1 (Vasylyev) at 139:1–19 (explaining that SVV spent "the whole summer and fall" doing teardowns and analyses for the claim charts).  *See SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997) (affirming willfulness and trebling where defendant, *inter alia*, "deliberately prolonged its dealings with SRI, imposing delay after delay, in order to fend off SRI as long as possible and allow its profitable infringement of the ['750] patent to continue.").

The evidence suggests that ASUS tried to hold off SVV for as long as possible to continue infringing, unabated, and the concealment and motivation to harm factors (factor 8, 9), thus, weigh slightly in favor of enhancement.

### H.  The Court should exercise its discretion to double the damages award.

ASUS infringed SVV's patents willfully, without any reason to suppose [its] conduct is arguably defensible." *Halo*, 579 U.S. at 105.  When SVV reached out regarding the infringement, ASUS filibustered, happy to continue infringing as long as possible while SVV engaged in the ultimately fruitless exercise of compiling claim charts.  Once confronted with charts (or, perhaps more accurately, a hint that charts were incoming), the excuses began to pile up.  First, ASUS stated that it was not the product manufacturer, so it didn't know anything about how the products were implemented.  Next—even though ASUS sold the accused products under its branding in the United States—ASUS told SVV that it did not even know how to contact the actual manufacturers who produced the product, a statement proven false at trial.  Then—ASUS took the position that it could not be liable because its wholly owned subsidiary, ACI, was really the one responsible.  Of course, ASUS had no good faith belief in that defense (which it stipulated away).  Or in invalidity (which it also dropped).  Indeed, at trial, it reaffirmed that there were "hundreds" of other monitors that stood unaccused, while also reaffirming that it made no efforts to even investigate noninfringing alternatives.  ASUS also adopted strategies in this case to magnify the burden of this litigation on both SVV and the Court, urging and sometimes re-urging meritless positions and positions it did not even believe in.  These are not actions of a party with "reason to suppose [its] conduct is arguably defensible." *Id.*  They are the actions of a deliberate infringer and are worthy of enhancement.

ASUS's infringement amounts to egregious infringement behavior warranting doubling of the damages award.  *See Spectrum Lab'ys, LLC v. Dr. Greens, Inc.*, No. 11CV0638-JAH

(KSC), 2019 WL 13179080, at *3 (S.D. Cal. Nov. 18, 2019) (doubling damages when the Defendants sold the infringing product for years after receiving cease-and-desist warning from Plaintiff, did not pursue a non-infringing alternative, did not take remedial action, concealed their infringement, and were motivated to harm the patentee).

**IV.    CONCLUSION**

For the foregoing reasons, SVV respectfully requests that the Court enhance damages.

DATED: November 12, 2024        Respectfully submitted,

/s/ *Warren J. McCarty, III*
Warren J. McCarty, III

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
Robert Seth Reich Jr.
Texas Bar No. 24088283
Email: sreich@caldwellcc.com
Daniel R. Pearson
Texas Bar No. 24070398
Email: dpearson@caldwellcc.com
John F. Summers
Texas Bar No. 24079417
Email: jsummers@caldwellcc.com
Aisha M. Haley
D.C. Bar No. 1034110
Email: ahaley@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
Email: bblomquist@caldwellcc.com
**CALDWELL CASSADY CURRY**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Robert D. Katz
Texas Bar No. 24057936
**KATZ PLLC**
6060 N. Central Expressway, Suite 560
Dallas, TX 75206
214-865-8000
888-231-5775 (fax)
rkatz@katzfirm.com

**ATTORNEYS FOR PLAINTIFF**
**SVV TECHNOLOGY INNOVATIONS INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system and by email. Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases, Western District of Texas, Section 14.

/s/ *Warren J. McCarty, III*
Warren J. McCarty, III

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on November 11, 2024, Plaintiff's counsel sought Defendant's position on Plaintiff's Motion for Enhanced Damages. On November 11, 2024, Defendant confirmed it opposes Plaintiff's request.

/s/ *Warren J. McCarty, III*
Warren J. McCarty, III