# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| SVV TECHNOLOGY INNOVATIONS INC. | § § § | |
| *Plaintiff,* | § § | Civil Action No.  6:22-cv-00311-ADA |
| v. | § § | **JURY DEMANDED** |
| ASUSTEK COMPUTER INC. | § § § | ▆▆▆▆▆▆▆▆▆▆ |
| *Defendant.* | § | |

## PLAINTIFF SVV TECHNOLOGY INNOVATIONS INC.'S RESPONSE TO DEFENDANT ASUSTEK COMPUTER INC.'S
## MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL

## <u>TABLE OF CONTENTS</u>

I.     LEGAL AUTHORITY .................................................................................... 1

II.    THE COURT SHOULD NOT GRANT A NEW TRIAL ON DAMAGES....................... 1

    A.    SVV's damages expert properly apportioned. ............................................ 2

    B.    The great weight of the evidence supports the jury's damages award. ................... 4

III.   WILLFULNESS ........................................................................................ 6

IV.    INFRINGEMENT OF THE '342 PATENT ............................................................ 9

    A.    JMOL: Substantial evidence supports the jury's finding of infringement for the "predetermined alignment" element. ............................................... 9

    B.    New Trial: The jury's finding of infringement for the "predetermined alignment" limitation is not against the great weight of the evidence. .................... 13

V.     INFRINGEMENT OF THE '562 PATENT ........................................................... 14

    A.    JMOL: Substantial evidence supports the jury's finding of infringement for the "predetermined two-dimensional pattern" element. ........................... 14

    B.    New Trial: The jury's finding of infringement for the "predetermined alignment" limitation is not against the great weight of the evidence.................... 15

VI.    INFRINGEMENT OF THE '089 PATENT ........................................................... 16

    A.    JMOL: Substantial evidence supports the jury's finding of infringement for the "configured for injecting light . . ." element. ..................................... 16

    B.    New Trial: The jury's verdict is not against the great weight of evidence, and ASUS's novel non-infringement argument is no ground for a new trial. ......... 17

VII.   INFRINGEMENT OF THE '318 PATENT ........................................................... 18

VIII.  CONCLUSION......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*
  566 F. Supp. 3d 59 (D. Mass 2021) ........................................................................ 19

*Abraham v. Alpha Chi Omega*
  708 F.3d 614 (5th Cir. 2013) ................................................................................... 1

*Alco Standard Corp. v. Tennessee Valley Auth.*
  808 F.2d 1490 (Fed. Cir. 1986) ............................................................................. 12

*Apple Inc. v. Samsung Elecs. Co.*
  258 F. Supp. 3d 1013 (N.D. Cal. 2017) .................................................................. 7

*Caboni v. General Motors Corp.*
  398 F.3d 357 (5th Cir. 2005) ................................................................................. 15

*Cloudofchange, LLC v. NCR Corp.*
  No. W-19-CV-00513-ADA, 2022 WL 15527756 (W.D. Tex. Oct. 27, 2022) ........... 1

*Crane Sec. Techs., Inc. v. Rolling Optics AB*
  337 F. Supp. 3d 48 (D. Mass. 2018) ....................................................................... 7

*Dominion Energy, Inc. v. Alstom Grid LLC.*
  725 Fed. App'x 980 (Fed. Cir. 2018) ..................................................................... 12

*Dresser–Rand Co. v. Virtual Automation, Inc.*
  361 F.3d 831 (5th Cir. 2004) ............................................................................... 1, 6

*ESW Holdings, Inc. v. Roku, Inc.*
  No. 6:19-CV-00044-ADA, 2021 WL 3742201 n.1 (W.D. Tex. Aug. 24, 2021) ...... 14, 16

*Finesse Wireless LLC v. AT&T Mobility LLC*
  689 F. Supp. 3d 332 (E.D. Tex. 2023) ................................................................... 18

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*
  394 F.3d 1368 (Fed. Cir. 2005) ............................................................................... 5

*Genentech, Inc. v. Chiron Corp.*
  112 F.3d 495 (Fed. Cir. 1997) ............................................................................... 20

*Gomez v. St. Jude Med. Daig Div. Inc.*
  442 F.3d 919 (5th Cir. 2006) ............................................................................. 1, 15

*Halo Electronics v. Pulse Electronics, Inc.*
  579 U.S. 93 (2016) ........................................................................................................ 6

*Hewlett-Packard Co. v. Mustek Systems, Inc.*
  340 F.3d 1314 (Fed. Cir. 2003) ............................................................................... 18, 19

*Int'l Bus. Machines Corp. v. Zynga Inc.*
  No. 22-590-GBW, 2024 WL 4103765 (D. Del. Sept. 6, 2024) ................................... 18

*Invitrogen Corp. v. Biocrest Mfg., L.P.*
  No. A-01-CA-167-SS, 2006 WL 8435710 (W.D. Tex. Oct. 31, 2006) ........................ 5

*Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*
  No. 6:20-CV-00018-ADA, 2022 WL 3371630 (W.D. Tex. Aug. 16, 2022) ................. 7

*KAIST IP US LLC v. Samsung Elec. Co. Ltd.*
  439 F. Supp. 3d 860 (E.D. Tex. 2020) ......................................................................... 8

*Leader Techs., Inc. v. Facebook, Inc.*
  770 F. Supp. 2d 686 (D. Del. 2011) ........................................................................... 20

*Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*
  No. 04-73461, 2011 WL 721959 (E.D. Mich. Feb. 23, 2011) .................................... 18

*Martek Biosciences Corp. v. Nutrinova, Inc.*
  579 F.3d 1363 (Fed. Cir. 2009) .................................................................................. 12

*Polara Eng'g Inc v. Campbell Co.*
  894 F.3d 1339 (Fed. Cir. 2018) .................................................................................... 6

*Reeves v. Sanderson Plumbing Prods., Inc.*
  530 U.S. 133 (2000) ......................................................................................... 1, 13, 15

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd., et al.*
  No. 2:13-cv-213, 2016 WL 362540 (E.D. Tex. Jan. 29, 2016) .................................... 2

*Shiley, Inc. v. Bentley Lab'ys, Inc.*
  794 F.2d 1561 (Fed. Cir. 1986) .................................................................................... 9

