**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **SVV TECHNOLOGY INNOVATIONS INC.** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No.  6:22-cv-00311-ADA** |
| **v.** | § | |
| | § | |
| **ASUSTEK COMPUTER INC.** | § | **JURY DEMANDED** |
| | § | |
| *Defendant.* | § | ███████████ |
| | § | |

**PLAINTIFF SVV TECHNOLOGY INNOVATIONS INC.'S RESPONSE TO**
**DEFENDANT ASUSTEK COMPUTER INC.'S MOTION TO VACATE**
**JUDGMENT OR, ALTERNATIVELY, FOR NEW TRIAL**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.    The Parties Dispute Infringement in Part Based on Limitations Concerning "a Predetermined Pattern" and "a Predetermined Alignment." ................................... 2

    B.    Mr. Credelle Reliably Opines, Without Objection, that the Light Guides Between Two Units of the Same Monitor Model Are Identical. .................................. 2

    C.    Based on ASUS's Open-Ended Cross Examination Question, Mr. Credelle Provides Additional Evidence, Including a Live Demonstration, that the Light Guides Between Two Units of the Same Monitor Model Are Identical. ..................... 3

    D.    Dr. Goossen Testifies and Provides No Testimony Rebutting that Two Light Guides from the Same Product Are "Exactly the Same." ............................................... 5

    E.    Dr. Goossen Is Cross-Examined on Accurate Pictures of the Two Light Guides Presented in Court, Taken With Mr. Credelle's Microscope, and Dr. Goossen Testifies Falsely About Mr. Credelle's Demonstration ................................................ 6

    F.    ASUS Objects to SVV's Request to Rebut Dr. Goossen's Testimony On Technical Capability; SVV Elects Not to Call Mr. Credelle After Learning that ASUS Intended to Cross-Examine Mr. Credelle on SVV Counsel's Statements. ................................................................................................................. 8

III.  ARGUMENT ..................................................................................................... 10

    A.    Legal Standard .......................................................................................... 10

    B.    ASUS Has Not Shown a Misrepresentation or Other Misconduct. ........... 12

    C.    Nothing Prevented ASUS From Fully and Fairly Presenting Its Case ....... 13

    D.    ASUS is Not Otherwise Entitled to a New Trial, and ASUS's Other Factual Assertions Are Wrong. ................................................................................ 16

IV.   CONCLUSION .................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**

*Ackermann v. United States*
   340 U.S. 193 (1950)..............................................................................................2, 11

*Bolton v. Tesoro Petroleum Corp.*
   871 F.2d 1266 (5th Cir. 1989) ...............................................................................17

*Caldarera v. E. Airlines, Inc.*
   705 F.2d 778 (5th Cir. 1983) .........................................................................11, 17

*Colburn v. Bunge Towing, Inc.*
   883 F.2d 372 (5th Cir. 1989) .........................................................................14, 17

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*
   942 F.3d 1119 (Fed. Cir. 2019)...........................................................13, 16, 18

*Conway v. Chem. Leaman Tank Lines, Inc.*
   687 F.2d 108 (5th Cir. 1982) .........................................................................17, 19

*Crocklin v. United States*
   252 F.2d 561 (5th Cir. 1958) ...............................................................11, 13, 17

*Diaz v. Methodist Hosp.*
   46 F.3d 492 (5th Cir. 1997) .................................................................................14

*Dixon v. Int'l Harvester Co.*
   754 F.2d 573 (5th Cir. 1985) ...............................................................................11

*ESW Holdings, Inc. v. Roku, Inc.*
   No. 6-19-cv-00044-ADA, 2021 WL 3742201 (W.D. Tex. Aug. 24, 2021) ............20

*F & S Offshore, Inc. v. K. O. Steel Castings, Inc.*
   662 F.2d 1104 (5th Cir. 1981) .......................................................................12, 19

*Foradori v. Harris*
   523 F.3d 477 (5th Cir. 2008) ...............................................................................11

*Fraige v. Am.-Nat'l Watermattress Corp.*
   996 F.2d 295 (Fed. Cir. 1993)............................................................................12

*Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*
   62 F.3d 767 (5th Cir. 1995) .........................................................................10, 11

*Halliburton Energy Servs., Inc. v. NL Indus.*
    618 F. Supp. 2d 614 (S.D. Tex. 2009) ..................................................... 14

*In re Crosby Tugs, L.L.C.*
    No. CIV.A. 02-1125, 2006 WL 8091887 (E.D. La. July 14, 2006) ......................................... 13

*Jones v. Illinois Cent. R. Co.*
    617 F.3d 843 (6th Cir. 2010) ..................................................... 11, 13

*Merix Pharmaceutical Corporation v. Clinical Supplies Management, Inc.*
    106 F. Supp. 3d 927 (N.D. Ill. 2015) ..................................................... 15

*Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*
    848 F.2d 613 (5th Cir. 1988) ..................................................... 17

*Ojeda-Toro v. Rivera-Mendez*
    853 F.2d 25 (1st Cir. 1988) ..................................................... 14

*Project Mgmt. Inst., Inc. v. Ireland*
    144 F. App'x 935 (3d Cir. 2005) ..................................................... 16

*Putman v. Management & Training Corp.*
    No. A-08-CA-685-SS, 2009 WL 10669155 (W.D. Tex. Aug. 18, 2009) ......................... 19, 20

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*
    818 F.3d 1320 (Fed. Cir. 2016) ..................................................... 12, 13

*Rozier v. Ford Motor Co.*
    573 F.2d 1332 (5th Cir. 1978) ..................................................... 12

*Seidman v. Am. Airlines, Inc.*
    923 F.2d 1134 (5th Cir. 1991) ..................................................... 11

*Smith v. Transworld Drilling Co.*
    773 F.2d 610 (5th Cir. 1985) ..................................................... 11

*United States v. 8 Gilcrease Lane, Quince, Fla. 32351*
    638 F.3d 297 (D.C. Cir. 2011) ..................................................... 16

*United States v. Fackrell*
    991 F.3d 589 (5th Cir. 2021) ..................................................... 15