*SimpleAir, Inc. v. Google Inc.*
  77 F. Supp. 3d 569 (E.D. Tex. 2014) ........................................................................... 2

*Spectrum Int'l, Inc. v. Sterilite Corp.*
  164 F.3d 1372 (Fed. Cir. 1998) .................................................................................. 20

*Thorner v. Sony Comp. Ent. Am.*
   669 F.3d 1362 (Fed. Cir. 2012)..................................................................18, 20

*Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*
   69 F.3d 512 (Fed. Cir. 1995)..............................................................................5

*Versata Software, Inc. v. SAP Am., Inc.*
   717 F.3d 1255 (Fed. Cir. 2013)..........................................................................2

**Rules**

Fed. R. Civ. P. 50(a) ...........................................................................................1, 7

Fed. R. Evid. 702 ...................................................................................................10

Fed. R. Evid. 705 ...................................................................................................10

**TABLE OF EXHIBITS[1]**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Correspondence between counsel dated Sept. 24, 2024. |
| B | Defendant ASUSTeK Computer Inc.'s Supplemental Responses to Plaintiff SVV Technology Innovations Inc.'s First Set of Interrogatories (Nos. 1–12). |
| C | Excerpts of the Rebuttal Expert Report of Dr. Keith Goossen Regarding Non-Infringement of the Asserted Patents, dated Oct. 10, 2023. |
| D | PTX-062 (Spreadsheet of ASUS product sales and revenues data) |
| E | PTX-652 (Farber Updated Attachment B-3: Direct Infringement Damages Start Date by Product) |
| F | PTX-659 (Farber Updated Attachment C-3: Direct Infringement: Accused Product Sales Summary) |
| G | PTX-678 (Farber Updated Attachment E-2: ASUSTeK Non-Consolidated Statements of Operating Expenses) |
| H | PTX-683 (Farber Attachment G-3) |
| I | PTX-684 (Farber Updated Attachment H-1: ASUS Sales Data (September 2016–August 2024)) |
| J | PTX-686 (Farber Amended Attachment G-1) |
| K | PTX-687 (Farber Amended Attachment G-2) |
| L | PTX-919 (Spreadsheet of recent ASUS product sales and revenues) |
| M | PTX-920 (Spreadsheet of recent ASUS product sales and revenues) |
| N | PTX-921 (Spreadsheet of recent ASUS product sales and revenues) |
| O | PTX-922 (Spreadsheet of recent ASUS product sales and revenues) |
| P | JTX-005 (Joint Stipulation regarding representative products) |
| Q | PTX-016 (SVV Letter to ASUS dated Feb. 19, 2021) |
| R | PTX-018 (Correspondence from J. Wu to R. Katz dated Mar. 12, 2021) |
| S | PTX-025 (Correspondence from R.Katz to J. Wu dated Dec. 1, 2021) |
| T | PTX-026 (Correspondence from J. Wu to R. Katz dated Dec. 2, 2021) |
| U | PTX-027 (Correspondence from R. Katz to J. Wu dated Dec. 3, 2021) |
| V | PTX-030 (Correspondence from J. Wu to R. Katz dated Feb. 21, 2022) |
| W | JTX-002 (U.S. Patent No. 9,880,342) |

---

[1] The trial transcript volumes are not attached as exhibits but can be found on the docket at ECF Nos. 204–207.

| X  | PTX-109 (Images and measurements of ASUS PA278CV product) |
|----|-----------------------------------------------------------|
| Y  | JTX-004 (U.S. Patent No. 10,627,562) |
| Z  | PTX-116 (Images and measurements of ASUS ROG SWIFT PG32UQ product) |
| AA | JTX-003 (U.S. Patent No. 10,439,089) |
| BB | JTX-001 (U.S. Patent No. 8,290,318) |

ASUS attempts to undo the jury's verdict through a post-trial shotgun approach—asking the Court to reweigh facts and take inferences in its favor on a dozen or more discrete issues covering all subjects on the jury verdict form. But the record evidence firmly supports the jury's verdict. ASUS's motion identifies nothing that mandates the exceptional do-over relief it seeks.

## I.    LEGAL AUTHORITY

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The Fifth Circuit "grants great deference to a jury's verdict and will reverse only if, when viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Dresser–Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 933 (5th Cir. 2006). To earn a new trial, "the movant must show an absolute absence of evidence to support the jury's verdict." *Cloudofchange, LLC v. NCR Corp.*, No. W-19-CV-00513-ADA, 2022 WL 15527756, at *2 (W.D. Tex. Oct. 27, 2022) (internal quotation marks omitted); *see also id.* at *16.

## II.    THE COURT SHOULD NOT GRANT A NEW TRIAL ON DAMAGES.

Because the jury's award is supported by substantial evidence, the Court should deny ASUS's motion for new trial or remittitur for damages.

### A. SVV's damages expert properly apportioned.

ASUS now repeats its arguments that Dr. Farber, SVV's damages expert, failed to apportion because his regression-based damages model used as an input the cost of the entire monitor. *Compare* ECF No. 217 ("Motion" or "Mot.") at 1–4, *with* ECF No. 71 at 6–7. The Court previously, properly rejected this admissibility argument. *See* ECF No. 154 at 2. In repeating this argument, ASUS ignores that "[t]he Federal Circuit held that a JMOL is not the appropriate context for renewing attacks on an expert's methodology." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd., et al.*, No. 2:13-cv-213, 2016 WL 362540, *3–*4 (E.D. Tex. Jan. 29, 2016) (quoting *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013)); *see also SimpleAir, Inc. v. Google Inc.*, 77 F. Supp. 3d 569, 583 (E.D. Tex. 2014).

Furthermore, ASUS's apportionment argument is wrong—the jury's award is supported by substantial evidence. Dr. Farber used a sophisticated regression analysis to establish the incremental, per-unit cost savings associated *directly with* infringement. *See, e.g.*, Tr. 447:21–462:24; *see also* PTX-62, PTX-652, PTX-659, PTX-678, PTX-683, PTX-684, PTX-686, PTX-687, PTX-919, PTX-920, PTX-921, PTX-922, JTX-5. From there, Dr. Farber did *further* contribution apportionments determining how the parties would split the incremental benefit. *See, e.g.*, Tr. 463:7–467:18. Dr. Farber multiplied this per-unit incremental benefit amount by the number of infringing units to result in opined damages of $58,632,139. Tr. 467:19–470:20.