*Washington v. Patlis*
    916 F.2d 1036 (5th Cir. 1990) ..................................................... 10

*Willis v. Lepine*
    687 F.3d 826 (7th Cir. 2012) ..................................................... 15

*Wilson v. Thompson*
   638 F.2d 801 (5th Cir. 1981) ............................................................................ 12

*Winger v. Brenner Tank, Inc.*
   926 F.2d 468 (5th Cir. 1991) ............................................................................ 17

**Rules**

Fed. R. Civ. P. 59 ............................................................................ 11, 16, 17

Fed. R. Civ. P. 59(a) ............................................................................ 11, 19, 20

Fed. R. Civ. P. 60 ............................................................................ 13, 16, 17

Fed. R. Civ. P. 60(b)(3) ............................................................................ 10, 11, 13, 14

## I.    INTRODUCTION

Ignoring the unimpeachable merits of the case, ASUS seeks a new trial by resorting to a baseless accusation of "fabricated" and "forged" evidence, "unfairness," and an "ambush" involving alleged attorney "misconduct."  ASUS's motion is both offensive and wrong.

ASUS—without proof—claims SVV presented "fabricated" evidence, Mot. at 11.  The allegedly "fabricated" evidence? Accurate images of the ***agreed representative product***, presented on a demonstrative slide, not entered into evidence.  Showing these accurate images of ASUS's own product to ASUS's own witness was not "unfair": the images were cumulative of what had been already presented at trial.  Nor was there any "ambush" to speak of.  The images showed the agreed representative product light guide's microstructure pattern.  This light guide's pattern was in evidence and discussed at length by both sides' experts and the inventor.  In fact, the ASUS expert witness who was allegedly ambushed by accurate images of the accused product, Dr. Goossen, had already offered extensive testimony about this products' pattern and claimed to have studied this product under microscope examination himself.  He also conceded the ultimate issue being examined—namely, that when he looked at the pattern on a second light guide plate it matched the one on Mr. Credelle's light guide plate.  *See* Tr. 720:5–7  ("[T]he pictures I took matched what was in Mr. Credelle's report.").  And finally, what ASUS now brands as a misrepresentation was a live, clunky objection exchange—one that ASUS already tried to strategically leverage to its own advantage in front of the jury.

ASUS's poorly-vetted accusations, besides being wrong, are procedurally defective.  Prior to losing a verdict, ASUS never once contended that its ability to fully and fairly present its case was in any way impaired by the now-complained-of-events that all occurred prior to closing argument.  ASUS never requested any relief—no continuance, no mistrial, no curative instruction, not even informal discovery into its supposed suspicions.  Instead, ASUS

deliberately chose to litigate the issue with the jury instead.  To that end, it falsely derided SVV's witness, Mr. Credelle, by calling into question his microscope's capabilities and misrepresenting the scope of his demonstration to the jury.  The Court correctly observed that ASUS had gone out on a "tightrope" in doing so.  ASUS then gambled that its tightrope rebuttal would work to ASUS's strategic benefit.  New trials are not available to remedy "free, calculated, deliberate choices." *Ackermann v. United States,* 340 U.S. 193, 198 (1950).  ASUS made the choice to litigate the issue to the jury, not the Court, and it cannot now get a do-over because the gamble failed.

For the reasons stated in more detail below, ASUS is not entitled to the extraordinary relief it requests, and the Court should deny ASUS's motion.

## II.    FACTUAL BACKGROUND

### A.    The Parties Dispute Infringement in Part Based on Limitations Concerning "a Predetermined Pattern" and "a Predetermined Alignment."

SVV alleged the accused products infringed certain claims of the '562 and '342 patents. The asserted claims of the '562 Patent include limitations requiring "a plurality of surface relief features formed in said broad-area surface according to a predetermined two-dimensional pattern."  JTX-004.  The asserted claims of the '342 Patent require "at least one of said plurality of light deflecting elements . . . is in a predetermined alignment with respect to at least one of said elongated cylindrical lenses."  JTX-002.

### B.    Mr. Credelle Reliably Opines, Without Objection, that the Light Guides Between Two Units of the Same Monitor Model Are Identical.

As part of his detailed infringement presentation, Mr. Credelle presented opinions on how the accused products met the "predetermined pattern" and "predetermined alignment" limitations of the '562 and '342 patents.  Mr. Credelle's experience in the display industry spans four decades.  Tr. 223:3–229:6 (describing extensive industry experience).  Based on this extensive

2

experience, Mr. Credelle testified to his opinion that the products met the "predetermined" limitations because the particular random pattern that would thereafter be used to serially manufacture light guides was specified. This predetermined design is shown in part because the microstructures within the light guides of two units of the same monitor product would be the same as a result of the laser machine manufacturing process. For example, during direct Mr. Credelle testified that in his experience companies manufacturing displays like the accused products generate "the pattern to be randomized . . . in a computer" and "once they decide they have a pattern they like, it becomes a computer program, a file." Tr. 282:1–6. "[T]hat computer CAD file goes into the laser machine that creates these dots." Tr. 282:6–8; *see also* Tr. 295:11–13 (Mr. Credelle testifying that the dot locations were "well known so the computer can control the laser"); *see also* Fed. R. Evid. 702 (experts may be qualified based on experience).

Mr. Credelle further confirmed this opinion by reference to the light guides' microstructure pattern, testifying near the end of the first day that "we've done some testing to show . . . light guides from two different – of the same model ***under a microscope are exactly the same.***" Tr. 284:4–6 (emphasis added); *see also* Tr. 287:2–12 ("Q. . . . [A]re the lenses and the microstructures in this waveguide from that product, just a different one, the same . . . ? A. In this computer monitor, yes. It is the same . . . . Q. Because these both came from the same product? A. They came from a – yeah."). ASUS now argues that these were "new surprise opinions."[1] Mot. at 1. During this testimony, ASUS sat silent.

### C.    Based on ASUS's Open-Ended Cross Examination Question, Mr. Credelle Provides Additional Evidence, Including a Live Demonstration, that the Light Guides Between Two Units of the Same Monitor Model Are Identical.