That one of the *inputs to* Dr. Farber's regression analysis is the cost of the whole monitor does not mean that that *output of* his damages model is not apportioned. *See* Mot. at 2–3 (discussing that Dr. Farber's regression started with the cost of the whole monitor). And every seminal damages case quoted by ASUS makes clear that the *output* of the damages model—*i.e.*, the calculated damages—is what must be properly apportioned; not the starting point of the

model. *Id.* at 3 (quoting *LaserDaynamics*, *VirnetX*, and *Ericsson*). This of course makes sense: apportionment *means* identifying the *smaller* incremental benefit associated with infringement *within* the *larger* starting point of the analysis. This incremental benefit—*i.e.*, the cost-savings benefit of infringement alone—is precisely what Dr. Farber's regression analysis directly measured. *See, e.g.*, Tr. 454:10–455:7.

At the heart of ASUS's complaint is a factual disagreement over how far the cost savings of infringement can extend throughout the monitor. Dr. Farber relied on the testimony and opinion of Mr. Credelle, SVV's technical expert, for his understanding that the benefits of infringement extend to the entire monitor. *See* Tr. 445:9–12 (Farber Direct), 444:25–447:19 (Farber Direct), 336:3–337:14 (Credelle Direct); *see also* Tr. 207:12–208:19 (Vasylyev). Thus, SVV presented substantial evidence both that Dr. Farber's damages model was properly apportioned and that the amount cost savings realized through infringement extended beyond merely the backlight unit and its corresponding cost.

ASUS factually contends, both at trial and now, that the cost savings benefits of infringement cannot extend beyond the backlight unit,[2] and thus any damages model must be apportioned to a per-unit amount necessarily smaller than the cost of the backlight unit. Mot. at 2–3. ASUS's damages expert, Mr. Ferioli, relied on ASUS's technical expert, Dr. Coleman, for his understanding that the benefits of the patents do not extend beyond the backlight unit—but it was established that Mr. Ferioli's understanding was untestable by the jury because Dr. Coleman did not come to trial. Tr. 765:23–773:4. Of course, resolving factual disputes is precisely the

---

[2] Had ASUS or Mr. Ferioli truly believed that the proper way to run a regression in this case was on "the cost differential attributable to the patented backlight modules[,]" Mot. at 3, they certainly could have done that and argued the results to the jury. Instead, they elected to not obtain the factual information (about their own products, obviously within their control) necessary to do so. *See* Tr. 776:6–777:12.

purpose of a jury trial. That the jury appears to have disagreed with ASUS's contention—based in part on an absent expert—that the price of a backlight unit functions as a logical cap on damages is no basis for JMOL or a new trial. Thus, ASUS's motion should be denied.

### B. The great weight of the evidence supports the jury's damages award.

The great weight of the evidence *supports* the jury's running royalty award because the jury awarded less than the $58,632,139 running royalty supported by Dr. Farber's properly apportioned damages model discussed above. ASUS also argues that the jury's award is against the great weight of the evidence because the evidence would have only supported a lump sum structure rather than the running royalty structure the jury awarded. Mot. at 4–5. This is wrong. Dr. Farber presented a running royalty damages opinion to the jury. Tr. 419:18–470:22. Mr. Ferioli *also* presented a running royalty damages opinion, calculated as a percentage of overall infringing revenue times *the revenue generated through trial*. Tr. 743:11–744:9. Plainly, had Mr. Ferioli calculated a lump sum, it would have been calculated as a one-time payment extending through the life of the patents. Tr. 461:15–20 (lump sum payments cover life of patents). Mr. Ferioli called his calculation a "lump-sum through trial," Tr. 744:7, 778:23–779:24, which is not a recognized category of damages. However, he used this language with the jury without objection—despite it being misleading—only because during the nightly exchanges, the parties specifically agreed that if Mr. Ferioli referred to his royalty structure in this way, ASUS would remove its request to have a running royalty/lump sum question on the verdict form and *would also* withdraw its request to have the jury instructed on what a lump sum even was—as no damages expert presented a lump sum model. Ex. A. This agreement was executed: the verdict form did not request a checkbox on the form of the royalty. *Compare* ECF No. 143-8 at 10 (ASUS's proposed verdict form, Q. No. 6(b)), *with* ECF No. 202 at 7. And

ASUS withdrew its requested lump sum instruction.  *Compare* ECF No. 143-11 at 93 (ASUS's proposed lump sum instruction), *with* Tr. 856:14–25 (final instructions with no lump sum instruction given).  Accordingly, it was not improper for the jury to follow the jury instructions and the evidence presented by both damages experts and return a running royalty award.

ASUS is also wrong to argue that any amount higher than that opined by Mr. Ferioli or by the SVV-Samsung license is *per se* unsupported by substantial evidence.  Mot. at 5.  ASUS specifically presented these arguments to the jury, and the jury rejected them.  This is not improper.  "The reasonable royalty rate determined by the jury must be supported by relevant evidence and must be 'within the range encompassed by the record as a whole,' but it is not restricted to any specific figure put forth by any of the parties during trial."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, No. A-01-CA-167-SS, 2006 WL 8435710, at *4 (W.D. Tex. Oct. 31, 2006) (quoting *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517–19 (Fed. Cir. 1995)); *see also Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005).  Because the jury awarded an amount within the range of opinions of the damages experts, and because that award was supported by substantial evidence, ASUS's motion should be denied.

Finally, ASUS is wrong to re-urge its so-called Motion to Strike SVV's Late Inclusion of Brand New Accused Products in its Damages Calculations as a post-trial motion.  Mot. at 5 (citing ECF No. 179).  ASUS presents no new arguments as to why the Court should rule differently now, and ASUS certainly does not even attempt to meet the standard in filing a motion for reconsideration.  In denying the original motion, the Court required that SVV indicate on the record the number of units subject to the motion, should ASUS want to appeal the ruling. Tr. 3:15–9:22.  Dr. Farber followed this instruction.  Tr. 429:8–22.  As discussed in the original papers, the only reason these new units were included in the royalty base was to follow the

infringement *stipulation* between the parties.  *See* ECF No. 180.  The Court's original decision

on this issue was proper, and ASUS is not entitled to remittitur or a new trial because, for a small

number of units, Dr. Farber followed the parties' agreed infringement stipulation that occurred

after the close of expert reports.  Accordingly, ASUS's motion should be denied.