Before trial, the Court cautioned the parties that experts were not limited to the scope of

---

[1] They were not. *See infra* Section III.D.

their reports if an attorney opened the door on cross.  5/16/2024 Hr'g Tr. at 80:13–23.  Counsel for ASUS failed to heed the guidance and instead asked an open-ended question: "My question is this – I'm trying to fully respect your testimony, but I'd like to move past that and ask if you have any evidence of a design intent, a predetermination, for that alignment that you're showing on the screen[?]"  Tr. 377:3–7.

Mr. Credelle sought to explain himself on re-direct.  Counsel for ASUS sought to prevent this explanation by objecting to scope and claiming that his cross-examination did not open the door because it was "on the opinion in his report."  Tr. 389:11–12.  In view of the open-ended question actually asked, the Court overruled the scope objection.  Tr. 389:3–390:5.  Mr. Credelle then elaborated on the testimony he had already provided on direct—recreating his testing via live demonstration.  Using his $30 microscope connected to his Samsung tablet displayed via the ELMO, Mr. Credelle examined two light guides from two off-the-shelf units of the representative PG32UQ products.  *See* Tr. 387:8–12 ("Q.  Now, even though you don't have the CAD file, what evidence have you actually seen – and, for example, ***we have two PG32UQ light guides here*** – to tell us it's made by a computer and it has a predetermined pattern?" (emphasis added)); Tr. 388:8–14; 391:3–392:6; Credelle Decl. ¶ 4.  He placed the PG32UQ light guides under the microscope, projecting a magnified picture over the courtroom monitors of the unique number and dot pattern on both products, showing how each light guide had the same "unique numbers that relates to the light guide plate."  Tr. 391:3–392:6.  This number confirmed his opinion that "there's a computer file that indicates a location of each and every one of those dots."  Tr. 392:7–14.

Consistent with his testimony from the day before, Mr. Credelle further testified as to the live picture of the microstructures in the light guides.  He had "compared the dots and [] compared the lenses.  They line up."  Tr. 392:17–18.  He further elaborated that "these light

guide plates have the same dot pattern," and that he "confirmed that the pattern is exactly the same." Tr. 395:1–13. ASUS made no further objection after its first was overruled in view of ASUS's own cross-examination.

With the jury's recollection of the demonstration fresh on their minds, counsel for ASUS immediately recognized on recross that Mr. Credelle had "confirmed [the two light guides] had the same model number," Tr. 395:1–6. Indeed, counsel for ASUS acknowledged it "is a fact, they have the same model number," Tr. 395:7–8. It was only two days later—when seeking to justify a cross-examination based on an attorney statement—that ASUS counsel reversed course and decided (incorrectly) that "you could not even read the model number." Tr. 820:18–20.

**D.    Dr. Goossen Testifies and Provides No Testimony Rebutting that Two Light Guides from the Same Product Are "Exactly the Same."**

ASUS's non-infringement expert testified the next day (Day 3). Despite hearing and seeing Mr. Credelle's testimony and demonstration on each of the prior days—and sitting in a courtroom littered with demonstrative units of the same PG32UQ product to look at if he so chose—Dr. Goossen did not present contrary evidence. Instead, Dr. Goossen confirmed Mr. Credelle's point. He and Mr. Credelle took pictures of different units of the same PG32UQ product. And at trial, Dr. Goossen conceded that he "saw the same things as shown in [Mr. Credelle's] photographs," Tr. 717:25–718:5, and acknowledged that "there's no dispute over the photographs," *id.* 720:5–7 ("[T]he pictures I took matched what was in Mr. Credelle's report.").

Dr. Goossen instead presented a theory unrelated to the matching patterns between units, opining that "having a random distribution having a predetermined alignment with another set of things having a regular array of distribution" does not "make sense." Tr. 662:5–8. Rather than dispute that the patterns lined up, he dismissed the notion as irrelevant. Tr. 663:13–663:23 ("[T]he claim requires alignment to exist as a structure. And so you don't have to even think

5

about what happens before the structure is made.  The claim doesn't describe manufacturing.  It

doesn't describe a process. It only describes the resulting structure.").  Unsurprisingly, Dr.

Goossen did not rebut Mr. Credelle's substantive point: the microstructures are exactly the same.

> **E.**    **Dr. Goossen Is Cross-Examined on Accurate Pictures of the Two Light Guides Presented in Court, Taken With Mr. Credelle's Microscope, and Dr. Goossen Testifies Falsely About Mr. Credelle's Demonstration.**

SVV then briefly cross-examined Dr. Goossen on the pattern overlap between two units

of the PG32UQ product that Mr. Credelle had discussed the two days prior.  The point lasted

about a minute, and it is undisputed.  Tr. 691:3–25.  Aware of the perils of live demonstrations

(using a microscope connected to a tablet projected via an ELMO displayed on courtroom

monitors), Mr. Credelle captured backup still images of the same light guides he presented to the

jury with the same microscope he used before the jury.  Credelle Decl. ¶ 5.  A simple

demonstrative was later prepared with each image of the agreed-upon representative product.

The images depicted a zoomed-in portion of the two PG32UQ light guides shown to the jury and

available for inspection throughout trial.  Credelle Decl. ¶¶ 3, 5.  The zoomed-in portion is

directly below the light guide model number, indicating that the demonstrative reflects the same

portions of the light guide Mr. Credelle displayed the day before.  *Id.*  The bottom portions of the

unique number are even visible in the demonstrative slide, outlined below in green:



Counsel for SVV knew the images accurately depicted the microstructure pattern of the

light guides in the two different PG32UQ samples shown in Court with Mr. Credelle. When ASUS objected, counsel for SVV attempted to argue that the demonstrative was showing the same portions of the same light guides shown on-screen the prior day, referring back to the live picture depicted over the courtroom monitors during Mr. Credelle's testimony. McCarty Decl. ¶¶ 5–7. Because Mr. Credelle had been cross-examined on this imagery (*i.e.*, the live picture presented over the ELMO), Tr. 393:15–395:13, counsel stated that Mr. Credelle had been cross-examined on the picture, *id.* 690:24–25; McCarty Decl. ¶ 6.[2] This exchange took place in front of the Court and the jury, all of whom observed Mr. Credelle's demonstration as well.