## III.    WILLFULNESS

A jury's willfulness finding is a question of fact reviewed for substantial evidence post-

trial.  *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018).  The jury's

verdict should be reversed on JMOL only if the evidence "point[ed] so strongly and

overwhelmingly in favor of [ASUS]" such that "reasonable jurors could not arrive at any

contrary conclusion."  *Dresser–Rand Co.*, 361 F.3d at 838.  The record firmly supports the jury's

willfulness finding.  *See also* ECF No. 219 (marshaling significant willfulness evidence).

Nothing in the 1.5 pages ASUS devotes to this issue compels a different conclusion.

**Notice**: The evidence showed that SVV made ASUS aware of (1) the specific patents-in-

suit, (2) the particular products, and (3) actions that constituted infringement of those patents

long before the litigation began.  *See* PTX-16 (February 2021 letter); PTX-18 (March 2021

correspondence); PTX-25, PTX-26, PTX-27, PTX-30 (subsequent correspondence throughout

2021).  SVV delivered to ASUS "thousands of pages" of detailed claim charts.  Tr. 122:25–138:4

(Vasylyev).  In denying ASUS's Rule 50(a) motion on willfulness, the Court observed that the

record demonstrated that SVV gave ASUS "a lot more notice" than is typical.  Tr. 575:16–20.

**Conduct**: The evidence supports the jury finding that ASUS acted wrongfully,

deliberately, willfully blindly, and/or with bad faith following receipt of SVV's detailed patent

infringement allegations.  *See Halo Electronics v. Pulse Electronics, Inc.*, 579 U.S. 93, 106

(2016).  ASUS initially scapegoated unnamed parts suppliers.  PTX-26 ("We do not think

Asustek is the appropriate company for you to discuss" and "we suggest you to discuss . . . with display panel manufacturers."). It then concocted an unbelievable excuse—that it did not have the names and contact information for its own suppliers. PTX-30. Yet ASUS's corporate representative acknowledged at trial that this excuse was illegitimate. Tr. 555:22–556:8 (Lee).

ASUS's post-suit conduct did nothing to right the ship. Besides continuing infringement,[3] key individuals in charge of the products could not be bothered to read the patents. Tr. 558:10–14 (Lee) ("Q. So if Dr. Vasylyev and SVV would prefer to avoid litigation, what do they have to do to get somebody at ASUSTeK who's technical on monitors to read their patents? A. I'm sorry. I don't know."). In court, ASUS's attorneys long pressed an invalidity case and a vicarious liability defense that ultimately proved too weak to even present to the jury.

**Intent**: The evidence supports a finding of subjective intent to infringe. ASUS admitted that it has many readily available non-infringing alternatives, but has for years, with knowledge of its infringement, elected to continue selling the infringing products. *See* Tr. 560:11–19, 562:6–14 (Lee); *see also* Tr. 574:19–24 ("It is a fact of this case that there are hundreds of unaccused monitors that do the same thing [as the infringing monitors]."). In denying the Rule 50(a) motion on willfulness, the Court correctly cited this fact as probative. Tr. 575:2–576:14; *accord Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1034 (N.D. Cal. 2017); *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, No. 6:20-CV-00018-ADA, 2022 WL 3371630, at *9 (W.D. Tex. Aug. 16, 2022).[4]

---

[3] *See Crane Sec. Techs., Inc. v. Rolling Optics AB*, 337 F. Supp. 3d 48, 59 (D. Mass. 2018) (enhancing damages where the defendant took no remedial action upon receiving notice letters, continued sales during litigation, and provided no evidence for why it took it "so long to change course"), *aff'd*, 784 F. App'x 782 (Fed. Cir. 2019).

[4] The evidence also showed that ASUS had a specific motivation for choosing the infringing monitors over its "hundreds" of available non-infringing options: money. SVV established that

ASUS disputes "subjective intent" by arguing that it formed a "good faith" belief in non-infringement.  But ASUS put that argument before the jury, and the jury rejected it.  ASUS offers no reason to second-guess the jury's decision.  *See KAIST IP US LLC v. Samsung Elec. Co. Ltd.*, 439 F. Supp. 3d 860, 883 (E.D. Tex. 2020) ("[T]he Court will not substitute its judgment for that of the jury's where substantial evidence to support the jury's finding exists.").  Besides, the evidence on the record reveals that an unreasonable "head in the sand" approach was taken.

First, ASUS's alleged belief in its current non-infringement arguments was so strong that it did not file a single pre-trial motion advancing these arguments.  Instead, ASUS's only pre-trial non-infringement arguments contended that it was not responsible for the actions of its wholly owned subsidiary, ASUS America.  *See, e.g.*, ECF No. 72 (MSJ of no vicarious liability).  That defense was abandoned at trial.  *See* Tr. 418:25–419:11; ECF No. 183.

ASUS's other alleged "good faith" belief regarding non-infringement is unavailing and should not undo the jury's verdict.  After receiving dozens of detailed claim charts, ASUS never expressed this alleged belief to SVV (or anyone else for that matter).  By ASUS's own telling, it does not know what SVV could have done to get someone with technical knowledge at ASUS to even read SVV's patents without filing suit.  Tr. 558:10–14 (Lee).  In fact, evidence showed that ASUS kept the relevant product manager (Mr. Lee) in the dark about these patents and this case for much of its existence.  Tr. 537:23–545:10 (Lee) (testifying that by his August 2023 deposition, he still had not read the patents and "had not done in-depth research"); Tr. 609:12–23 (Lee).  Yet the only evidence ASUS cites for its alleged "good faith" belief are snippets of testimony **from Mr. Lee**—the very individual who had been long kept in the dark.  And because

---

use of its patented technology saves ASUS on average $21.37 per device.  *See, e.g.*, Tr. 461:2–8.  ASUS's witness admitted that finances drive its decision-making.  Tr. 616:22–617:8 (Lee).

he had no meaningful technical understanding, all Mr. Lee could offer to the jury was hearsay that some unnamed individuals at ASUS had allegedly formed unspecified opinions of non-infringement, at some point in time—the jury (and SVV) learned nothing more.[5]  Tr. 607:5–9 (Lee) ("Q. Nobody's going to present that technical analysis correct? Nobody from ASUS or its vendors, correct? A: They didn't—were not able to come this time, but we do have technical people to explain.").  This testimony was unavailing and the jury was right to reject it.  In the Rule 50(b) context, it falls far short of pointing so strongly and overwhelmgly in ASUS's favor so as to undo the jury's verdict.