In response, Dr. Goossen focused primarily on microscope capability, not timing. Tr. 691:10–11 ("Sir, I don't believe that was possible with that microscope you had."). Dr. Goossen testified on redirect that there was "no way" Mr. Credelle could have taken the demonstrative photos with his microscope. Tr. 719:2; *see also* Tr. 718:23–25 ("Q. Do you think that microscope could have taken the picture we saw earlier today? A. Absolutely not."). This was a bold declaration. And, unfortunately for ASUS, it was incorrect. Credelle Decl. ¶ 4–5.

ASUS and Dr. Goossen then misrepresented Mr. Credelle's demonstration, with ASUS counsel overtly leading its expert to testify—incorrectly—that Mr. Credelle had not even shown both light guides. *See* Tr. 718:14–20 ("Q. [B]ut there was a small microscope that was used to zoom in on a model number from one the products. Do you recall that? A. Yes. Q. ***And just looked at one, right?*** A. As far as I know, yes." (emphasis added)). ASUS invited and Dr. Goossen offered this bizarre testimony despite the fact that both counsel and Dr. Goossen were present for Mr. Credelle's demonstration and thus knew—or at the very least *should* have known—that Mr. Credelle had shown and analyzed microscopic images of ***two*** separate light

---

[2] Counsel misunderstood the word "micrograph" as "microscope" when answering Dr. Goossen's follow-up question during cross-examination. *Id.* at ¶ 8.

guides.  Indeed, ASUS's counsel had already conceded with Mr. Credelle that he had "confirmed [the two light guides] had the same model number," Tr. 395:1–7.  Yet Dr. Goossen and ASUS suggested otherwise one day later.  Whether at this point ASUS was intentionally misrepresenting the demonstration or negligently failing to recall its details, only ASUS can say.  But even ASUS now concedes the testimony it offered on this point was not accurate.  Mot. 2–3 (describing Credelle demonstration as showing two separate light guides).  And this incorrect testimony remained unrebutted when the case was submitted.

### F.    ASUS Objects to SVV's Request to Rebut Dr. Goossen's Testimony On Technical Capability; SVV Elects Not to Call Mr. Credelle After Learning that ASUS Intended to Cross-Examine Mr. Credelle on SVV Counsel's Statements.

SVV knew that the microscope images of the representative product were captured with Mr. Credelle's microscope that he used in court, so SVV intended to call Mr. Credelle to testify to these facts.  ASUS initially opposed any rebuttal.  Tr. 721:1–20.  But because ASUS had insinuated "in essence that those slides were fabricated"—it had "chose[n] to go out on that tightrope"—the Court observed that the jury was "entitled to hear . . . how it was made."  Tr. 721:10–20 ("THE COURT: Maybe the microscope can't do it.  But if you're wrong, the jury's going to be entitled to hear that -- how it was made.").  So the Court recognized a rebuttal was appropriate if SVV chose to do it.

At the close of Day 3, ASUS's counsel sought to *confirm* the limited scope of any rebuttal.  Tr. 804:23–25 ("MR. BURESH: Your Honor, just to clarify, any rebuttal would be limited in scope to showing that he--").  The Court confirmed that rebuttal was limited to: "rebutting" ASUS's witness's statement that he did not "think ***it's possible that microscope could have done that***."  *Id.* 805:1–4 (emphasis added).  The Court clarified that Mr. Credelle could "get on the witness stand and say ***it is possible because I did it***" and that testimony was

"**_all we're doing_**."  Tr. 805:4–11 (emphases added); *see also id*. 810:19–20 ("The plaintiff will call their witness back to explain that he was the one that used the microscope, and that will go very quickly.").  Otherwise focused on closing, counsel for SVV prepared accordingly.  Mr. Credelle was only prepared to discuss that he knew his microscope could capture the images in the cross-demonstrative because he is the one who captured them.

On Day 4, moments before closing, ASUS suddenly altered course.  Likely recognizing that both Dr. Goossen and ASUS's lead counsel would be exposed for their bold, incorrect assertions that Mr. Credelle's microscope was incapable of capturing the images, ASUS informed the Court and SVV that it now intended an entirely different line of attack: to cross-examine Mr. Credelle on an attorney statement made during the cross examination of Dr. Goossen.  Tr. 820:24–821:3.  To support this shifted request, ASUS trotted out a new recollection of Mr. Credelle's demonstration, one that was inconsistent with the statements its own counsel made directly after the demonstration happened.  While Mr. Credelle's demonstration reflects difficulty in seeing the monitor from his vantage point while operating the microscope during the demonstration, both parties recognized at the time that the number was clear.  On Tuesday (the day of the demonstration), Mr. Credelle had "confirmed [the two light guides] had the same model number," Tr. 395:1–7, on ASUS's own telling.  On Thursday (and still today), ASUS now professed a changed belief: "you could not even read the model number."  Tr. 820:18–20.

When the Court appeared likely to allow exploration of this issue that SVV believed to be tangential—an issue beyond that for which Mr. Credelle and counsel were prepared, *compare* Tr. 805:1–11 *with* 819:3–821:7—SVV elected not to further litigate the point literally seconds before the Court began reading the charge.  As Mr. Caldwell stated that morning, "what I thought he was testifying to pursuant to literally what you told us last night is, . . . he's going to

get on the witness stand and say it's possible . . . because [he] did it." Tr. 819:15–24. Having prepared Mr. Credelle to address only the issue of technical capability and his identity as photographer—and having Mr. Credelle's direct and Dr. Goossen's cross performed by different members of the trial team—Mr. Caldwell was uncertain about, and unprepared to address with Mr. Credelle, the separate issue of the disputed attorney statement.