Willfulness focuses on the "totality of the circumstances" and turns on the facts of the particular case.  *Shiley, Inc. v. Bentley Lab'ys, Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986).  In this case, the totality of the circumstances firmly support the jury's finding of willful infringement.

## IV.    INFRINGEMENT OF THE '342 PATENT

### A.  JMOL: Substantial evidence supports the jury's finding of infringement for the "predetermined alignment" element.

The '342 Patent claim 1 recites "<u>at least one</u> of said plurality of light deflecting elements . . . is in a predetermined alignment with respect to <u>at least one</u> of said elongated cylindrical lenses."  JTX-002 (color coding from ASUS's Motion, underling added).  Dependent claim 21 relies on claim 1.  Substantial evidence supports infringement for this limitation.

At trial, SVV presented the expert testimony of Mr. Tom Credelle—an expert with experience in the display industry spanning four decades.  Tr. 223:3–229:8.  As part of his detailed infringement presentation, Mr. Credelle explained how the accused products met the

---

[5] To the extent these non-specific beliefs held by unnamed individuals within ASUS were formed, ASUS had an obligation to disclose that to SVV in discovery as opposed to ambushing SVV with this information at trial.  *See* Ex. B at 9 (Response to Interrogatory No. 7, refusing to disclose any "facts relevant" to non-infringement); *id.* at 12–13 (Response to Interrogatory No. 12, disclosing no facts underlying any alleged belief in non-infringement).

"predetermined alignment" limitation of the '342 Patent. Mr. Credelle first showed evidence of both the light defecting elements (PTX-109.16) and elongated cylindrical lenses (PTX-109.13) in the representative PA278CV product.

Based on his extensive experience in the field, Mr. Credelle also explained how the light deflecting elements (*i.e.*, microcavities, which were sometimes referred to as dots) and lenses were both designed via a computer program and set for a given product (that is, the design was predetermined). Tr. 282:1–8 ("[O]nce they decide they have a pattern they like, it becomes a computer program, a file. And that computer CAD file goes into the laser machine that creates the dots."); 283:8–17 ("[T]he lenses are designed by a CAD program."); *accord* Tr. 295:6–13, 295:14–24, 373:15–18; *see also* Fed. Rs. Evid. 702 and 705 (experts may be qualified based on experience and are permitted to testify as to inferences). Mr. Credelle further explained that, because the microcavities and lenses were both designed together on a computer (just on opposite sides of the lightguide plate), there is necessarily a designed or predetermined alignment between those components. Tr. 286:10–287:1 ("[B]ecause the location of the lenses is predetermined, the location of the microcavities is predetermined[,] . . . [w]e have a predetermined alignment between those dots on the bottom that are randomized and the linear lenses."); *see also* Tr. 283:18–24. Given this predetermined computer design, Mr. Credelle confirmed that two light guides taken from the same product model look the same and have the same pattern and alignment. Tr. 284:4–6, 287:2–12, 391:8–392:6, 377:8–10, 395:5–10. Finally, to establish the relevant limitation that "at least one" of the light defecting elements was in a predetermined alignment with "at least one" of the lenses was met in the representative product, Mr. Credelle identified two such examples in the evidentiary record. Mot. at Ex. A (PDX_3.66) (annotating PTX-109.23). While his demonstrative slide points to two aligned microcavities,

Mr. Credelle's testimony was not limited to these two cavities as ASUS suggests, *see* Mot. at 8–9 (describing these as aligning by happenstance), because he described how all of the microcavities were designed in conjunction with the lenses and thus were in predetermined alignment as discussed above—indeed, he referred to these two as just examples.  Tr. 374:10–25.

ASUS and its expert Dr. Goossen did not provide any factual evidence to dispute Mr. Credelle's evidence and testimony on these points.  Indeed, they cannot because Dr. Goossen acknowledged (1) that he did not know how these products were manufactured, Tr. 688:19–21, and (2) that "the pictures [he] took matched what was in Mr. Credelle's report," Tr. 720:5–7—confirming that the alignment of microcavities and lenses in light guides of the same product were the same (*i.e.*, by a predetermined design).

While ASUS's Motion suggests Mr. Credelle's testimony regarding the predetermined computer design (*i.e.*, a CAD file) lacked evidentiary support, the trial record directly contradicts this.  Beyond being supported by his experience and unrebutted images of the representative product (PTX-109), Mr. Credelle's testimony regarding the manufacturing of these products using a computer design or CAD file was also supported at trial by his live demonstration showing that two light guides from the same product are marked with the same unique identifying numbers.  Indeed, this testimony was allowed by the Court in direct rebuttal to ASUS's suggestion that there was no proof that a computer design or CAD file existed.  Tr. 390:14–21 (explaining that a "response to Mr. Buresh's point that you can't prove the CAD file existed" was "the identifying mark on the light guide plate").  Specifically, Mr. Credelle explained and showed to the jury there was a "unique number that relates to the light guide plate used in the PG32UQ that basically determines where all those dots are located" and the same number appeared in other the PG32UQ product in the courtroom.  Tr. 391:8–392:6.  Based on

how these identifying numbers, the microcavities, and the lenses matched, Mr. Credelle explained and demonstrated live evidentiary support for his explanation that the light guides in the accused products were designed in a computer program or CAD file.  Tr. 392:7–393:4.

Ultimately, ASUS does not disagree that each of the PG32UQ products light guides were marked with the same number.  Indeed, this evidence was so compelling that ASUS's counsel was forced to admit on further cross that, regarding these light guides, it "is a fact, they have the same model number."  Tr. 395:7–10; *see also* Tr. 689:10–21 (Dr. Goossen conceding the same). Rather, ASUS argues that Mr. Credelle did not show *direct* evidence of the CAD file from third parties in China used to create them.  But, of course, juries are permitted to rely on circumstantial evidence to conclude there is infringement.  *See, e.g.*, *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) ("A patentee may prove infringement by any method of analysis that is probative of the fact of infringement, and circumstantial evidence may be sufficient." (internal citations and quotation marks omitted)); *Alco Standard Corp. v. Tennessee Valley Auth.*, 808 F.2d 1490, 1503 (Fed. Cir. 1986) ("Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive.").[6]  Mr. Credelle's live demonstration matching the identifying number between these light guides was just that—circumstantial evidence that the products[7] were manufactured using a predetermined design.