According to ASUS, by this point it became "immediately and crystal clear" that the still frames used in the demonstrative were not snapped in Court during Mr. Credelle's live demonstration. Mot. at 7. But ASUS likely recognized that any relief, had they requested it, would merely confirm that those still frames were both accurate and cumulative of Mr. Credelle's demonstration, simply captured by the same, capable microscope at a different time. And any relief the Court might grant would almost certainly also confirm that ASUS itself had been flat wrong in its knee-jerk attempts to mock Mr. Credelle's microscope. So, ASUS chose to do nothing. Gambling instead that Dr. Goossen's twice-wrong testimony about the images might resonate with the jury, ASUS closed and submitted the case.

After the jury returned a verdict of willful infringement, ASUS filed its present motion, alleging for the first time that the trial was "fundamentally unfair." Mot. at 9.

## III.    ARGUMENT

### A.    Legal Standard

ASUS presents its request for a new trial under two procedural standards, Rule 60(b)(3) and Rule 59. Relief from a judgment may be appropriate under Rule 60(b)(3) where (i) one party has engaged "fraud or other misconduct" and (ii) the complained-of conduct deprived the other party of fully and fairly presenting its case. *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 772 (5th Cir. 1995) (quoting *Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990)). A party seeking relief under Rule 60(b)(3) must prove the alleged misconduct

and the deprivation of the party's ability to fully and fairly present its case with clear and convincing evidence. *Id.*

A new trial under Rule 59 may be granted on any reason for which a new trial had been granted at the time the Federal Rules were enacted. Fed. R. Civ. P. 59(a). One traditional ground—the one on which ASUS appears to rely—is that the trial was "unfair or prejudicial error was committed." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)). "A new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand." *Foradori v. Harris*, 523 F.3d 477, 506 (5th Cir. 2008). Where the request is based on "improper comments of counsel, the conduct must be such as to gravely impair the claim and dispassionate consideration of the case by the jury." *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585–86 (5th Cir. 1985).

Under either standard, a moving party's own conduct is highly significant as "free, calculated, deliberate choices are not to be relieved from." *Ackermann,* 340 U.S. at 198. Where a movant's actions reflect a choice to gamble on the verdict rather than remedy any perceived issues contemporaneously, case law is uniform under either standard: new-trial relief is not appropriate. *See, e.g.*, *Crocklin v. United States*, 252 F.2d 561, 562 (5th Cir. 1958) (affirming conviction despite undisputedly improper argument because defendant's lack of mistrial motion reflected knowing choice to gamble on the verdict); *see also Caldarera v. E. Airlines, Inc.,* 705 F.2d 778, 782 (5th Cir. 1983) (despite a contemporaneous objection, failure to move for mistrial was "significant" because litigant "got a chance to see the verdict and then to seek to overturn it"); *Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 851–52 (6th Cir. 2010) (under 6th Circuit law, noting that movant waives argument for 60(b)(3) relief if it fails to move for mistrial); *F & S Offshore, Inc. v. K. O. Steel Castings, Inc.*, 662 F.2d 1104, 1108 (5th Cir. 1981) (affirming denial

of new trial based on unfair surprise where movant failed to ask for continuance).

### B.    ASUS Has Not Shown a Misrepresentation or Other Misconduct.

ASUS's motion fails first because it has not and cannot show that SVV obtained its

verdict through misrepresentation or misconduct, much less by clear and convincing evidence.

The demonstrative reflected two images of the representative ASUS PG32UQ product depicting

the same portions of the same two light guides already shown in Court.  Credelle Decl. ¶¶ 3, 5.

There remains no dispute that the images accurately depict the products as to the relevant point.

Unable to rebut the underlying factual point, ASUS rests its allegation of misconduct not

about evidence, but instead based on counsel's "misrepresentation" about the *timing* of the

images—conflating a verbal objection exchange with precedent involving perjury, withheld core

documents, or doctored evidence.[3]  But any miscommunication here was only about timing, not

substance.  And ASUS's own persistent inaccurate statements on the same issue reflect both a

hazy, shifting recollection of what actually happened at trial as well a startling hypocrisy when it

here accuses other professionals of "misconduct."[4]  There is no evidence of forgery, perjury, or

---

[3] *See, e.g.*, *Fraige v. Am.-Nat'l Watermattress Corp.*, 996 F.2d 295, 296–97 (Fed. Cir. 1993) (misconduct where witness altered advertisement to support invalidity argument and also showed altered evidence to prepare other corporate witnesses); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1324 (Fed. Cir. 2016) (misconduct arising from an expert's false testimony about his credentials and his role in testing as well as withholding of contrary testing evidence); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1341–42 (5th Cir. 1978) (misconduct where party ordered to produce report, stated it could not find report, but evidence proved that party knew about the report but failed to disclose it).  *See also Wilson v. Thompson*, 638 F.2d 801, 804 (5th Cir. 1981) (affirming finding of no misconduct despite recording of prosecuting officer stating that "the whole damned truth" was not told at trial).

[4] *Compare* Tr. 377:3–7 (ASUS Counsel: [do] you have any evidence of a design intent, a predetermination, for that alignment that you're showing on the screen[?]" *with* Tr. 389:11–12 ("ASUS Counsel: Your honor, I crossed him on the opinion in his report"); *compare* Tr. 394:9–395:10 (ASUS counsel recognizing with jury that Mr. Credelle had shown that "same model numbers [were] on the same products" and that it "is a fact, they have the same model number") *with* Tr. 820:18–20 (ASUS counsel later arguing "you could not even read the model number" during demonstration); *compare* Mot. at 3 (conceding Mr. Credelle showed two different light

doctored evidence.  In these circumstances, ASUS has not come close to establishing by clear

and convincing evidence that SVV obtained its verdict through misconduct, much less of the

type that can allow for post-trial relief.  *See, e.g.*, *Columbia Sportswear N. Am., Inc. v. Seirus*

*Innovative Accessories, Inc.*, 942 F.3d 1119, 1128 (Fed. Cir. 2019) (affirming denial of new trial

based on "few lines of mistaken expert testimony," contrasting with the perjury in *Rembrandt*).