---

[6] ASUS's lone citation to the unpublished *Dominion Energy, Inc. v. Alstom Grid LLC* decision is distinguishable.  There, the Federal Circuit noted that the expert focused on the wrong aspect of the accused product, that he "did not cite any particular documents to support his position," and that his testimony was actually contradicted by the record evidence and his own contradicting admissions. 725 Fed. App'x 980, 985–87 (Fed. Cir. 2018).  In contrast, Mr. Credelle relied on images of the microcavities and lenses at issue, and a live inspection of ASUS's products evidencing their design.  His testimony on these points was not rebutted or contradicted.

[7] While ASUS argues that this demonstration of the PG32UQ product is not evidence of the PA278CV product, Mot. at 11, ASUS again ignores that this evidence is still circumstantial

Ultimately, it is the role of the jury to credit testimony, weigh evidence, and draw inferences from these facts. *Reeves*, 530 U.S. at 150. The only issue on a JMOL is whether substantial evidence supports the jury's finding. It does, and ASUS's Motion should be denied.

### B. New Trial: The jury's finding of infringement for the "predetermined alignment" limitation is not against the great weight of the evidence.

As discussed above, the jury's verdict is not against the great weight of the evidence and is supported by substantial evidence. ASUS's additional arguments here regarding Dr. Goossen's testimony are also unavailing. Again, Dr. Goossen acknowledged that he did not know how these products were manufactured, Tr. 688:19–21, and (2) that "the pictures [he] took matched what was in Mr. Credelle's report." Tr. 720:5–7. Rather than address this evidence and argument, Dr. Goossen argued at trial that this "claim doesn't describe manufacturing" but instead required a specific kind of structure, Tr. 663:13–664:2, akin to checkers on a checkerboard where the checkers "line up on the square." Tr. 659:9-16. As a purported basis for this argument, Dr. Goossen tried to import a specific "one-to-one" alignment described in the embodiment of Figure 27 of the patent into these claims. *See* Tr. 656:17–657:11, 658:12–659:16. Yet Dr. Goossen admitted on cross examination that the '342 Patent expressly states that the alignment depicted in Figure 27 is not limiting and could include lenses aligned with a pre-selected randomized pattern. Tr. 693:23–694:3 (discussing JTX-002 at 47:24–36).

Ultimately, the jury had the opportunity at trial to weigh the credibility of Mr. Credelle and Dr. Goossen on this claim limitation. And it found ASUS infringed. This Court has stated previously that "it is not this Court's place to assume the jury has not already weighted the credibility of the testimony before it." *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-CV-00044-

---

evidence that supports Mr. Credelle's unrebutted testimony regarding the computer design of the light guides in ASUS's products generally.

ADA, 2021 WL 3742201, at *4 n.1 (W.D. Tex. Aug. 24, 2021).  The Court should decline

ASUS's invitation to reassess the jury's weighing of expert witness credibility and deny ASUS's

motion for new trial on infringement for this limitation.

## V.    INFRINGEMENT OF THE '562 PATENT

### A.  JMOL: Substantial evidence supports the jury's finding of infringement for the "predetermined two-dimensional pattern" element.

The '562 Patent claim 1 requires a "predetermined two-dimensional pattern," and

dependent claim 7 relies on claim 1.  JTX-004 ('562 Patent).  Consistent with the discussion of

the predetermined limitation for the '342 patent, substantial evidence supports infringement for

this limitation in the asserted claims.  Mr. Credelle showed evidence of a random (or irregular)

microcavity pattern in the representative PG32UQ product.  Mot. at Ex. A (PDX_3.77) (showing

PTX-116.07); Tr. 280:20–281:5, 295:4–10, 295:25–296:3.  Mr. Credelle also explained how the

microcavities were designed via a computer program and set for a given product, meaning the

pattern was predetermined.  Tr. 282:1–8, 295:6–13, 295:14–24, 373:15–18.  And as discussed

above, Mr. Credelle described and demonstrated how two light guides taken from two PG32UQ

products look the same, including having the same unique identifier and microcavity pattern.  Tr.

284:4–6, 287:2–12, 391:8–392:6, 377:8–10, 390:14–21, 391:8–392:6, 392:7–393:4, 395:5–10.

ASUS could not rebut this substantial evidence.  First, ASUS conceded that light guide

plates from the PG32UQ products will have the same identifying number.  Tr. 395:7–10,

689:10–21.  Second, Dr. Goossen acknowledged he did not know how these products were

manufactured, Tr. 688:19–21, and thus he had no factual basis to dispute Mr. Credelle's

explanation.  And third, Dr. Goossen admitted images he took of the accused products matched

Mr. Credelle's images, Tr. 720:5–7—confirming that the microcavity patterns from two versions

14

of PG32UQ products were the same (*i.e.*, predetermined by design).[8]

Rather than tackle the evidence, ASUS and Dr. Goossen argued essentially that there is no such thing as a random pattern and that a pattern must be "like a grid."  Tr. 684:25–685:4; *see also* Mot. at 14 ("Random distribution is the exact opposite of a predetermined two-dimensional pattern.").  But counsel for SVV addressed this argument on cross-examination with Dr. Goossen, confronting him with disclosures from the '562 patent that expressly recognize and discuss predetermined randomized patterns.  Tr. 693:23–694:3 (discussing JTX-002 at 47:24–36), Tr. 695:20–696:5 (admitting this passage was also in JTX-004); JTX-004 at 47:30–42.

The jury was entitled to reject Dr. Goossen's testimony in coming to their verdict, as they did here.  *See Caboni v. General Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005).  ASUS cannot disturb the jury's finding by renewing its counterarguments on JMOL.  *Reeves*, 530 U.S. at 150.

### B.  New Trial: The jury's finding of infringement for the "predetermined alignment" limitation is not against the great weight of the evidence.