## C.    Nothing Prevented ASUS From Fully and Fairly Presenting Its Case.

ASUS was also not prevented from fully and fairly presenting its case.  ASUS rests its

motion on SVV's alleged "ambush tactics."  As discussed, this was no ambush.  And ASUS

cannot show that it lacked a full and fair opportunity to litigate—much less by clear and

convincing evidence.  ASUS's Rule 60 motion fails for at least four reasons.

***First***, ASUS cannot establish an alleged "ambush" denied it a full and fair opportunity to

litigate when it failed to protect against any alleged prejudice at trial.  ASUS's lack of a mistrial

motion is alone reason to deny its current one.  *See Jones*, 617 F.3d at 851–52 (holding that party

waives relief under Rule 60(b)(3) if it fails to move for mistrial); *see also Crocklin*, 252 F.2d at

562 (affirming criminal conviction despite improper attorney argument because criminal

defendant's lack of mistrial motion reflected knowing choice to gamble on the verdict).  ASUS

also never requested any other relief available to it.  *See In re Crosby Tugs, L.L.C.*, No. CIV.A.

02-1125, 2006 WL 8091887, at *8–9 (E.D. La. July 14, 2006) (denying Rule 60(b)(3) relief

where complaining party failed to take steps to remedy any harm from opposing party's failure

to produce a document prior to trial).  ASUS's failure to seek relief at trial is even more culpable

since ASUS immediately expressed skepticism concerning the capability of Mr. Credelle's

microscope, presented its own (incorrect) contrary evidence, and failed to take any further action

---

guides) *with* Tr. 718:17–20 (ASUS counsel eliciting testimony from Dr. Goossen that Mr. Credelle
"just looked at one [light guide], right?").

before the verdict despite apparently seeing the prejudice as "immediately and crystal clear" at

the time.  Mot. at 7.  Ultimately, ASUS intentionally chose to gamble on the verdict.  *See*

*Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 376 (5th Cir. 1989) (denying relief where

complaining party failed to move for mistrial based on the grounds complained of post-trial).

**<u>Second</u>**, ASUS cannot establish the lack of a fair opportunity to present its case when it

had independent access to the underlying information.  *Diaz v. Methodist Hosp.*, 46 F.3d 492,

497 (5th Cir. 1997).[5]  Here, the accused products are ASUS's own products.  The parties agreed

in May 2024 to make this particular product, the PG32UQ, a representative product for trial.

ECF No. 148.  Images of the light guides for two examples of this product were easily obtainable

throughout the litigation, including during trial.  Dr. Goossen had a PG32UQ product of his own

and put the PG32UQ "under microscope examination" in order to form his noninfringement

opinions.  ECF No. 69-1 (Goossen report) (mentioning the PG32UQ some 49 times, and

showing his microscope images of the PG32UQ).  Further, microscope images of the PG32UQ

dot pattern had already been entered into evidence without objection on Day 1 of trial (PTX-

116), as well as extensively shown and discussed in Court.  *See, e.g.*, Tr. 136:18–23 (Vasylyev);

Tr. 294:23–296:5 (Credelle); Tr. 665:2–667:16 (Goossen).  The two distinct sample PG32UQ

light guides had also been available in the courtroom, and SVV had expressly disclosed them as

demonstrative and made them available for inspection before trial.  Ex. A.  **But ASUS declined**

**to inspect them**.  *Id.* (ASUS Counsel: "We will not be inspecting the physical demonstratives.").

---

[5] *See also Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 641 (S.D. Tex. 2009)
("The case law has repeatedly emphasized that a party is not prevented from fully and fairly
presenting its case if it had access to the information at issue."); *Ojeda-Toro v. Rivera-Mendez*,
853 F.2d 25, 29 (1st Cir. 1988) ("[A] party may not prevail on a Rule 60(b)(3) motion on the basis
of fraud where he or she has access to disputed information or has knowledge of inaccuracies in
an opponent's representations at the time of the alleged misconduct.").

If Mr. Credelle or SVV made any statements about the accused representative products that were incorrect and *material* to infringement—ASUS had every opportunity to litigate that at trial.

**_Third_**, ASUS cannot establish the lack of a fair opportunity because the Court cured any alleged prejudice. The alleged "evidence" was not evidence at all; it was a demonstrative and corresponding statements of counsel about it. The Court instructed the jury that neither statements of counsel nor demonstratives were evidence, Tr. 823:8–21; 833:16–834:6, and the Court must presume the jury followed and understood these instructions. *See, e.g.*, *United States v. Fackrell*, 991 F.3d 589, 599 (5th Cir. 2021). Given the Court's instructions, the complained-of-material could not have affected the infringement verdict. *Willis v. Lepine*, 687 F.3d 826 (7th Cir. 2012) (no new trial where attorney suggested in objection to closing that parties were barred from introducing evidence that plaintiffs were "drug dealers or gangbangers" where judge instructed statements were not evidence); *Merix Pharmaceutical Corporation v. Clinical Supplies Management, Inc.*, 106 F. Supp. 3d 927 (N.D. Ill. 2015) (denying new trial, despite improper statements, because court repeatedly emphasized that "attorneys' statements were not evidence"). ASUS does not argue otherwise.

**_Finally_**, ASUS cannot show the required prejudice because the jury was fully capable of evaluating the facts on its own. On ASUS's current telling, Mr. Credelle's live picture was "extremely blurry, and hard to see," while SVV's demonstrative "look[ed] like wedding pictures" with "crystal clear, high resolution." Mot. at 4. The discrepancy was nothing as ASUS now contends. The two visuals—the live picture and the still image—showed the *same* portions of the *same* products under the *same* microscope captured by the *same* operator, Mr. Credelle. ASUS's counsel contemporaneously commented that the live demonstration was so clear as to confirm that the "same model numbers [were] on the same products." Now, for purposes of its motion, ASUS manufactures an alleged quality discrepancy by mischaracterizing Credelle's

testimony where he noted the model number was "hard to read." But the number was "hard to read" because the witness was out of the witness stand hunched over his microscope rather than directly in front of the courtroom monitor. Credelle Decl. at ¶ 7. Nowhere did Mr. Credelle state that the live picture was "extremely blurry"—because it was not. *Id.* Nevertheless, even accepting ASUS's new attorney argument as true, there is no question that the jury—who saw all of this at trial—could evaluate on its own (1) whether the images were taken in Court or (2) whether they were materially identical to what the jury saw in Mr. Credelle's live demonstration, and (3) whether *they thought* that mattered. *Columbia Sportswear*, 942 F.3d at 1128 (no unfair trial where "[t]he jury could have easily verified any representations about the reference").