As discussed above regarding JMOL, SVV's evidence of infringement on the "predetermined two-dimensional pattern" limitation was substantial and not against the great weight of the evidence.  *See supra* Section V.A (citing PTX-116.07; Tr. 280:20–281:5, 295:4–10,  282:1–8, 295:6–13, 295:14–24, 373:15–18, 295:25–296:3, 284:4–6, 287:2–12, 391:8–392:6, 377:8–10, 390:14–21, 391:8–392:6, 392:7–393:4, 395:5–10, 395:7–10, 689:10–21, 720:5–7).  The jury considered Dr. Goossen's arguments and SVV's cross examination, and it rendered a verdict in SVV's favor.  *See id.* (citing Tr. 693:23–694:3 (discussing JTX-002 at 47:24–36), Tr.

---

[8] ASUS's Motion still fails to acknowledge how "looking at a second apparatus" and finding the same microcavity pattern is absolutely directed to the claim limitation at issue.  Mot. at 16.  Indeed, this evidence is precisely what confirms that the pattern must have been predetermined prior to manufacturing to match between products, as Mr. Credelle explained.  And on JMOL, all inferences should be resolved in favor of the jury's verdict, which accepted Mr. Credelle's analysis.  *Reeves,* 530 U.S. at 150; *Gomez*, 442 F.3d at 933.

695:20–696:5; JTX-004 at 47:30–42).  There is no reason here for the Court to reweigh that

evidence and disturb the jury's verdict.  *See ESW Holdings*, 2021 WL 3742201 at *4 n.1.

## VI.    INFRINGEMENT OF THE '089 PATENT

### A.    JMOL: Substantial evidence supports the jury's finding of infringement for the "configured for injecting light . . ." element.

In order to conjure a JMOL argument for the '089 Patent, ASUS breaks a single claim

limitation into three parts and asserts that Mr. Credelle did not address one, as if he missed a

checkbox in a list of claim elements.  Mot. at 17.  This is not so.  Rather, this claim element—

discussed as one during Mr. Credelle's checklist for infringement, Tr. 307:17–23, 309:11–12[9]—

was fully addressed.  First, Mr. Credelle identified what "planar . . . array of optical elements"

are in the representative product.  Tr. 308:1–20.  And second, Mr. Credelle addressed how the

identified lenses met "the rest of the limitation," *i.e.*, *the entire* "configured to" claim portion.

Tr. 308:21–309:10.  Mr. Credelle did not omit addressing any limitations during his testimony.

ASUS then asserts that this testimony contains *the entirety of evidence* supporting

infringement of this claim element.  Mot. at 17.  But this ignores that, at this point in the trial, the

design and function of the lenses in ASUS's accused products had been repeatedly discussed.

*See* Tr. 256:12–257:1, 263:12–264:24, 265:12–19, 282:15–283:7, 284:7–18, 288:7–289:15,

297:25–298:5.  ASUS specifically ignores Mr. Credelle's discussion in detail of how light

interacts with the identified portions of the PG32UQ representative product with animation (such

as the claimed lenses), Tr. 258:19–267:5, including a specific discussion of light recycling *that is*

---

[9] SVV's counsel, in introducing this lengthy claim element, did not read every word of the claim when orienting the discussion, but instead introduced the beginning and ending phrases of the claim element.  *See* Tr. 307:17–23.  This led to the unremarkable result that the word "injecting" from the claim—omitted via verbal ellipsis—was not read on the record.  The '089 Patent is admitted record evidence, obviously, JTX-003, and as ASUS's Motion recognizes, the entire claim language was shown to the jury contemporaneously through demonstratives.  Mot. at 18.

*only relevant for infringement of the '089 Patent*, despite occuring before Mr. Credelle's testimony on this element.  Tr. 265:12–267:5; *see also* Tr. 254:2–255:1.  This also ignores the evidence regarding the reversibility of light's behavior when interacting with optical structures like lenses.  *See* Tr. 370:25–371:5, 371:13–20, 384:15–385:4, *see also* Tr. 339:23–340:20.  There is no dispute as to what SVV identified as the claimed "planar . . . array of optical elements": the lightguide's lenses.  Yet ASUS chooses to ignore all of the evidence presented at trial about the structure and function of those lenses when Mr. Credelle testified that the same lenses interact with light traveling within the waveguide, with that light traveling at high angle to normal from the accused quantum dot film as required by the '089 Patent's claim.  *See* Tr. 308:21–309:10. There is substantial evidence to support the jury's verdict, and ASUS's motion should be denied.

### B. New Trial: The jury's verdict is not against the great weight of evidence, and ASUS's novel non-infringement argument is no ground for a new trial.

ASUS's ground for new trial relies on a novel theory that, as a matter of law, the claimed "array of optical elements" cannot be "configured to inject light into the space between the optically transmissive and reflective surfaces at a high angle from a normal to the plane of the photoresponsive layer" if that array is located anywhere between the claimed "optically transmissive surface" and the claimed "reflective surface."  *See* Mot. at 17.  To argue this point, ASUS directly compares the figures of the '089 Patent to ASUS's accused products, *id.*, arguing that the Accused Products "are incapable of meeting this limitation" as a matter of law.  *Id.*

At best, ASUS's theory merely represents their side of a battle of technical experts as to whether the products met the plain and ordinary meaning of the claim terms in question.  Both experts provided testimony on infringement of this term, and the jury, weighing the strength of evidence and witness credibility, sided with SVV.  This should summarily dispose of ASUS's Motion.  *See, e.g.*, *Finesse Wireless LLC v. AT&T Mobility LLC*, 689 F. Supp. 3d 332, 352 (E.D.

Tex. 2023) (denying JMOL of non-infringement when "both sides gave conflicting evidence" and "[t]he jury was entitled to credit Plaintiff's evidence, and apparently did"); *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, No. 04-73461, 2011 WL 721959, at *2 (E.D. Mich. Feb. 23, 2011) (denying JMOL of non-infringement on a "battle of the experts," recognizing that "[t]here is simply no basis for the Court to choose one party's expert over the other's").