Again, ASUS made a strategic choice to litigate the issue to the jury. ASUS extensively sought to undermine or rebut the demonstrative, and it challenged the veracity of counsel's statements both through an immediate speaking response as well as through redirect with Dr. Goossen. Tr. 690:20–21; Tr. 718:23–25. These choices reflect ASUS's apparent belief at the time that impugning counsel's credibility was more advantageous than seeking mitigating remedies. In other words, ASUS's alleged prejudice only became significant after it lost. But "Rule 60 is not an avenue for relieving litigants from free, calculated, deliberate choices." *United States v. 8 Gilcrease Lane, Quince, Fla. 32351*, 638 F.3d 297, 301 (D.C. Cir. 2011). *Accord Project Mgmt. Inst., Inc. v. Ireland*, 144 F. App'x 935, 937–38 (3d Cir. 2005); *Jones*, 617 F.3d at 851. Rule 60 is not available merely because ASUS now regrets its deliberate choices.

### D.    ASUS is Not Otherwise Entitled to a New Trial, and ASUS's Other Factual Assertions Are Wrong.

ASUS's Rule 59 motion fails for much the same reasons as its one based on Rule 60. Given that the images accurately reflected portions of the accused products already shown to the jury—consistent with a demonstration the jury had already seen—ASUS cannot show that

SVV's brief cross-examination "actually prejudiced [ASUS's] case." *Conway v. Chem. Leaman Tank Lines, Inc.,* 687 F.2d 108, 112 (5th Cir. 1982). And as with Rule 60, a new trial is not available under Rule 59 where the movant deliberately seeks to litigate an issue rather than seek relief contemporaneously. *See Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988) (denying motion for new trial where complaining party elected to respond to argument and submit the case rather than seek a mistrial).[6] Here, ASUS seeks a new trial—not based on any *later-discovered* information—but based on statements of which it was fully aware *during* trial, and for which it strategically chose to not request a mistrial. A new trial is not available under these circumstances. *See Winger v. Brenner Tank, Inc*., 926 F.2d 468, 473 (5th Cir. 1991) ("[C]ounsel made a strategic determination not to request a mistrial at the time the improper comments were made, and we will not allow him to challenge the verdict *based on those same comments* after having had a chance to see the verdict.") (emphasis added). ASUS's remaining four complaints also do not provide any basis for its requested relief, nor do they support any general notion that the trial was "unfair" in any way.

**_First_**, ASUS alleges that a new trial is appropriate because ASUS itself was misled. The transcript contradicts the assertion. ASUS immediately expressed apparent skepticism as to the image-capture timing, Tr. 690:20–21, and it elicited contrary testimony, Tr. 718:23–25.

**_Second_**, ASUS alleges that the jury was misled. But the jury was instructed that both attorney statements and demonstratives are not evidence. Tr. 823:8–16; 833:16–24. Counsel for ASUS also made its own non-evidentiary statement to the jury contemporaneously with SVV's

---

[6] *See also Colburn*, 883 F.2d at 376 (no new trial where party failed to move for mistrial based on attorney remarks); *Crocklin*, 252 F.2d at 562 (no new trial in case where defendant failed to request mistrial); *Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1276–77 (5th Cir. 1989) ("failure to request a mistrial before the verdict, in essence choosing to gamble on the jury verdict, weighs against a new trial"); *Caldarera*, 705 F.2d at 781–82 (failure to move for mistrial was "significant" because complaining party "got a chance to see the verdict and then seek to overturn it").

attorney comment.  Tr. 690:20–21 ("There was literally no picture done in court yesterday.").
And as discussed, any difference in image quality between Mr. Credelle's live-picture
demonstration and SVV's still-image demonstrative is a common-sense point that the jury was
fully capable of evaluating on its own.  *Columbia Sportswear*, 942 F.3d at 1128.

    **_Third_**, ASUS alleges that that it was a "critical unfairness" to allow SVV to criticize Dr.
Goossen's lack of competing images, contending such criticism was based on based a "totally
fabricated basis."  Mot. at 5–6.  This invective bears no resemblance to what happened.  Before
Dr. Goossen's cross-exam, Mr. Credelle testified repeatedly that the microstructures between
two light guides were "exactly the same."  Tr. 284:4–6; *see supra* Section II.B–II.C.  Dr.
Goossen then presented Mr. Credelle's product images (rather than any of his own) because,
according to Dr. Goossen, ***there was no dispute as to the physical structure of the products***.  Tr.
660:10-18.  It was entirely appropriate for SVV to confirm his lack of contrary images or
opinion, demonstrative slide or not.  ASUS's protestations about the unfairness of this line of
questioning ring particularly hollow where Mr. Credelle initially testified in relevant part without
objection on the first day of trial and then later in more detail after ASUS opened the door by
challenging Mr. Credelle on cross-examination.  Dr. Goossen had the time, opportunity, and
capability to test the statement's veracity.  But he did nothing (other than concede the point: that
there was no dispute over the product structure and that his pictures "matched" Mr. Credelle's).
Tr. 660:10-18; 720:5–7.