At worst, however, ASUS's Motion rests on a new non-infringement theory both undisclosed during fact and expert discovery[10] and based entirely on an untimely and waived claim construction position that seeks to import limitations from the patent's figures.  *See Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) ("[T]he parties cannot reserve issues of claim construction for the stage of post-trial motions. . . . [I]t is improper for the district court to adopt a new or more detailed claim construction in connection with a JMOL motion."); *see also Thorner v. Sony Comp. Ent. Am.*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).  Such a theory does not warrant a new trial, and ASUS's motion should be denied.

## VII.    INFRINGEMENT OF THE '318 PATENT

With respect to the '318 Patent (JTX-001), ASUS's Motions are based on a flawed claim construction position, equivalent to one *it already lost*.  ASUS's Motions should be denied.

In arguing for JMOL, ASUS does not genuinely dispute that SVV, through Mr. Credelle's testimony, presented substantial evidence that the back surface of the light guide plate

---

[10] ASUS solely relied on expert disclosures in responding to factual discovery on its non-infringement positions, Ex. B at 9, and Dr. Goossen's report never disclosed ASUS's novel theory regarding the "configured for injecting light" claim term that it now presses.  *See* Ex. C (disclosed non-infringement opinions for the '089 Patentand this term).  ASUS's new theory regarding the scope of this claim is entirely new, created for the first time only after SVV's case at trial.  *See Int'l Bus. Machines Corp. v. Zynga Inc.*, No. 22-590-GBW, 2024 WL 4103765, at *2 (D. Del. Sept. 6, 2024) ("Permitting new claim constructions on the eve of trial . . . prejudices parties by ambushing them with new argument after expert reports have already been served.").

in the accused products meet the limitation "broad-area light input surface."  Mr. Credelle explained how the accused products are designed so that 50% of the incoming light enters the light guide from the rear reflector before ever going towards the LCD screen.  Tr. 312:24–8; *see also* Tr. 703:9–17 (Dr. Goossen concurring).  Mr. Credelle also testified as to what would result if the back surface did not function as a light input surface, Tr. 314:1–6, and the purpose of the accused products' rear reflector.  Tr. 314:7–17.  This testimony is substantial evidence that the light guide's back surface acts as a broad-area light input surface in the accused products.

Instead, without contending with this evidence, ASUS simply concludes that the back surface cannot be a "light input surface," contending that the "plain and ordinary meaning of light input surface" requires that there be only one light input surface in the claimed system.  Mot. at 19–20.  ASUS even ultimately *proposes a construction* for the term: "where the light primarily enters a layer based on the prevailing direction of light."  *Id.* at 20.  *But see Hewlett-Packard Co.*, 340 F.3d at 1320; *Abiomed, Inc. v. Maquet Cardiovascular LLC*, 566 F. Supp. 3d 59, 74 (D. Mass 2021) ("Failing to timely raise claim-construction arguments ordinarily results in waiver.").  ASUS's premise is factually and legally hollow.

ASUS provides no reason why, factually, an optics system can only have one light input surface.  And in this case, Mr. Credelle provided testimony supporting that certain products at issue did have both "a light input edge" and "a broad-area light input surface."  *See* Tr. 275:8–20, 312:24–313:20.  ASUS's response was to say it cannot be, while claiming the accused products looked different than the patent's figures.[11]  The jury chose not to accept this empty conclusion.

---

[11] *Compare* Tr. 361:24–362:1 ("Q: Okay.  I would like to look at a figure in the '318 patent so we can maybe compare what you're saying to the patent."), *with* ECF No. 176 ("Court MIL No. 18: The parties shall be precluded from introducing evidence, testimony, or argument for purposes of non-infringement comparing the accused product or method to the preferred embodiments[ or] the specification[.]").

As a matter of legal claim construction, ASUS fares no better. ASUS creates its novel "plain and ordinary meaning" construction directly from the embodiments of the patent. *Compare* Mot. at 20 ("[T]here is only one light input surface in every embodiment described in the '318 patent[.]"), *with Thorner*, 669 F.3d at 1366 ("It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation."). Worse yet, ASUS has already attempted to to limit this term to a single light input surface, requesting that the Court construe the term to a "surface that faces and receives light from the light source." ECF No. 40-1 at 3. The Court rejected ASUS's proposal then and should reject its similar proposal now. *See Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 699 (D. Del. 2011) ("The Court will not allow Facebook to recapture post-trial what it lost during claim construction.").

Finally, ASUS accuses Mr. Credelle of presenting a "legally erroneous" opinion by referencing the claim's "comprising" language. Mot. at 20. "'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997). Mr. Credelle testified consistent with this simple, long-standing tenet of patent law. Tr. 313:21–25. ASUS relies on *Spectrum Int'l, Inc. v. Sterilite Corp.*, a case that involved *prosecution disclaimer*. 164 F.3d 1372, 1379–80 (Fed. Cir. 1998) (disallowing patentee to recapture claim scope relinquished during reexamination proceeding). This inapposite cite shows ASUS's hand. It has no legal support to accuse Mr. Credelle of legal error. ASUS's Motions for JMOL and new trial on the '318 Patent should be denied.

## VIII.    CONCLUSION

For the foregoing reasons, SVV respectfully requests that the Court uphold the jury's well-supported verdict in full and deny ASUS's motions for JMOL and new trial in their entirety.

DATED: December 2, 2024

Respectfully submitted,

*/s/ Warren J. McCarty, III*

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Warren J. McCarty, III
Texas Bar No. 24107857
Email: wmccarty@caldwellcc.com
Robert Seth Reich, Jr.
Texas Bar No. 24088283
Email: sreich@caldwellcc.com
Daniel R. Pearson
Texas Bar No. 24070398
Email: dpearson@caldwellcc.com
John F. Summers
Texas Bar No. 24079417
Email: jsummers@caldwellcc.com
Aisha M. Haley *(admitted pro hac vice)*
Texas Bar No. 24139895
Bjorn A. Blomquist
Texas Bar No. 24125125
Email: bblomquiest@caldwellcc.com
CALDWELL CASSADY & CURRY P.C.
2121 N Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone:  (214) 888-4848
Facsimile:  (214) 888-4849

Robert D. Katz
Texas Bar No. 24057936
Email: rkatz@katzfirm.com
KATZ PLLC
6060 N. Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:  (214) 865-8000
Facsimile:  (888) 231-5775

**ATTORNEYS FOR PLAINTIFF SVV
TECHNOLOGY INNOVATIONS INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system and by email. Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases, Western District of Texas, Section 14.

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III