    **_Finally_**, ASUS feigns surprise that SVV intended to rely on the manufacturing process
and how that results in two light guide plates reflecting the same pattern.  Mot. at 2 ("SVV first
solicited surprise opinions from its expert, Mr. Credelle.").  Even setting aside ASUS's failure to
object, ASUS knew from Mr. Credelle's deposition that industry-standard manufacturing process
resulted in identical light guides in monitor products.  *See* Ex. B, Credelle Dep. at 193:25–194:5

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.[7]  It is

not credible that ASUS was surprised by Mr. Credelle's opinion.  And again, ASUS criticized it

to the jury as based on inferential, rather than direct, evidence.  *See, e.g.*, Tr. 376:11–13

(criticizing Credelle for not "show[ing] the jury any CAD program"); Tr. 394:21–394:23

(criticizing Credelle for not "show[ing] the jury the spec sheet"); Tr. 395:11–13 (criticizing

Credelle for not showing specific measurements).  In any case, a litigant basing a Rule 59(a)

motion on "surprise" testimony has been limited to "situations where a completely new issue is

suddenly raised or a previously unidentified expert is suddenly called to testify."  *Conway*, 687

F.2d at 112; *see also F & S Offshore, Inc.* 662 F.2d at 1108 (rejecting arguments about "trial by

ambush" where expert's testimony elaborated opinions "based on expertise" where the "general

subject" was disclosed in report).  ASUS does not even attempt such a showing.

While ASUS relies heavily on Judge Sparks's decision granting a new trial in a racial

discrimination case, *Putman v. Management & Training Corp.*, No. A-08-CA-685-SS, 2009 WL

10669155, at *1 (W.D. Tex. Aug. 18, 2009), *Putman* is far afield.  *Putman* involved surprise

testimony (*i.e.*, actual evidence) from the plaintiff herself: that the plaintiff's supervisor had

spoken a highly charged racial epithet.  Despite its core nature, the allegation was not disclosed

in discovery or recalled in the plaintiff's deposition.  *Id.* at *2.  Even though it had never been

mentioned before, the testimony was "the most important and damning evidence put forth,"

addressed by three separate plaintiff witnesses, *id.* at *3, and the Court had even warned that

introducing this testimony was likely to result in a new trial if it turned out that it was not

---

[7] Mr. Credelle's deposition was taken in the related Acer case.  ASUS did not take Mr. Credelle's deposition.  Nevertheless, ASUS was provided a copy of the deposition transcript and included a copy of Mr. Credelle's deposition in the cross-examination binder provided to SVV and the Court.

properly disclosed. *Id.* On these facts, it should go without saying that *Putman* is nothing like this case: a miscommunication concerning the timing of images, reflecting material already shown to the jury and freely available to ASUS, for which ASUS sought no substantive relief.

\* \* \* \* \*

This Court has recognized that the jury's verdict is entitled to significant deference. *See ESW Holdings, Inc. v. Roku, Inc.*, No. 6-19-cv-00044-ADA, 2021 WL 3742201, at \*10 (W.D. Tex. Aug. 24, 2021) (granting new trial based on "a retroactive reweighing of the evidence or striking of certain testimonies by this Court, without substantial justification, would be a violation" of the trust the Court places in the jury system). ASUS's complaints boil down to statements of counsel regarding a demonstrative, neither of which is evidence (as the jury was properly instructed). While live cross-examination can lead to clunky exchanges and miscommunications, neither SVV nor its counsel misrepresented anything.

There is no doubt that ASUS received a fair trial. As described above, this issue was litigated exactly as ASUS wanted. It went out on a "tightrope" when its lead counsel suborned incorrect testimony from its main witness. When SVV dared suggest that it would rebut that incorrect testimony by putting Mr. Credelle back on the stand, ASUS opposed. When its opposition failed, ASUS counsel threatened to use Mr. Credelle's "very quick" rebuttal as a vehicle to lodge last-minute personal attacks against SVV's attorneys prior to closing— presumably to ensure that ASUS's tightrope testimony remained unrebutted in the eyes of the jury. ASUS deliberately chose this path. It cannot now escape its choice. *ESW Holdings*, 2021 WL 3742201, at \*10 (relying "heavily on the actions of the parties during trial" in evaluating 59(a) request).

## IV.    CONCLUSION

For the reasons stated above, the Court should deny ASUS's motion.

DATED: December 2, 2024                    Respectfully submitted,

                                           /s/ *Warren J. McCarty, III*
                                           Warren J. McCarty, III

                                           Bradley W. Caldwell
                                           Texas Bar No. 24040630
                                           Email: bcaldwell@caldwellcc.com
                                           Warren J. McCarty, III
                                           Texas State Bar No. 24107857
                                           Email: wmccarty@caldwellcc.com
                                           Robert Seth Reich Jr.
                                           Texas Bar No. 24088283
                                           Email: sreich@caldwellcc.com
                                           Daniel R. Pearson
                                           Texas Bar No. 24070398
                                           Email: dpearson@caldwellcc.com
                                           John F. Summers
                                           Texas Bar No. 24079417
                                           Email: jsummers@caldwellcc.com
                                           Aisha M. Haley (admitted pro hac vice)
                                           D.C. Bar No. 1034110
                                           Email: ahaley@caldwellcc.com
                                           Bjorn A. Blomquist (admitted pro hac vice)
                                           Texas State Bar No. 24125125
                                           Email: bblomquist@caldwellcc.com
                                           **CALDWELL CASSADY CURRY**
                                           2121 N. Pearl St., Suite 1200
                                           Dallas, Texas 75201
                                           Telephone: (214) 888-4848
                                           Facsimile: (214) 888-4849

                                           Robert D. Katz
                                           Texas Bar No. 24057936
                                           **KATZ PLLC**
                                           6060 N. Central Expressway, Suite 560
                                           Dallas, TX 75206
                                           214-865-8000
                                           888-231-5775 (fax)
                                           rkatz@katzfirm.com

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **SVV TECHNOLOGY INNOVATIONS INC.**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 2nd day of December, 2024, a true and correct copy of the

foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.

As of this date, all counsel of record have consented to electronic service and are being served

with a copy of this document through the Court's CM/ECF system and by email. Administrative

Policies and Procedures for Electronic Filing in Civil and Criminal Cases, Western District of

Texas, Section 14.

/s/ *Warren J. McCarty, III*
Warren J. McCarty, III